UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RITCHIE RISK-LINKED STRATEGIES      )
TRADING (IRELAND), LIMITED, and RITCHIE )
RISK-LINKED STRATEGIES TRADING      )
(IRELAND) II, LIMITED,              )
                                      ) Civil Action No. 09-cv-01086-DLC
              Plaintiffs,     )
                                       ) (ECF)
        v.              )
                                        )
COVENTRY FIRST LLC, THE COVENTRY    )
GROUP, INC., MONTGOMERY CAPITAL, INC., )
and LST I LLC,                      )
                                        )
             Defendants.      )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

         Defendants Coventry First LLC ("Coventry First"), The Coventry Group, Inc. ("The

Coventry Group"), Montgomery Capital, Inc. ("Montgomery Capital"), and LST I LLC, Inc.

("LST") (collectively "Defendants"),[1] by and through their attorneys, respond to Plaintiffs'

Complaint with the following Answer, Affirmative Defenses, and Counterclaim.

        1.        Defendants admit the allegations set forth in paragraph 1.

        2.        Defendants admit that LST has contractually consented to the placement of venue

for this litigation in this Court.  Except as thus expressly admitted, the allegations set forth in

paragraph 2 are denied.

---

[1] The only proper Defendant in this case is LST, the sole counterparty to the contracts on which
Plaintiffs' sole claim is based.  Although Plaintiffs claim Defendants Coventry First LLC
("Coventry First"), The Coventry Group, Inc. ("The Coventry Group"), and Montgomery
Capital, Inc. ("Montgomery Capital") are alter egos of LST, *see* Compl. ¶ 10, Defendants dispute
this allegation and deny that The Coventry Group is subject to personal jurisdiction in the
Southern District of New York in this case.

3.      Defendants admit that the Court has personal jurisdiction over LST based on LST's consent to personal jurisdiction in its Master Policy Purchase Agreements ("MPPAs") with Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") (the "Ritchie I MPPA") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") (the "Ritchie I MPPA").  Except as thus expressly admitted, the allegations set forth in paragraph 3 are denied.

4.      Defendants admit the allegations set forth in the first sentence of paragraph 4. Except as thus expressly admitted, the allegations set forth in paragraph 4 are denied.

5.      Defendants admit the allegations set forth in the first sentence of paragraph 5. Except as thus expressly admitted, the allegations set forth in paragraph 5 are denied.

6.      Defendants admit the allegations set forth in the first and second sentences of paragraph 6.  Defendants further admit that the officers of Coventry First include Alan Buerger, Constance Buerger, and Reid Buerger, that Alan Buerger's title is CEO and Treasurer, and that Constance Buerger is Coventry First's President and Secretary.  Defendants further admit that Coventry First purchases life insurance policies ("Policies") in the secondary life insurance market.  Except as thus expressly admitted, the allegations set forth in paragraph 6 are denied.

7.      Defendants admit the allegations set forth in the first sentence of paragraph 7. Defendants further admit that Montgomery Capital's shareholders include Alan Buerger, Constance Buerger, and Reid S. Buerger.  Defendants further admit that Montgomery Capital's officers include Alan Buerger, Constance Buerger, and Reid Buerger.  Except as thus expressly admitted, the allegations set forth in paragraph 7 are denied.

8.      Defendants admit the allegations in the first two sentences of paragraph 8. Defendants further admit that The Coventry Group's officers include Alan Buerger and

Constance Buerger.  Except as thus expressly admitted, the allegations set forth in paragraph 8 are denied.

9.      Defendants admit the allegations set forth in paragraph 9.

10.      The allegations set forth in paragraph 10 are denied.

11.      Defendants admit that Plaintiffs purport to bring claims for breaches of certain representations and warranties contained in the Ritchie I and II MPPAs.  Defendants deny each and every one of Plaintiffs' allegations of misconduct, deny that they breached any provision of either MPPA, and deny that Plaintiffs have sustained any damages that may be recovered in this action.

