UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RITCHIE RISK-LINKED STRATEGIES            )
TRADING (IRELAND), LIMITED, and RITCHIE )
RISK-LINKED STRATEGIES TRADING            )
(IRELAND) II, LIMITED,                    )
                                          )
                    Plaintiffs,           )
                                          )  Civil Action No. 1:09-cv-01086-VM-DCF
         v.                               )
                                          )  (ECF)
COVENTRY FIRST LLC, THE COVENTRY          )
GROUP, INC., MONTGOMERY CAPITAL, INC.,)
and LST I LLC,                            )
                                          )
                    Defendants.           )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFFS'
REQUEST FOR "COSTS AND FEES RELATED TO THE BANKRUPTCY PROCESS"**

WILLIAMS & CONNOLLY LLP

_____/s/_____
Dane H. Butswinkas
David A. Forkner
Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)
*Attorneys for Defendants*

Dated:  June 7, 2011

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

BACKGROUND .............................................................................................. 2

    A.    Case Background and Procedural History ............................................. 2

    B.    Plaintiffs Successfully Opposed Producing Documents Created After They Filed for Bankruptcy on the Ground that They "[D]o [N]ot [C]oncern the [E]vents at [I]ssue in the [L]awsuit." ........................................ 4

    C.    Plaintiffs' Complaint in This Case Excludes Any Reference to Bankruptcy Fees or Costs. ................................................................. 5

    D.    Plaintiffs' Initial Disclosures Do Not Discuss Bankruptcy Fees or Costs. .............. 6

    E.    Plaintiffs' Rule 30(b)(6) Testimony Concerning Their Claimed Damages Did Not Mention Bankruptcy Fees or Costs. ........................................ 8

    F.    Plaintiffs' Initial Contention Interrogatory Responses Did Not Mention Bankruptcy Fees or Costs. ........................................................ 10

ARGUMENT .................................................................................................. 11

    I.    Plaintiffs' Untimely Claim for Bankruptcy Fees and Costs Should Be Precluded Under Rule 37(c)(1). ....................................................... 11

            A.    Rule 37(c)(1) Sanctions Are Required in This Case. ................. 12

                    1.    Plaintiffs' Failure To Disclose Bankruptcy Fees and Costs Was Not "Substantially Justified." ................................. 13

                    2.    Plaintiffs' Failure To Disclose Bankruptcy Fees and Costs Was Not "Harmless." ................................................. 15

            B.    Preclusion Is the Appropriate Sanction Under Rule 37(c)(1). ................. 20

    II.    Plaintiffs Are Equitably Estopped From Pursuing Their Untimely Claim for Bankruptcy Fees and Costs. ................................................... 23

CONCLUSION ............................................................................................... 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 727 F. Supp. 2d 256, 292 (S.D.N.Y. 2010)......................................................................................................18

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, No. 04 Civ. 3854RCCAJP, 2005 WL 977850 (S.D.N.Y. Apr. 28, 2005)....................................14

*Canusa Corp. v. A & R Lobosco, Inc.*, 986 F. Supp. 723 (E.D.N.Y. 1997) ...................17

*Danes v. Senior Residential Care of Am., Inc.*, No. 04-C-594, 2007 WL 30880 (E.D. Wisc. Jan. 4, 2007)..................................................................................................24

*DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001) ..........24

*Design Strategy, Inc. v. Davis*, 367 F. Supp. 2d 630 (S.D.N.Y. 2005).........................12

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006)................................. passim

*Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) .....................15

*In re Becker*, 407 F.3d 89 (2d Cir. 2005)......................................................................23

*Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490 (2d Cir. 1995) ...................................17

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001).......................23

*Lucente v. IBM*, 146 F. Supp. 2d 298 (S.D.N.Y. 2001) .................................................17

*Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541 (N.D. Cal. 2009) .............................13, 14

*Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435 (2d Cir. 2006) ..........................23

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) ..................................................20

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste*, No. 08-CV-2540 (DJI)(JMA), 2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011)................................................. passim

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ 3494(DLC), 2007 WL 2044656, at *2 (S.D.N.Y. July 17, 2007) ...............................................................3

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, No. 09 Civ. 1086(VM)(DF), 2010 WL 5174759, at *5 (S.D.N.Y. Dec. 7, 2010)......................11

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494(DLC), 2008 WL 542596, at *1 (S.D.N.Y. Feb. 29, 2008) .................................................................2

*Roberts v. Ground Handling, Inc.*, No. 04 Civ. 4955(WCC), 2007 WL 2753862
(S.D.N.Y. Sept. 20, 2007) ...................................................................................................20, 21

*S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987) ...........................................................18

*Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000) ......................................................................15

*Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 Civ. 3698(LAP), 2010 WL 3341837
(S.D.N.Y. Aug. 17, 2010) ...........................................................................................19, 20, 21

*TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189(RCC), 2006 WL
2463537 (S.D.N.Y. Aug. 23, 2006) .......................................................................................17

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) .........12

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 .................................................................................................... passim

Fed. R. Civ. P 37 ..................................................................................................... passim

S.D.N.Y. L. R. 33.3(c) ..................................................................................................10

Nearly one year following the conclusion of fact discovery, and more than three years after the life insurance policies at issue in this case were sold in bankruptcy, Plaintiffs assert for the first time in their March 14, 2011 interrogatory responses that they are seeking "$12,718,973 in costs and fees related to the bankruptcy process." Ex. 1 (Pls.' Second Am. Responses & Objs. to Defs.' Second Set of Interrogs.) at 12.[1]  This is an entirely new category of damages that raises complex issues, none of which Defendants had reason to explore during fact discovery.  To the contrary, Defendants based their decisions regarding what discovery to take—and to forego—on Plaintiffs' consistent representations that bankruptcy costs and fees are ***not*** at issue in this case. Indeed, Plaintiffs prevailed before Judge Cote on the position that they were not obligated to produce any documents created after the date on which they filed for bankruptcy because such materials "do not concern the events at issue in the lawsuit." Ex. 2 (Pl. Ltr.) at 1 n.2.  Moreover, Plaintiffs identified the categories of damages they are seeking in their complaint, initial disclosures, Rule 30(b)(6) deposition testimony, and initial interrogatory responses, none of which mentioned costs or fees incurred in bankruptcy.   Defendants would be severely prejudiced, in terms of both time and expense, if they were required to re-do substantial aspects of fact discovery, which concluded on March 26, ***2010***, as would be necessary to defend against this new damages claim.  For all of these reasons, the Court should preclude Plaintiffs—who seek more than $430 million in damages separate and apart from these fees and costs—from seeking bankruptcy fees and costs under both Rule 37(c)(1) and the doctrine of equitable estoppel.