12.      The allegations set forth in paragraph 12 are denied.

13.      Defendants lack knowledge sufficient to admit or deny the allegations set forth in paragraph 13.

14.      The allegations set forth in paragraph 14 are denied.

15.      The allegations set forth in paragraph 15 are denied.

16.      The allegations set forth in paragraph 16 are denied.

17.      Defendants admit that, in a typical life settlement, the Policy owner sells the Policy for more than its surrender value, but less than the death benefit.  Except as thus expressly admitted, the allegations set forth in paragraph 17 are denied.

18.      Defendants admit that a life settlement transaction may involve, *inter alia*, an advisor such as a financial planner, insurance agent, accountant, or attorney, or a life settlement broker.  Except as thus expressly admitted, the allegations set forth in paragraph 18 are denied.

19.      Defendants admit that LST and Ritchie I entered into the Ritchie I MPPA on or about June 30, 2005, as well as an Amended and Restated MPPA on or about September 8, 2005.

Defendants further admit that LST and Ritchie II entered into the Ritchie II MPPA on or about December 15, 2005.  Except as thus expressly admitted, the allegations set forth in paragraph 19 are denied.

20.     Defendants admit that, during the period in which Ritchie I and II were purchasing Policies, LST would notify Ritchie I and II that it had Policies to sell for a certain dollar amount consistent with the terms of the MPPAs, and that LST would transfer those Policies to Ritchie I or II upon receipt of payment.  Except as thus expressly admitted, the allegations set forth in paragraph 20 are denied.

21.     Defendants admit that Coventry First was responsible for servicing the Policies sold by LST to Ritchie I and II, as set forth in Servicing and Monitoring Agreements. Defendants further admit that this servicing responsibility entailed tracking premium payments, making death benefit claims, and maintaining current information on the issuing life insurance companies.  Except as thus expressly admitted, the allegations set forth in paragraph 21 are denied.

22.     The allegations set forth in paragraph 22 are denied.

23.     Defendants admit that the language set forth in paragraphs 23(b) and (d) accurately attribute and transcribe language found in the Ritchie I MPPA.  Defendants further admit that the language set forth in paragraph 23(a) accurately attributes and, in substantial part, accurately transcribes language found in the Ritchie I MPPA.  Except as thus expressly admitted, the allegations set forth in paragraph 23 are denied.

24.     Defendants admit that Ritchie II MPPA contains the language set forth in paragraphs 23(b) and (d).  Defendants further admit that the Ritchie II MPPA contains, in

4

substantial part, the language set forth in paragraph 23(a).  Except as thus expressly admitted, the allegations set forth in paragraph 24 are denied.

25.     Defendants admit that section 3.01(a) of the Ritchie I and II MPPAs provides that the representations and warranties set froth therein are made "as of the Closing Date and each Funding Date."  Defendants further admit that section 3.02(a) of the Ritchie I and II MPPAs provides that the representations and warranties set froth therein are made "[a]s of each Funding Date."  Except as thus expressly admitted, the allegations set forth in paragraph 25 are denied.

26.     Defendants admit that, pursuant to the Ritchie I MPPA, from June 2005 through September 2006, Ritchie I purchased 902 Policies from LST.  Except as thus expressly admitted, the allegations set forth in paragraph 26 are denied.

27.     Defendants admit that, pursuant to the Ritchie II MPPA, from April 2006 through September 2006, Ritchie II purchased 183 Policies from LST.  Except as thus expressly admitted, the allegations set forth in paragraph 27 are denied.

28.     Defendants lack knowledge sufficient to admit or deny the substance of Plaintiffs' unspecified records.

29.     The allegations set forth in paragraph 29 are denied.

30.     Defendants admit that on or about October 26, 2006, the New York Attorney General ("NYAG") filed a civil complaint in the Supreme Court of New York County against Coventry First, Montgomery Capital, The Coventry Group, and Reid S. Buerger.  Defendants further admit that Mr. Buerger is an officer and shareholder of Montgomery Capital.  Defendants further admit that a copy of the NYAG's complaint is attached as Exhibit A to Plaintiffs' complaint.  Except as thus expressly admitted, the allegations set forth in paragraph 30 are denied.