---

[1]  The numbered exhibits referenced in this memorandum are appended to the Declaration of Kenneth J. Brown, which is filed contemporaneously herewith.  The supporting Declaration of Dane H. Butswinkas is separately filed contemporaneously herewith.

## BACKGROUND

**A.     Case Background and Procedural History**

"[T]his action arises out of a contract dispute between two sophisticated players in the life settlements industry, a secondary market for life insurance policies." *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494(DLC), 2008 WL 542596, at *1 (S.D.N.Y. Feb. 29, 2008). Pursuant to a series of agreements, Defendant Coventry First LLC purchased life insurance policies ("Policies") from their original owners and sold them to its affiliate, Defendant LST I LLC ("LST"). LST, in turn, sold the Policies to Plaintiffs Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd. ("Ritchie II"). The sales from LST to Plaintiffs were made pursuant to two contracts called Master Policy Purchase Agreements ("MPPAs"). The MPPAs contained warranties regarding, *inter alia*, the lawfulness of Coventry First's acquisition of the insurance policies from the policyholders. *See* Dkt. # 1 (Compl.) ¶¶ 23–24. Plaintiffs allege that LST breached four of those warranties.: (1) "No Violation," § 3.01(a)(v); (2) "No Proceedings," § 3.01(a)(vi); (3) clean title, § 3.02(a)(ii); and (4) lawful origination, § 3.02(b). *See id.* ¶¶ 59–62.

Plaintiffs first filed suit against Defendants for alleged breaches of these warranties on May 2, 2007. *See* No. 07-cv-3494(DLC)(DCF) ("*Ritchie I*"). As originally filed, the case had five plaintiffs and twelve defendants. In addition to breach of contract, the plaintiffs asserted claims for RICO, fraud, fraudulent inducement, and breach of fiduciary duty. Plaintiffs' theory of damages, which they continue to assert in this case, was that that they were harmed when the New York Attorney General ("NYAG") filed a civil action against Coventry First alleging misconduct in the purchase of certain Policies from their original owners. Plaintiffs contended they anticipated "profiting from the sale of the policies to others in a securitization transaction, and for that purpose had obtained a pre-sale report and rating from the Moody's service on a

2

number of the policies.   Moody's withdrew its rating because of the Attorney General's investigation." *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494(DLC), 2007 WL 2044656, at *2 (S.D.N.Y. July 17, 2007); *see also* Dkt. # 1 ¶ 50.   Judge Cote dismissed all of these claims on July 17, 2007, with a limited right to replead the breach of contract claim and two of the RICO claims. *See Ritchie I* Dkt. # 41.[2] Plaintiffs filed an amended complaint containing those claims and moved for reconsideration as to the others. *See Ritchie I* Dkt. ## 47, 49.  On February 29, 2008, the Court dismissed the amended RICO claims with prejudice and denied reconsideration, leaving only the breach of contract claim. *Ritchie I* Dkt. # 75.  On March 17, 2008, Plaintiffs voluntarily dismissed the case. *Ritchie I* Dkt. # 77.

Meanwhile, on June 20, 2007, Plaintiffs had filed for bankruptcy. *See* Ex. 3 (bankruptcy docket) Dkt. # 1.  In January 2008, the Policies were sold in an auction supervised by the Bankruptcy Court. *See id.* Dkt. ## 137, 176–177.  Following the auction, the bankruptcy proceedings remained active for about a year, during which the Bankruptcy Court administered various aspects of the case, including adjudicating the final adversary proceeding therein. *See id.* at 31–54.  That final adversary proceeding—the last substantive matter in the bankruptcy—was closed on February 4, 2009.[3] *See id* at 54.

Plaintiffs filed this action ("*Ritchie II*") two days later.  Their complaint contains one count for breach of the same four warranties in the MPPAs as were at issue in *Ritchie I*.[4]  *See* Dkt. # 1 ¶ 58–67.  Importantly, given the substantive overlap between this case and its

---

[2] *Ritchie I* docket entries are referred to as "*Ritchie I* Dkt."  References to docket entries from *Ritchie II* are referred to as "Dkt." only.

[3] Although the bankruptcy technically remains open, the only activity since February 4, 2009 has been the periodic filing of operating reports for Plaintiffs. *See* Ex. 3 at 54–57.

[4] Although Plaintiffs entered into these contracts only with LST, they have also sued Coventry First, Montgomery Capital, Inc., and The Coventry Group, Inc. on a veil-piercing theory. *See* Dkt. # 1 ¶ 10.

predecessor, the parties agreed that their initial Rule 26(a) disclosures, written discovery requests and responses, and document productions from *Ritchie I* would be operative in *Ritchie II* as well. *See* Dkt. # 26 (Rule 26(f) Report of Parties) ¶ 3 (written discovery requests and document productions); *id.* ¶ 33 (initial disclosures). Nowhere in those materials—or elsewhere, prior to their March 14, 2011 interrogatory responses—did Plaintiffs disclose that they were requesting bankruptcy fees or costs. To the contrary, they consistently took the position that they were not seeking such damages.