31.     Defendants admit that the language attributed to paragraph 65 of the NYAG's complaint accurately transcribes portions of that paragraph.  Except as thus expressly admitted, the allegations set forth in paragraph 31 are denied.

32.     Defendants admit that the language attributed to paragraph 3 of the NYAG's complaint transcribes portions of that paragraph with substantial accuracy.  Except as thus expressly admitted, the allegations set forth in paragraph 32 are denied.

33.     Defendants admit that the language attributed to paragraphs 25, 48, and 59 of the NYAG's complaint accurately transcribe portions of those paragraphs.  Except as thus expressly admitted, the allegations set forth in paragraph 33 are denied.

34.     Defendants admit that the language attributed to paragraphs 3, 26, and 46 of the NYAG's complaint accurately transcribe portions of those paragraphs.  Except as thus expressly admitted, the allegations set forth in paragraph 34 are denied.

35.     The allegations set forth in the preamble of paragraph 35 are denied.

(a)     Defendants lack sufficient knowledge to admit or deny when the Policy owner described in paragraph 35(a) decided to sell his Policy.  Defendants admit that this Policy owner sold his Policy to Coventry First and received payment on or about April 16, 2003.  Defendants further admit that Reid Buerger invoked his Fifth Amendment rights in response to questions posed by the NYAG in September 2006, including questions concerning the transaction referenced in paragraph 35(a).  Defendants deny, however, that Mr. Buerger's invocation of his Fifth Amendment rights prior to the filing of the NYAG's complaint has any significance in this case.  Defendants further deny that either Plaintiff purchased the Policy referenced in paragraph 35(a).  Except as thus expressly admitted, the allegations set forth in paragraph 35(a) are denied.

(b)      Defendants lack sufficient knowledge to admit or deny the allegations set forth in the first sentence of paragraph 35(b).  Defendants further lack sufficient knowledge to admit or deny whether a bid was solicited from AllSettled on the Policy referenced in paragraph 35(b).  Defendants admit that a bid was solicited from Coventry First on this Policy, and that in September 2004 Coventry First submitted an offer of $705,000 for the Policy.  Defendants further admit that Neal Jacobs was in contact with Michael Krasnerman concerning this Policy.  Defendants lack sufficient knowledge to admit or deny whether Lenore Saracino wrote a note as described in paragraph 35(b).  Defendants deny that either Plaintiff purchased the Policy referenced in paragraph 35(b).  Except as thus expressly admitted, the allegations set forth in paragraph 35(b) are denied.

(c)      Defendants admit that, in late 2004, Coventry First made an offer of $3.1 million for a life insurance Policy with a $10 million death benefit.  Defendants further admit that the Policy insured a 79 year old man from New Jersey and was owned by a family member of the insured.  Defendants further admit that, on or about December 15, 2004, Lenore Saracino notified Neal Jacobs that another purchaser had conveyed an intent to offer $3,525,000 for the Policy.  Defendants further admit that Neal Jacobs forwarded this information to Reid Buerger.  Defendants further admit that the quotation in paragraph 35(c) from a December 16, 2004 email from Neal Jacobs to Michael Krasnerman, and a subsequent email from Neal Jacobs to other Coventry First employees, are accurately transcribed.  Defendants further admit that Coventry First purchased the Policy.  Defendants deny that either Plaintiff purchased the Policy referenced in paragraph 35(c).  Except as thus expressly admitted, the allegations set forth in paragraph 35(c) are denied.

36.     Defendants admit that paragraph 36 accurately describes portions of the allegations in paragraphs 35, 47, 55, and 64 of the NYAG's complaint. Defendants deny, however, that Mr. Buerger's invocation of his Fifth Amendment rights prior to the filing of the NYAG's complaint has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 36 are denied.