**B.     Plaintiffs Successfully Opposed Producing Documents Created After They Filed for Bankruptcy on the Ground that They "[D]o [N]ot [C]oncern the [E]vents at [I]ssue in the [L]awsuit."**

In *Ritchie I*, Defendants requested from Plaintiffs "all documents necessary to substantiate and to calculate Plaintiffs' alleged damages." Ex. 4 at 10 (Request 47). Plaintiffs objected to this request on privilege grounds and to the extent it called for expert opinions, and otherwise agreed to produce responsive documents. *See* Ex. 5 at 21–22. Months later, however, Defendants learned that Plaintiffs unilaterally had imposed a date restriction of May 2, 2007 (the date *Ritchie I* was filed) on most of their document production, and a date restriction of June 20, 2007 (the date Plaintiffs filed for bankruptcy) on the remainder of their production. On March 11, 2008, Defendants wrote to Judge Cote challenging these limitations. *See* Ex. 6.

Plaintiffs responded in a letter dated March 13, 2008, stating: "Defendants first complain that Plaintiffs have not produced documents—specifically, documents concerning the life insurance policies at issue (the 'Policies')—generated ***long after the events at issue in this lawsuit***. In particular, Plaintiffs have not produced such documents after they filed for bankruptcy [on] June 20, 2007." Ex. 2 at 1 (emphasis added); *see also id.* at 1 n.2 ("Documents created after the lawsuit was filed last May are mostly either irrelevant—***because they do not concern the events at issue in the lawsuit***—or overwhelmingly protected by privilege and [the]

work product doctrine.") (emphasis added).   In fact, Plaintiffs specifically disputed that documents created after the bankruptcy filing were relevant to their claimed damages.  *See id.* at 1 (disputing "[d]efense counsel['s] claims that these documents, ***generated so long after the events at issue***, are relevant to Plaintiffs' damages") (emphasis added).  Plaintiffs also asserted that the bankruptcy process was public, and that Defendants consequently had access to any documents that could conceivably bear on their damages, which they said were established by the price they paid for the Policies minus the price they received in the bankruptcy auction.  *Id.*; *see also* Dkt. #1 ¶ 53 (alleging same damages measure).  Judge Cote held a telephonic hearing on this issue on March 13, 2008, during which she orally denied Defendants' request for these materials, accepting Plaintiffs' representations as to their irrelevance.   Decl. of Dane H. Butswinkas ¶ 4.  Plaintiffs could not have taken (much less prevailed on) the position that documents post-dating the bankruptcy filing were irrelevant if their damages claim included bankruptcy fees and costs.

This is especially important given the parties' agreement to treat the written discovery requests and document productions in *Ritchie I* as operative in this case as well.  *See* Dkt. # 26 ¶ 3.  That includes Defendants' request for "all documents necessary to substantiate and to calculate Plaintiffs' alleged damages," Ex. 4 at 10 (Request 47), and Plaintiffs' responsive production that excludes any documents that post-date their bankruptcy filing.

**C.    Plaintiffs' Complaint in This Case Excludes Any Reference to Bankruptcy Fees or Costs.**

On February 9, 2009, less than one year after they dismissed *Ritchie I*, Plaintiffs filed this lawsuit.  In a section of their complaint entitled "Sale of the Purchased Policies; Damages Incurred by Plaintiffs," Plaintiffs describe the categories of damages they are seeking:

> 53.    On January 9, 2008, Ritchie I and Ritchie II conducted an auction to sell the life insurance policies they purchased from

Defendants.   Ritchie I sold 883 life insurance policies for approximately $396 million.  Ritchie II sold 181 life insurance policies for approximately $56.5 million.  In addition, 20 policies owned by Plaintiffs matured with a net benefit of approximately $35 million.  Also, Plaintiffs received funds from loans on the policies they owned totaling approximately $99 million.  Thus, Plaintiffs were able to recoup only approximately $586.5 million of the $752 million paid to LST [*i.e.*, Defendant LST I LLC ("LST")] to purchase the policies, and thus suffered a loss of not less than $165.5 million in the value of the policies purchased.

54.    In addition to the $752 million purchase price of the policies, Plaintiffs paid over $105 million in premiums, fees and other expenses to keep the policies in force during the period they owned them.

55.    Had Plaintiffs known that Defendants engaged in bid-rigging and other unlawful practices in order to acquire the policies sold to Plaintiffs, or that the New York Attorney General and insurance regulators were investigating Defendants for such conduct, Plaintiffs would not have purchased the policies, and would not have suffered these losses, including the transaction costs and the costs of maintaining the policies in force.

56.    In addition, Plaintiffs suffered the loss of hundreds of millions of dollars in reasonably anticipated profits over and above the loss of value of the individual policies.  Defendants knew that the purpose of Plaintiffs' purchase of over 1,000 life insurance policies from them was to permit the rated securitization of the policies and reasonable profit from their structural enhancement.

Dkt. # 1 ¶¶ 53–56.  Consistent with Plaintiffs' position regarding documents post-dating the bankruptcy filing, the complaint says nothing about bankruptcy fees or costs.

## D.    Plaintiffs' Initial Disclosures Do Not Discuss Bankruptcy Fees or Costs.

Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiffs were required to provide at the outset of this case "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries

suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii).  To that end, on May 22, 2009, the parties agreed in

their Rule 26(f) report that, as with their written discovery requests and productions, "their

[initial] disclosures in *Ritchie I* will be operative in *Ritchie II*."  Dkt. # 26 (Rule 26(f) Report of

Parties) ¶ 33.  Plaintiffs' initial disclosure states that they "suffered damages in an amount

believed to be not less than approximately $700 million, based on, among other things, [(1)] the

amounts for which Plaintiffs purchased the insurance policies from Defendants, [(2)] the

accretion of the policies, [(3)] the ongoing cost of servicing the policies, [(4)] the premiums for

the policies, [(5)] lost opportunity costs relating to the inability to carry forward the planned

securitization transaction, and [(6)] reputation damages."  *Ritchie I* Dkt. # 39 at 4.  This list did

not include bankruptcy fees or costs.

Plaintiffs further stated that "[t]he documentation on which [they] relied in reaching this

initial estimate is described above, under 'Documents.'"  *Id.*  Those documents, however,

obviously did not include any materials regarding the bankruptcy, *see id.* at 3–4, which Plaintiffs

had refused to produce.  Although Plaintiffs said that they would "further refine [their] claim for

damages as the litigation progresses," *id.*, they never supplemented these initial disclosures.