37.     Defendants admit that the Florida Office of Insurance Regulation ("FOIR") issued a Notice and Order to Show Cause ("Show Cause Order") to Coventry First on or about May 10, 2007. Defendants further admit that the Show Cause Order is attached as Exhibit B to Plaintiffs' complaint. Defendants further admit that the language attributed to paragraph 11 of the FOIR's Show Cause Order accurately transcribes a portion of that paragraph. Defendants further admit that the FOIR's Show Cause Order required Coventry First to show cause why its Viatical Settlement Provider license should not be suspended or revoked. Except as thus expressly admitted, the allegations set forth in paragraph 37 are denied.

38.     The allegations set forth in paragraph 38 are denied.

39.     Defendants admit that in some states – including Kentucky, Nevada, Ohio, and Tennessee – and under certain circumstances life settlement providers are required to disclose to Policy sellers the amount of commissions paid. Defendants further admit that in other states, there is no such requirement. Except as thus expressly admitted, the allegations set forth in paragraph 39 are denied.

40.     Defendants admit that Coventry First made an offer of $2,535,000 to purchase three Policies with an aggregate death benefit of $8 million. Defendants further admit that Reid Buerger invoked his Fifth Amendment rights in response to questions posed by the NYAG in September 2006, including questions concerning the transaction referenced in paragraph 40.

Defendants deny, however, that Mr. Buerger's invocation of his Fifth Amendment rights prior to the filing of the NYAG's complaint has any significance in this case. Defendants further deny that either Plaintiff purchased the Policy referenced in paragraph 40. Except as thus expressly admitted, the allegations set forth in paragraph 40 are denied.

41.      Defendants admit that Coventry First purchased four Policies insuring an 80 year old New York man. Defendants further admit that the Policy seller received $317,000 in connection with this Policy. Defendants lack knowledge sufficient to admit or deny whether an advisor of the seller subsequently inquired of these brokers, or the substance of any such inquiry. Defendants deny that either Plaintiff purchased the Policy referenced in paragraph 41. Except as thus expressly admitted, the allegations set forth in paragraph 41 are denied.

42.      Defendants admit that the Policy referenced in paragraph 42 insured the life of an 87 year-old Nevada man. Defendants further admit that Coventry First offered to pay $42,000 in broker compensation in connection with this Policy. Defendants further admit that the quotation in paragraph 42 from a December 22, 2004 email from Jim Dodaro to Reid Buerger and others is accurately transcribed. Defendants further admit that the Transaction Terms sheet for this Policy reflects broker compensation of $20,000. Defendants further admit that Reid Buerger invoked his Fifth Amendment rights in response to questions posed by the NYAG in September 2006, including questions concerning the transaction referenced in paragraph 42. Defendants deny, however, that Mr. Buerger's invocation of his Fifth Amendment rights prior to the filing of the NYAG's complaint has any significance in this case. Defendants further deny that either Plaintiff purchased the Policy referenced in paragraph 42. Except as thus expressly admitted, the allegations set forth in paragraph 42 are denied.

43.      The allegations set forth in paragraph 43 are denied.

44.     The allegations set forth in paragraph 44 are denied.

45.     Defendants admit that in or about March 2006 Coventry First received a subpoena from the NYAG.  Except as otherwise admitted, the allegations set forth in paragraph 45 are denied.

46.     The allegations set forth in paragraph 46 are denied.

47.     Defendants admit that on or about June 22, 2006, Alan Buerger informed Jeff Mulholland that Coventry First had received a subpoena in March 2006, and that Mr. Buerger believed the focus of the NYAG's investigation was life settlement brokers, and in particular NFP.  Except as thus expressly admitted, the allegations set forth in paragraph 47 are denied.

48.     The allegations set forth in paragraph 48 are denied.

49.     The allegations set forth in paragraph 49 are denied.

50.     Defendants admit that on or about October 11, 2006, Moody's Investors Service ("Moody's") issued a provisional (P) A3 rating for the senior notes to be issued by Ritchie Risk-Linked Strategies Trading III, LP ("Ritchie III").  Defendants further admit that the NYAG issued a press release on or about October 26, 2006 announcing his complaint against Coventry First *et al.*  Defendants further admit that the NYAG's complaint sought restitution and damages, and that the quotation in the third sentence of paragraph 50 is accurately transcribed.  Except as thus expressly admitted, the allegations set forth in paragraph 50 are denied.