This failure is especially significant in light of Defendants' repeated efforts to confirm

the accuracy of Plaintiffs' initial disclosures.  On January 28, 2010, with approximately two

months remaining in fact discovery, Defendants wrote a letter specifically asking Plaintiffs to

confirm the accuracy of those disclosures or to supplement them as required by Rule 26(e).  *See*

Ex. 7.  Defendants stated:  "Plaintiffs in *Ritchie II* (Civil Action No. 09-CV-1086-DLC) are

relying on their Rule 26(a)(1) disclosures from *Ritchie I* (Civil Action No. 07-CV-3494-DLC).

But, as you know, Judge Cote dismissed a number of Plaintiffs' claims in *Ritchie I*.  With that

dismissal, it is unclear whether Plaintiffs' Rule 26(a)(1) disclosures are complete and accurate in

*Ritchie II*." *Id.*  Having received no response, Defendants followed up with an e-mail on March 2, 2010, with less than a month remaining in fact discovery, again asking Plaintiffs to confirm the accuracy of their initial disclosures or to supplement them.  *See* Ex. 8.  Again, Defendants received no response.

**E.      Plaintiffs' Rule 30(b)(6) Testimony Concerning Their Claimed Damages Did Not Mention Bankruptcy Fees or Costs.**

        After confirming that Plaintiffs' initial disclosures were unchanged from *Ritchie I*, Defendants proceeded in this case based on Plaintiffs' description of their damages, and sought discovery thereon.  Defendants noticed a Rule 30(b)(6) deposition on the following topic:   "The basis, calculation, and amount of Plaintiffs' alleged damages and any mitigation thereof, including lost profits, out-of-pocket expenses or losses, premium payments, consequential damages, special damages, transaction costs, and/or opportunity costs."  Ex. 9 at 9, Topic 21; Ex. 10 at 9, Topic 21.   Plaintiffs objected to this topic to the extent it called for privileged information or expert testimony, but agreed to "designate a witness or witnesses to testify on [their] behalf regarding this topic with respect to ***out-of-pocket expenses and losses***, premium payments, and transaction costs."  Ex. 11 at 10–11 (emphasis added); Ex. 12 at 10–11 (emphasis added).  Certainly, fees and costs paid in bankruptcy qualify as "out-of-pocket expenses."

        During this deposition, Defendants asked Plaintiffs' corporate designee:



,"[5]  Ex. 13 (Hobbs Tr.) at 552:24–553:2.  The following exchange ensued:

---

[5] _____.  *See* Ex. 13 (Hobbs Tr.) at 7:22–25.



Ex. 13 at 553:9–554:24.

Defendants separately asked Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮:



██████████████████

Ex. 13 at 325:4–25.

Like their complaint and initial disclosures, Plaintiffs did not reveal at any time during their two-day deposition that they would seek bankruptcy fees or costs in this case.

**F.      Plaintiffs' Initial Contention Interrogatory Responses Did Not Mention Bankruptcy Fees or Costs.**

As required by the local rules of this Court, Defendants waited until 32 days before the end of fact discovery to pose contention interrogatories. *See* S.D.N.Y. Local Rule 33.3(c) ("At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the court has ordered otherwise."). In one of those contention interrogatories, Defendants asked Plaintiffs to provide a more precise calculation of each category of damages they had identified to date: "For each and every cause of action alleged against Defendants, explain in detail how each Plaintiff has been injured by the alleged wrongful conduct; state the amount of damage claimed by each Plaintiff; and explain how that damage amount was calculated, including but not limited to providing specific calculations identifying the total dollar amounts of damages allegedly owed to each Plaintiff." Ex. 14 at 6 ¶ 10.

On March 25, 2010, Plaintiffs objected to this interrogatory on various grounds, and responded as follows:

> Plaintiffs do not possess the answer to Interrogatory No. 10 at this time.  Fact discovery is not closed as there are additional depositions to be taken.  Furthermore, expert reports have not yet been submitted, nor has the deadline for their submission passed. . . .  Since Plaintiffs' experts have not yet completed their review and analysis of the damages in this case, Plaintiffs cannot, at this time, provide an accurate damages calculation.  Plaintiffs will be seeking the following categories of damages:

> - Compensatory damages;
> - Expectation damages, including lost profits;
> - Prejudgment and post-judgment interest; and
> - Attorney's fees.

Ex. 15 at 14.  Plaintiffs again provided no indication that they were seeking costs or fees associated with the bankruptcy, which had effectively concluded more than a year earlier.

Fact discovery closed the following day.  *See* Dkt. # 27 (Pretrial Scheduling Order) ¶ 3; *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, No. 09 Civ. 1086(VM)(DF), 2010 WL 5174759, at *5 (S.D.N.Y. Dec. 7, 2010) ("[F]act discovery in this case closed on March 26, 2010."); *id.* at *2 (Plaintiffs "barely even attempt to justify their three-month delay in requesting to re-open fact discovery.").  Nearly a year passed.  Then, on March 14, 2011, Plaintiffs amended their response to this interrogatory, identifying bankruptcy fees and costs for the first time.  *See* Ex. 1 at 12.  That disclosure, however, comes far too late.  Indeed, it is precisely this situation at which Rule 37(c)(1) and the equitable estoppel doctrine are directed.

## ARGUMENT

### I.  Plaintiffs' Untimely Claim for Bankruptcy Fees and Costs Should Be Precluded Under Rule 37(c)(1).

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:  (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  *Id.*  No showing of bad faith is required to preclude a damages category under Rule 37(c)(1).  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

11

To the contrary, under Rule 37(c)(1), "[p]reclusion is 'automatic' unless the non-disclosure was substantially justified or harmless, or unless the district court in its discretion chooses an alternative sanction as provided in Rule 37(c)(1)." *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (quoting *Design Strategy*, 469 F.3d at 298).