51.     Defendants lack sufficient knowledge to admit or deny the allegations in the first sentence of paragraph 51.  Defendants admit that, on October 26, 2006, Moody's issued a press release announcing it was withdrawing its provisional rating for the senior notes to be issued by Ritchie III, and that the quotation in the second sentence of paragraph 51 is accurately

transcribed.   Except as thus expressly admitted, the allegations set forth in paragraph 51 are denied.

52.   The allegations set forth in paragraph 52 are denied.

53.   Defendants admit that, on or about January 9, 2008, Ritchie I sold Policies for approximately $396 million plus Policy Payments, as that term is defined in the Ritchie I Asset Purchase Agreement.  Defendants further admit that, on or about January 9, 2008, Ritchie II sold Policies for approximately $56.5 million plus Policy Payments, as that term is defined in the Ritchie II Asset Purchase Agreement.  Defendants further admit that Ritchie I and II collectively received more than $99 million in loans and cash withdrawals on Policies purchased from LST. Except as thus expressly admitted, the allegations set forth in paragraph 53 are denied.

54.   The allegations set forth in paragraph 54 are denied.

55.   The allegations set forth in paragraph 55 are denied.

56.   The allegations set forth in paragraph 56 are denied.

57.   The allegations set forth in paragraph 57 are denied.

58.   Defendants restate each of the foregoing denials, admissions, and allegations as if fully set forth herein.

59.   The allegations set forth in paragraph 59 are denied.

60.   The allegations set forth in paragraph 60 are denied.

61.   The allegations set forth in paragraph 61 are denied.

62.   The allegations set forth in paragraph 62 are denied.

63.   The allegations set forth in paragraph 63 are denied.

64.   The allegations set forth in paragraph 64 are denied.

65.   The allegations set forth in paragraph 65 are denied.

66.     The allegations set forth in paragraph 66 are denied.

67.     The allegations set forth in paragraph 67 are denied.

Defendants deny the allegations in the clause beginning with the word "WHEREFORE" that follows paragraph 67 and deny that Plaintiffs are entitled to any of the relief requested in that clause.

Defendants expressly deny all allegations contained in the Complaint that are not specifically admitted herein and deny that Plaintiffs are entitled to any of the requested relief.

## AFFIRMATIVE DEFENSES

Defendants incorporate by reference herein the denials, admissions and allegations set forth above.  Defendants assert the following additional defenses:[2]

### First Affirmative Defense

Plaintiffs' Complaint fails to state a cause of action.

### Second Affirmative Defense

The Complaint is barred in whole or in part because the Court lacks personal jurisdiction over The Coventry Group.

### Third Affirmative Defense

The Complaint is barred in whole or in part because of Plaintiffs failure to comply with one or more conditions precedent.  In particular, the Master Policy Purchase Agreements ("MPPAs") contain the following notice requirement, which serves as a condition precedent to bringing suit:

> SECTION 3.05  Waiver of Breach.  If either party hereto has actual knowledge thereof, it will promptly notify the other (in all cases within 30 Business Days of obtaining such knowledge), of any breach or event or circumstance that, with the

---

[2] Defendants assert these affirmative defense only to the breach of contract claim pleaded in Plaintiffs' complaint in this case, Civil Action No. 09 CV 1086 (DLC).  Defendants have not endeavored to assert any affirmative defenses to any claim dismissed in *Ritchie Capital Mgmt. LLC, et al. v. Coventry First LLC, et al.*, Civil Action No. 07CV3494 (DLC)(DCF).

passage of time might become a breach, of any provision of any Transaction Document by such party. Notwithstanding any provision of this Agreement to the contrary, if an Authorized Officer of either party has actual knowledge of any such breach, but does not deliver notice of its intention to invoke or avail itself of the remedies afforded by this Agreement with respect to such within 30 Business Days of obtaining such actual knowledge, then such breach (and all claims with respect to any resulting damages, losses relating thereto or arising therefrom or in connection therewith) shall have been waived by such party in all respects and such party will thereafter have no right to take any action, invoke any remedy, or recover any losses or damages with respect thereto.