Thus, the Court must decide two issues.  <u>First</u>, is there a violation of Rule 26(a)(1)(A)(iii) and/or Rule 26(e) that was not substantially justified or harmless?  If so, as in this case, a sanction is required under Rule 37(c)(1).  <u>Second</u>, if a sanction is required, what sanction is appropriate?  Here, that sanction is preclusion.

**A.      Rule 37(c)(1) Sanctions Are Required in This Case.**

Rule 37(c)(1) sanctions are required here, as Plaintiffs unquestionably have failed to fulfill their obligations under Rules 26(a) and (e) with respect to their claimed bankruptcy fees and costs.  Under Rule 26(a)(1)(A)(iii), Plaintiffs were required at the outset of this case to provide Defendants with "a computation of each category of damages" they claimed, as well as "the documents or other [non-privileged] evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  This requirement "is effective even if the opposing party does not specifically request this material." *Design Strategy, Inc. v. Davis*, 367 F. Supp. 2d 630, 633 (S.D.N.Y. 2005) (Marrero, J.), *aff'd* 469 F.3d 284 (2d Cir. 2006).  Plaintiffs also were required to supplement their initial disclosures pursuant to Rule 26(e).

Plaintiffs, however, did not disclose their claimed bankruptcy fees and costs as required by either Rule 26(a)(1)(A)(iii) or Rule 26(e).  To the contrary, between their complaint and discovery responses, Plaintiffs provided no fewer than five separate indications that bankruptcy fees and costs were ***not*** part of their claimed damages in this case.  *See supra* pp. 4–11.  And toward the close of fact discovery, when Defendants twice asked Plaintiffs to confirm the

accuracy of their initial disclosures, Plaintiffs did not respond.  *See supra* pp. 7–8.  Moreover, Plaintiffs failed to produce any documents on which their claim for bankruptcy fees and costs is based.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring production of such materials).  In fact, the exact opposite is true—on March 13, 2008, after the Policies already had been sold in bankruptcy, and the lion's share of any bankruptcy fees and costs had been incurred, Plaintiffs affirmatively took (and prevailed before Judge Cote on) the position that they should not be required to produce any documents created after the bankruptcy, as those materials were either privileged or "do not concern the events at issue in the lawsuit."  Ex. 2 at 1 n.2.

Given that Plaintiffs unquestionably failed to disclose bankruptcy fees and costs as a category of damages under Rules 26(a)(1) and 26(e), the question becomes whether that failure was "substantially justified" or "harmless."  Plaintiffs bear the burden of demonstrating that these exceptions to Rule 37(c)(1)'s mandatory sanctions requirement apply.  *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) ("[T]he burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions.").  Plaintiffs, however, cannot carry their burden on either issue.

### 1.    Plaintiffs' Failure To Disclose Bankruptcy Fees and Costs Was Not "Substantially Justified."

Plaintiffs cannot claim that their failure to disclose their request for bankruptcy fees and costs was "substantially justified," Fed. R. Civ. P. 37(c)(1), as they were aware of those fees and costs long before they filed this case.  Plaintiffs filed for bankruptcy on June 20, 2007, and the Policies were auctioned in January 2008.  *See* Ex. 3 Dkt. ## 1, 137, 176–177.  This case was filed more than a year later, on February 6, 2009.  *See* Dkt. # 1.  In fact, upon information and belief, Plaintiffs waited to file this lawsuit until the Bankruptcy Court dismissed the last lingering adversary proceeding brought in the bankruptcy, which occurred just two days earlier, on

13

February 4, 2009.  *See* Ex. 3 at 54.  Except for periodic operating reports, there has been no activity in the bankruptcy since then.  *See id.* at 54-57.  Thus, to the extent Plaintiffs incurred fees and costs in the bankruptcy, they knew it before they filed this case, and they certainly knew it long before fact discovery closed.  *See Oracle USA*, 264 F.R.D. at 548 (noting in support of imposition of Rule 37(c)(1) preclusion sanction:  "Plaintiffs, and not Defendants, possessed the necessary information even before filing the complaint, and well before they served their initial disclosures and first responses to discovery requests.").

Even if Plaintiffs did not have definitive fee and cost figures at this case's inception, they certainly were able—and had the obligation—to disclose bankruptcy fees and costs as a category of damages they were seeking.  *See Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste*, No. 08-CV-2540 (DJI)(JMA), 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011) ("Here, Puglisi's only explanations for the failure to comply with the disclosure requirement are the fact that the computation of damages was not available until the liquidation proceeding concluded and that the relevant documents are in Italian.  However, as noted above, these excuses do not explain why Puglisi did not inform Rienzi that it would seek this type of damages, even if a definite figure was not available."); *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, No. 04 Civ. 3854RCCAJP, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) ("[E]ven if plaintiff could not calculate its . . . damages at the time of its initial disclosure . . . there is no reason that it did not disclose its currency conversion damage ***theory***.  The Court will not allow plaintiff . . . to assert this new, additional damage theory at the eleventh hour.") (citing numerous cases) (emphasis in original).  There is simply no justification for Plaintiffs' failure to inform Defendants at the outset of this case—or at any other time prior to March 2011—that they were seeking bankruptcy fees and costs.

### 2. Plaintiffs' Failure To Disclose Bankruptcy Fees and Costs Was Not "Harmless."

Nor can Plaintiffs claim that their failure to disclose these alleged damages was harmless. During fact discovery, which closed more than one year ago, Defendants decided what discovery to take—and to forego—based on Plaintiffs' own descriptions of their damages. Now, Plaintiffs' new claim for bankruptcy fees and costs raises a variety of complex issues, none of which Defendants had reason to explore during fact discovery. Specifically, even assuming *arguendo* that (1) the parties contemplated the availability of consequential damages under the MPPAs (in fact, the MPPAs provide the opposite);[6] and (2) LST's alleged breaches of contract caused Plaintiffs to file for bankruptcy (which is likewise incorrect), Defendants never sought discovery aimed at discerning whether Plaintiffs' newly-alleged bankruptcy fees and costs are compensable breach of contract damages. This is so for at least three reasons.