MPPAs § 3.05. By their terms, the MPPAs bar Plaintiffs from bringing any claim based on the breach of any provision in the MPPAs unless they first notify Defendants within 30 Business Days of obtaining actual knowledge of that breach, or of any "event or circumstance that, with the passage of time, might become a breach." *Id.* Here, despite claiming they learned of the breaches alleged in their complaint in October 2006, *see* Compl. ¶ 29, Plaintiffs failed to provide the required notice except as to section 3.01(a)(vi) of the MPPAs. Consequently, their breach of contract claim is barred except as to section 3.01(a)(vi).

Moreover, Plaintiffs have failed to establish that the representations and warranties contained in section 3.02 of the MPPAs remained in effect when they filed this lawsuit. Section 3.02(d) of the MPPAs provides that "[t]he representations and warranties set forth in this Section 3.02 as to each Life Settlement Policy shall survive until (i) $100,000,000 of the Expected Capital have been utilized to acquire Life Settlement Policies, or (ii) if all the Expected Capital is raised, all such Expected Capital has been utilized to acquire Life Settlement Policies, whichever occurs last." MPPA § 3.02(d). Under this standard, the section 3.02 representations and warranties expired before Ritchie I and II filed suit against Defendants. In particular, more than $100 million of the Expected Capital was used to acquire Life Settlement Policies, but less than all of the Expected Capital was raised.

### Fourth Affirmative Defense

The Complaint is barred in whole or in part by Plaintiffs' failure to mitigate their alleged damages.

### Fifth Affirmative Defense

The Complaint is barred in whole or in part by the doctrines of waiver and release.

### Sixth Affirmative Defense

The Complaint is barred in whole or in part by the doctrine of equitable estoppel.

### Seventh Affirmative Defense

The Complaint is barred in whole or in part by the doctrine of ratification.

### Eighth Affirmative Defense

The Complaint fails to satisfy Rule 9(g) of the Federal Rules of Civil Procedure.

### Ninth Affirmative Defense

The Complaint is barred in whole or in part by the voluntary payment doctrine.

### Tenth Affirmative Defense

The Complaint is barred in whole or in part by the doctrines of recoupment and set-off.

### Eleventh Affirmative Defense

The Complaint is barred in whole or in part because Defendants did not cause any damages allegedly suffered by Plaintiffs.

### Twelfth Affirmative Defense

The Complaint is barred in whole or in part by a superseding and/or intervening cause.

### Thirteenth Affirmative Defense

The Complaint is barred in whole or in part by Plaintiffs' own breaches of the MPPAs.

### Fourteenth Affirmative Defense

The Complaint is barred in whole or in part because Plaintiffs' claim is precluded or preempted by the Martin Act, N.Y. Gen. Bus. Law § 352 *et seq.*

### Fifteenth Affirmative Defense

The Complaint, and any recovery due to Plaintiffs thereunder are subject in whole or in part to offset.

WHEREFORE, Defendants pray for judgment in their favor and request that Plaintiffs' complaint be dismissed with prejudice and that Defendants be awarded costs, expenses, and

attorneys' fees expended in defense of this litigation along with such other relief as the Court deems proper and just.

## COUNTERCLAIM

Defendant-Counterclaim Plaintiff LST I, LLC ("LST"), pursuant to Fed. R. Civ. P. 13(a), counterclaims against Plaintiff-Counterclaim Defendants Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II"), and says:

## PARTIES

1.      LST is a limited liability company whose sole member is Montgomery Capital, Inc., a Pennsylvania corporation with its principal place of business at 7111 Valley Green Road, Fort Washington, Pennsylvania.

2.      Ritchie I is an Irish corporation with its principal place of business at 4th Floor, 25-28 Adelaide Road, Dublin 2, Ireland.