<u>First</u>, if Defendants had known that Plaintiffs were seeking $12,718,973 in bankruptcy fees and costs, Defendants would have taken significant written and oral discovery regarding the computation of that figure (which Plaintiffs have not provided to date). This goes far beyond

---

[6] Bankruptcy fees and costs would be a form of consequential damages, which "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." *Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000). Such damages cannot be awarded if the parties did not contemplate their availability at the time of contracting. *See Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) ("There is significant New York authority for the proposition that a party seeking consequential damages must identify specific contractual provisions demonstrating that recovery of such damages was contemplated by the parties. Although some authority suggests that no specific provision is required, such damages must, at a minimum, comport with the intent of the parties to the contract.") (citations omitted). In this case, consequential damages generally, and bankruptcy fees and costs in particular, are not available for numerous reasons, not least of which is that there is not the slightest shred of evidence that the parties intended for such damages to be available. To the contrary, Plaintiffs assert that their bankruptcy was ***not*** contemplated when the MPPAs were signed. *See* Dkt. # 1 ¶ 51 (New York Attorney General's complaint "became public on October 26, 2006"); *id.* ¶ 52 ("Following the public disclosure of the [New York Attorney General's complaint], Ritchie I and Ritchie II were forced to seek bankruptcy court protection for their title to the policies purchased from LST . . . .").

merely seeking invoices from Plaintiffs' service providers in the bankruptcy, and includes discovery targeted at the reasonableness and necessity of the actions that generated those fees and costs, and the competence of the firms that took those actions.[7] And, it certainly includes re-challenging Plaintiffs' refusal to produce a single document post-dating their bankruptcy filing.

Second, any strategy for exiting the life settlement transaction—whether through securitization (which Plaintiffs claim would have occurred absent LST's alleged breach of contract), sales of individual Policies or groups of Policies, holding the Policies to maturity, bankruptcy, or otherwise—would have entailed significant costs to Plaintiffs. In other words, even absent any breach of contract, Plaintiffs would have incurred substantial costs associated with exiting their life settlement investment. To the extent Plaintiffs' claim is that LST's alleged breaches forced them to choose bankruptcy over another exit strategy, *see* Dkt. # 1 ¶ 52, they saved the costs associated with the strategy not pursued. Thus, at most, Plaintiffs would be entitled to recover only bankruptcy fees and costs that exceeded the costs they would have incurred in pursuing an alternate exit strategy.

---

[7] Thus, the fact that some of the invoices paid by Plaintiffs may be a matter of public record in the Bankruptcy Court is hardly a substitute for the kind of fulsome discovery Defendants would have taken regarding Plaintiffs' claim for fees and costs. *See* Ex. 2 (Plaintiffs noting documents filed with Bankruptcy Court are publicly available). Plaintiffs' contrary assertion is analogous to a homeowner seeking compensation for a new furnace and claiming that the defendant needs nothing more than the homeowner's receipt, notwithstanding that alternative models were available, that the furnace resulted in cost savings that must be offset against the purchase price, and that for reasons unrelated to the defendant's conduct the homeowner needed to replace the furnace anyway. Indeed, although nothing is impossible, it seems unlikely that Defendants would have challenged Plaintiffs' claim for fees and costs on the ground that they were not actually paid. Defendants' challenges would have been more nuanced, and the discovery would have extended far beyond the bare invoices for the work performed. As the court explained in *Rienzi*, "although Puglisi has produced documents it believes [are] necessary to support its claim, Rienzi is entitled to investigate the claim in order to defend itself. This investigation may require further proof than Puglisi has put forth." 2011 WL 1239867, at *3.

That is so because breach of contract damages are designed "to place the aggrieved party in the same economic position that it would have occupied absent the breach." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 498 (2d Cir. 1995).  To allow Plaintiffs to recover expenses they would have incurred regardless of any alleged breach would disregard that basic principle and instead provide Plaintiffs with a windfall.  That, of course, would be improper.  *See id.* (law of contract damages disfavors placing Plaintiff "in a better economic position than it would otherwise have occupied"); *Lucente v. IBM*, 146 F. Supp. 2d 298, 304 (S.D.N.Y. 2001) ("Damages for breach of contract . . . are not designed to create windfall recoveries." (citing *Indu Craft*, 47 F.3d at 495)); *see also Canusa Corp. v. A & R Lobosco, Inc.*, 986 F. Supp. 723, 733 (E.D.N.Y. 1997) ("Fixed costs (overhead) are not included in the damages computation because Canusa would have incurred these costs regardless of Lobosco's breach."); *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189(RCC), 2006 WL 2463537, at *10 (S.D.N.Y. Aug. 23, 2006) ("TVT does not attempt to show, nor does it claim, that had it contracted with a company other than Schubert to make a Biobox-production system, it would have been able to proceed without a machine housing facility similar to Cinram.  Thus, a large part of this category of damages represents a fixed cost, which is not recoverable because it would have been incurred regardless of whether the breach occurred.").  Based on Plaintiffs' representations regarding their damages, however, Defendants have not taken written or oral discovery from Plaintiffs or any third party targeted at the costs of such alternatives, much less on a comparison of those costs to Plaintiffs' claimed $12,718,973 in bankruptcy fees and costs.