3.      Ritchie II is an Irish corporation with its principal place of business at 4th Floor, 25-28 Adelaide Road, Dublin 2, Ireland.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).  The parties are completely diverse, and the amount in controversy exceeds $75,000.

5.      The Court has personal jurisdiction over Ritchie I and Ritchie II because they consented to the same in the contracts on which LST's counterclaim is based.  *See* Master Policy Purchase Agreements ("MPPAs") § 7.04(b) ("Each of the parties hereto irrevocably submits to the exclusive jurisdiction of any federal or state court sitting in the County and State of New York in respect of any action or proceeding arising out of or in connection with this agreement.").

6.      Venue is proper in this District with respect to this counterclaim pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(d), and because Ritchie I and II consented to venue in this

District.  *See* MPPAs § 7.04(b) ("Each party to this agreement irrevocably waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any such proceedings in [New York] and any claim that any proceeding brought in [New York] has been brought in an inconvenient forum.").

## FACTS

7.      Ritchie I and LST executed a MPPA on or about June 30, 2005 ("the Ritchie I MPPA").  Section 7.3 of the Ritchie I MPPA provides:

> Each party hereto agrees to reimburse, or cause to be reimbursed, the other party hereto for any losses, liabilities and/or expenses (including, but not limited to, attorney's fees and other professional fees and expenses incurred in connection with collection efforts or ***the defense of any suit or action*** in an amount not to exceed the fees and expenses of counsel or equivalent professionals retained by such party in connection with such suit or action) incurred in connection with the enforcement by such party of its rights under this Agreement.  (Emphasis supplied).

8.      Ritchie I and LST executed an Amended and Restated MPPA on or about September 8, 2005.  Section 7.3 of this Amended and Restated MPPA is identical to section 7.3 of the June 30, 2005 Ritchie I MPPA.

9.      Ritchie I, LST, and ABN Amro Bank N.V. executed a First Amendment to Amended and Restated MPPA on or about January 31, 2006.  Paragraph 3 of this Amendment provides:

> Except as expressly amended hereby, all terms and provisions of the [September 8, 2005 Amended and Restated MPPA] shall remain unamended, unmodified and in full force and effect.  The Original Purchase Agreement as amended hereby, and all rights and powers created thereby, are in all respects ratified and confirmed.  The parties hereto acknowledge and confirm that, from and after the date hereof, any reference in the original Purchase Agreement or in any other Transaction Document (as defined in the [September 8, 2005 Amended and Restated MPPA] . . . shall mean and refer to the [September 8, 2005 Amended and Restated MPPA] as amended hereby.

10.      Ritchie II and LST executed a MPPA on or about December 15, 2005 (the "Ritchie II MPPA").  Section 7.3 of the Ritchie II MPPA is identical to section 7.3 of Ritchie I MPPA.

## COUNT I – ATTORNEYS' FEES, PROFESSIONAL FEES, AND EXPENSES

11.     LST reasserts the allegations set forth in paragraphs 1-10 as if fully set forth herein.

12.     Claimants' allegations have no merit, and LST is entitled to recover all attorneys' fees and other professional fees and expenses incurred in connection with the defense of this action pursuant to section 7.3 of the MPPAs.  These fees exceed $75,000.

WHEREFORE, LST demands payment of recover all attorneys' fees and other professional fees and expenses incurred in connection with the defense of this action.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


_____/s/_____
Katherine G. Lindsey (0902)
Dane H. Butswinkas
David A. Forkner
Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)
*Attorneys for Defendants*

Dated:  April 27, 2009

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of April, 2009, I caused true and correct copies of the foregoing to be served electronically via the Court's ECF system on the following counsel:

Jeffrey L. Liddle, Esq.
James R. Hubbard, Esq.
James W. Halter, Esq.
Liddle and Robinson, LLP
800 Third Avenue, 8th Floor
New York , NY 10022
(212) 687-8500
(212) 687-1505 (telecopy)
jliddle@liddlerobinson.com
jhubbard@liddlerobinson.com
jhalter@liddlerobinson.com

*Attorneys for Plaintiffs*


_____/s/_____
Katherine G. Lindsey