Finally, any award of bankruptcy fees and costs would be offset by savings resulting from the bankruptcy process.  *See, e.g.*, *Indu Craft*, 47 F.3d at 495 ("[W]hen computing damages for a defendant's wrongful conduct, 'if any benefit or opportunity for benefit appears to have

17

accrued to the plaintiff because of the breach, a balance must be struck between benefit and loss, and the defendant is only chargeable with the net loss.'" (quoting *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 852 (2d Cir. 1987))); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 727 F. Supp. 2d 256, 292 (S.D.N.Y. 2010) ("[O]ffset against consequential damages for [countervailing] gains is appropriate.").  As only a few of the many possible examples of such potential offsets, Plaintiffs may well have benefitted from their bankruptcy filing because they were able to obtain medical underwriting information, which they had not purchased from LST or Coventry First, for a fraction of its value as a result of pressure created by the bankruptcy process.  *See* Ex. 16 ¶ 4.1; Ex. 17 ¶ 4.1.  And, separately, the value of the Policies may have increased as their underwriting was updated based on this information.  *See* Ex. 18 ¶ 3 (Plaintiffs arguing to the Bankruptcy Court that without the medical underwriting information "a purchaser of the policies would, among other things, be unable to . . . even calculate their current value").  Plaintiffs also were able to strip various contractual limitations on the Policies' resale, which likely enabled Plaintiffs to market the Policies to a broader universe of buyers.  *See* Ex. 3 Dkt. # 88 ¶ 2 (LST objecting to Plaintiffs' proposed bid procedures as disregarding contractual transfer limitations); *id.* Dkt. # 98 (order approving Plaintiffs' proposed bid procedures without modification).  Plaintiffs also were able to strip Coventry First's servicing rights in the bankruptcy, which saved them significant costs associated therewith, and likely allowed them to sell the Policies for more than they otherwise could have.  *See* Ex. 16 ¶ 5.1(b); Ex. 17 ¶ 5.1(b).  Defendants have not taken meaningful discovery on any of these issues.

To enable Defendants to appropriately explore Plaintiffs' new claim, this Court would have to re-open fact discovery, notwithstanding its rejection of Plaintiffs' recent efforts to do precisely that.  *See* Dkt. # 68 at 4–6; Dkt. # 80 at 4.  Then the Court would have to reverse Judge

Cote's 2008 order regarding the scope of Plaintiffs' document production, and Plaintiffs would have to make an entirely new production of documents post-dating their bankruptcy filing, which Defendants would have to process and review, at significant expense (to say nothing of the delay it would occasion). Defendants would then have to identify all entities whose fees comprise the claimed $12,718,973, and serve third-party document discovery targeted at the issues implicated by Plaintiffs' new theory. Defendants would have to process and review all documents produced in response to that discovery, again at significant expense. Defendants would then have to re-open numerous depositions to re-question Plaintiffs' witnesses regarding the bankruptcy fees and costs. The Court also would have to revisit its recent order confirming Judge Cote's limitation of the parties to ten depositions each, *see* Dkt. # 68 at 4–6; Dkt. # 80 at 4, as Defendants would have to take numerous new third-party depositions as well. And all of this would have to occur more than a year after fact discovery closed.

The caselaw is clear that imposing this burden on an adversary is far from harmless. *See, e.g.*, *Design Strategy*, 469 F.3d at 297 ("The prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened to determine whether Design's calculations were proper."); *Rienzi*, 2011 WL 1239867, at *4 ("The prejudice to Rienzi is particularly great because discovery is closed and would have to be reopened for Rienzi to appropriately respond to the [bankruptcy] damages calculations."); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 Civ. 3698(LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) ("The prejudice to [counterclaim defendant] is particularly great because discovery, which closed over four months ago, would have to be reopened for [counterclaim defendant] appropriately to respond to [counterclaim plaintiff's] damages calculations."). As one court aptly put it: "Because plaintiff did not allege this theory or produce any evidence of it during the

past three years, defendant had no reason to conduct any discovery relating to [the new damages theory].  Clearly, if we were to allow plaintiff to pursue this theory at trial, we would have to provide defendant with sufficient time to conduct the appropriate discovery.  Not only would defendant want to retain [an appropriate] expert, which would cause it to incur further cost in expert and legal fees, it would be required to modify its defense strategy.  To require defendant to incur additional costs and to change its strategy on the eve of trial because plaintiff has concocted a new theory three years into the litigation is simply not fair and would, in a real sense, unduly prejudice defendant." *Roberts v. Ground Handling, Inc.*, No. 04 Civ. 4955(WCC), 2007 WL 2753862, at *5 (S.D.N.Y. Sept. 20, 2007).

### B.      Preclusion Is the Appropriate Sanction Under Rule 37(c)(1).

Given that the standard for Rule 37(c)(1) sanctions is satisfied, this Court is left to determine what sanction should be imposed.  The answer is clear—Plaintiffs should be precluded from seeking bankruptcy fees or costs.  *See, e.g.*, *Rienzi*, 2011 WL 1239867, at *5 (precluding party from supplementing its damages with bankruptcy damages, because party failed to identify category of damages until after fact discovery closed).

Courts in this circuit apply a four-factor test when assessing whether preclusion is appropriate under Rule 37(c):  "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance.'"  *Spotnana*, 2010 WL 3341837, at *2 (alterations in original) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *see also Design Strategy*, 469 F.3d at 296 (same).

In *Design Strategy*, the Second Circuit found no abuse of discretion in the District Court's decision to preclude the damages theory in question.  469 F.3d at 297.  It based that

20

determination on the first, third, and fourth factors, holding that:   (1) the plaintiff had not explained its failure to include the category in its initial disclosures; (3) the defendant would be "severe[ly]" prejudiced, as it would have to reopen discovery; and (4) the fact that discovery had been closed for approximately one and one-half years and trial was set to begin shortly weighed heavily "on both the prejudice and possibility of continuance factors." *Id.* at 296–97.  The Court of Appeals reached this conclusion notwithstanding that the second factor weighed against preclusion because evidence of the plaintiff's new damages theory was "essential to proving" that theory. *Id.*  That is true, but it is also tautological—without evidence of any damages theory, the plaintiff will not be able to prove that theory. *Id.*  As the Court held in *Design Strategy*, however, that is no barrier to preclusion where the remaining three factors favor that sanction.

The court's holding in *Spotnana* was similar:  "Here, ATA has offered no explanation for its failure to disclose a computation of its damages.  The prejudice to Spotnana is particularly great because discovery, which closed over four months ago, would have to be reopened for Spotnana appropriately to respond to ATA's damages calculations.  And the closure of discovery four months ago also weighs strongly against the possibility of a continuance.  These three factors outweigh the importance of ATA's damages evidence, even though ATA may be denied any recovery as a result, because ATA has disregarded its discovery obligations without any explanation at all."   2010 WL 3341837, at *2; *see also Rienzi*, 2011 WL 1239867, at *5 ("Because Puglisi has disregarded its discovery obligations without a sufficient explanation, these three factors outweigh the importance of the damages evidence, even though Puglisi may be denied any recovery under this theory as a result."); *Roberts*, 2007 WL 2753862, at *4 (not explicitly applying four-factor test, but precluding damages theory that was not disclosed in,

*inter alia*, initial disclosures, plaintiffs' own deposition, or interrogatory responses, and was not revealed until after close of discovery).

In this case, three of the four factors—with the second predictably being the exception[8]— strongly favor preclusion. The <u>first</u> factor (Plaintiffs' explanation for the failure to disclose) favors preclusion because, for all of the reasons stated, Plaintiffs knew of the bankruptcy when they filed this case and had every opportunity to seek fees and costs incurred therein. *See supra* pp. 13–14. There is no legitimate explanation for their decision to add a new damages theory nearly a year following the close of fact discovery.

The <u>third</u> factor (prejudice to Defendants) similarly favors preclusion because, as explained, Defendants would suffer substantial prejudice from having to re-do substantial aspects of fact discovery in order to address the complicated issues implicated by Plaintiffs' new damages category. *See supra* pp. 15–20. The real, severe prejudice imposed by Plaintiffs' failure to comply with their Rule 26 obligations is self-evident.

The <u>fourth</u> factor (possibility of a continuance) strongly favors preclusion as well. A continuance for the purpose of re-opening fact discovery would be directly contrary to this Court's ruling on Plaintiffs' recent efforts to re-open fact discovery to take additional depositions. *See* Dkt. # 68 at 4–6; Dkt. # 80 at 4. Moreover, given the delays to date in this case, a continuance would be entirely inappropriate. This case has been stalled for more than a year by Plaintiffs' improper efforts to undo Judge Cote's rulings regarding fact discovery, *see id.* (rejecting these efforts), and Plaintiffs' refusal to timely or adequately respond to Defendants'

---

[8] As in *Design Strategy*, *Rienzi*, *Spotnana*, and presumably every case in which evidence of a particular damages theory is precluded, without evidence of bankruptcy fees and costs, Plaintiffs obviously will not be able to recover them. To that extent, the second factor favors Plaintiffs. The strength of this factor, however, is diluted in this case by the fact that those fees and expenses account for less than three percent of Plaintiffs' total claimed damages ($12,718,973 out of $448,464,894.36 in total claimed damages = 2.8%).

contention interrogatories, with which the Court is familiar.  This case should have proceeded to expert discovery long ago, and further delays for the purpose of re-doing substantial components of fact discovery because Plaintiffs failed to abide by their Rule 26 obligations would significantly exacerbate this state of affairs.  Indeed, the parties have been litigating this case or its predecessor since 2007, with only a brief interlude between the two actions.  Plaintiffs had every opportunity to request the fees and costs they claim to have incurred in bankruptcy, which would have allowed Defendants to fully investigate and contest the request.  But they did not, and fact discovery closed on March 26, 2010.  It is far too late to return to the beginning of fact discovery, and far too prejudicial to allow Plaintiffs to add an entirely new damages theory without doing so.

## II.     Plaintiffs Are Equitably Estopped From Pursuing Their Untimely Claim for Bankruptcy Fees and Costs.

For essentially the same reasons, Plaintiffs' untimely effort to add a claim for bankruptcy fees and costs is barred by the doctrine of equitable estoppel.  "A party claiming equitable estoppel 'must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.'"  *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 447 (2d Cir. 2006) (quoting *In re Becker*, 407 F.3d 89, 99 (2d Cir. 2005)).  As the Second Circuit has stated, "[u]nder federal law, a party may be estopped from pursuing a claim or defense where:  1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment."  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).  The "misrepresentation of fact" may take the form of either an affirmative misstatement or a material omission, or conduct

that reasonably induces reliance.  *See id.*; *DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001) (so noting).

Defendants will not restate the entirety of the foregoing discussion, but suffice it to say that the elements of equitable estoppel are satisfied for essentially the same reasons that preclusion is appropriate under Rule 37(c)(1).  Plaintiffs made numerous representations—*i.e.*, in successfully objecting to the production of documents post-dating the bankruptcy on the grounds that they "do not concern the events at issue in the lawsuit," Ex. 2 at 1 n.2, as well as in their complaint, Rule 26(a)(1) disclosures, Rule 30(b)(6) deposition testimony, and initial interrogatory responses—that they are not seeking bankruptcy fees or costs in this case.  Plaintiffs obviously knew and intended that Defendants would rely on these representations.  That is the very purpose of such disclosures.  *See, e.g., Danes v. Senior Residential Care of Am., Inc.*, No. 04-C-594, 2007 WL 30880, at *3 (E.D. Wisc. Jan. 4, 2007) (striking untimely disclosure of damages category because, "[i]f parties are unable to rely on Rule 26(a) disclosures, such procedures are meaningless.").  Moreover, Plaintiffs are uniquely in control of their own claims, and certainly cannot assert that they were not in a position to know that their repeated representations were inaccurate.  And, to be sure, Defendants did rely on Plaintiffs' representations throughout fact discovery.  *See supra* pp. 15–20.  Moreover, for all of the reasons set forth above, that reliance was detrimental.  If Plaintiffs were allowed to proceed on their new damages category, Defendants would be forced to re-do entire facets of the discovery in this case at significant expense, or proceed without any discovery on that category.  Neither is an acceptable choice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Preclude Plaintiffs' Request for "Costs and Fees Related to the Bankruptcy Process" should be granted.

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that, on the 7th day of June, 2011, in accordance with Fed. R. Civ. P. 5

and the General Order on Electronic Case Filing (ECF), the foregoing was served via the district

court's ECF system on:


Jeffrey L. Liddle, Esq.
James R. Hubbard, Esq.
James Halter, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue, 8th Floor
New York, NY 10022
*Attorneys for Plaintiffs*


/s/Thomas Windom
Thomas Windom