REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED and RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED, <br><br>Plaintiffs, <br><br>v. <br><br>COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., and LST I LLC, <br><br>Defendants. | Case No. 09 Civ. 1086 (VM)(DCF) (ECF Case) |

## DECLARATION OF JAMES W. HALTER IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS' REQUEST FOR "COSTS AND FEES RELATED TO THE BANKRUPTCY PROCESS"

I, James W. Halter, an attorney duly admitted to practice in the courts of the State of New York and the Southern District of New York, declare as follows:

1.    I am an associate with the law firm of Liddle & Robinson, L.L.P, counsel for Plaintiffs Ritchie Risk-Linked Strategies Trading (Ireland), Limited and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited. I submit this declaration in opposition to Defendants' Motion to Preclude Plaintiffs' Request for "Costs and Fees Related to the Bankruptcy Process."

2.    Attached hereto as Exhibit A is a true and correct copy of a subpoena from Defendants directed to Houlihan, Lokey, Howard & Zukin, Inc. dated February 5, 2005 (excluding Exhibit B thereto).

REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

    3.      Attached hereto as Exhibit B is a true and correct copy of a subpoena from Defendants directed to Development Specialists, Inc. dated January 8, 2010.

    4.      Attached hereto as Exhibit C is a true and correct copy of a subpoena from Defendants directed to Lewis & Ellis, Inc. dated February 5, 2010.

    5.      Attached hereto as Exhibit D is a true and correct copy of a subpoena from Defendants directed to ABN Amro Bank, N.V. dated January 7, 2010.

    6.      Attached hereto as Exhibit E is a true and correct copy of the relevant testimony from the March 24, 2010 deposition transcript of Fred Caruso in this matter, in condensed format.

    7.      Attached hereto as Exhibit F is a true and correct copy of the relevant testimony from the March 25, 2010 deposition transcript of Neil Bivona, a representative of ABN AMRO Bank, N.V. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, in this matter, in condensed format.

    8.      Attached hereto as Exhibit G is a true and correct copy of the relevant testimony from the March 11 and 12, 2010 deposition transcript of William Hobbs, a representative of Plaintiffs pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, in this matter, in condensed format.

    9.      Attached hereto as Exhibit H is a true and correct copy of Plaintiffs' Objections and Responses to Defendants' Second Set of Interrogatories in this matter, dated March 25, 2010.

REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

10.     Attached hereto as Exhibit I is a true and correct copy of Plaintiffs' Second Amended Objections and Responses to Defendants' Second Set of Interrogatories in this matter, dated March 14, 2011 (excluding Schedule A thereto).

11.     Attached hereto as Exhibit J is a true and correct copy of a letter from Thomas P. Puccio, Esq., then-counsel to Plaintiffs, to the Honorable Denise L. Cote, regarding the matter *Ritchie Capital Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC)(DCF) (S.DN.Y. May 2, 2007) ("First Ritchie Suit"), dated March 13, 2008.

12.     Attached hereto as Exhibit K is a true and correct copy of Plaintiffs' Rule 26(a)(1) Initial Disclosures from the First Ritchie Suit, dated July 5, 2007.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: June 17, 2011
       New York, New York

_____
                James W. Halter

3

REDACTED VERSION
COMPLETE VERSION FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that, on this 17th day of June, 2011, I caused true and correct copies of the unredacted version of the foregoing to be served, by e-mail and by overnight delivery, on:

>David A. Forkner, Esq.
>Kenneth J. Brown, Esq.
>Williams & Connolly LLP
>725 Twelfth Street, N.W.
>Washington, D.C. 20005
>dforkner@wc.com
>kbrown@wc.com
>*Counsel for Defendants*

On this 17th day of June, 2011, Counsel for Defendants were also served with a redacted version of the foregoing by ECF.

Dated: June 17, 2011
     New York, New York

James W. Halter

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RITCHIE RISK-LINKED STRATEGIES            )
TRADING (IRELAND), LIMITED, and RITCHIE   )
RISK-LINKED STRATEGIES TRADING            )
(IRELAND) II, LIMITED,                    )
                                          )  Civil Action No. 09-cv-01086-DLC
                    Plaintiffs,           )
                                          )  (ECF)
        v.                                )
                                          )
COVENTRY FIRST LLC, THE COVENTRY          )
GROUP, INC., MONTGOMERY CAPITAL, INC.,    )
and LST I LLC,                            )
                                          )
                    Defendants.           )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF SUBPOENA

Please take notice that, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant LST I LLC intends to serve on or before February 5, 2010 the enclosed subpoena for

the production of documents to Houlihan, Lokey, Howard & Zukin, Inc. The documents to be

produced are indicated in Exhibit A to the enclosed subpoena.

WILLIAMS & CONNOLLY LLP

Kenneth J. Brown
Dane H. Butswinkas
David A. Forkner
Katherine L. O'Connor (0902)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2010, I caused to be served a copy of the foregoing on the following individuals via electronic mail and overnight mail.

LIDDLE AND ROBINSON, LLP
Jeffrey L. Liddle
James R. Hubbard
James W. Halter
800 Third Avenue, 8th Floor
New York, NY 10022
(212) 687-8500
(212) 687-1505 (telecopy)

*Attorneys for Plaintiffs*

Kenneth J. Brown

2

Issued by the
## UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), et al.,
  Plaintiffs,

  V.

LST I LLC, et al.,
  Defendants.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1]  09 –CV-1086-DLC

TO:   Houlihan, Lokey, Howard & Zukin, Inc.
      c/o CT Corporation System
      111 Eighth Avenue
      New York, New York 10011

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☐ YOU ARE COMMANDED to appear at the date, place, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded by videographic and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See EXHIBIT A, ATTACHED.**

| PLACE | DATE AND TIME |
|---|---|
| Hodgson Russ, LLP<br>60 East 42nd Street<br>37th Floor<br>New York, NY 10165-0160<br>Attn: S. Robert Schrager, Esq. | February 17, 2010, 12:00 p.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Defendants | DATE<br>February 5, 2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Kenneth J. Brown
Williams & Connolly, 725 Twelfth Street, N.W., Washington, D.C.  20005
Tel: (202) 434-5000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AD 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct:

Executed on _____
        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

### EXHIBIT A

To:   Houlihan, Lokey, Howard & Zukin, Inc.
      c/o CT Corporation System
      111 Eighth Avenue
      New York, New York 10011

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, please produce the documents and things described herein at the place and time specified in the attached subpoena, consistent with the Definitions and Instructions below.

### DEFINITIONS

As used in these Requests, the following terms shall have the meaning set forth and described below:

A.    As used herein, the terms "all" and "each" shall have the full meanings ascribed to them by Southern District of New York Local Civil Rule 26.3(d)(1).

B.    As used herein, the terms "and" and "or" shall have the full meanings ascribed to them by Southern District of New York Local Civil Rule 26(d)(2).

C.    As used herein, the term "communication" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(1).

D.    As used herein, the term "concerning" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(7).

E.    As used herein, the term "document" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(2).

F.    As used herein, the term "person" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(6).

G.    As used herein, the term "AIG" means American International Group, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

H.    As used herein, the term "Barclays" means Barclays Bank PLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

I.     As used herein, the term "Bidding Procedures" means the Bidding Procedures created in connection with the Ritchie I and II Bankruptcy and dated October 1, 2007.

J.     As used herein, the term "BlueCrest" means BlueCrest Capital Management LLP, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

K.     As used herein, the term "Conveyed Life Settlement Policy" means any Life Settlement Policy or insurance policy that has been sold by LST I to Ritchie I or Ritchie II.

L.     As used herein, the term "Coventry First" means Coventry First LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

M.     As used herein, the term "Defendants" means Coventry First, The Coventry Group, Inc., Montgomery Capital, Inc., and LST I, and includes their officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates, collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

N.     As used herein, the term "First Ritchie Complaint" means the complaint filed in civil action captioned Ritchie Capital Management, LLC, et al. v. Coventry First LLC, No. 07-CV-3494-DLC, in the United States District Court for the Southern District of New York and any amendments thereto.  For your reference, a copy of the First Ritchie Complaint is attached as Exhibit B to the subpoena accompanying these requests.

O.     As used herein, the term "Gottex" means Gottex Fund Management, Sàrl, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

P.     As used herein, the term "Huizenga Managers Fund" means Huizenga Managers Fund LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

Q.     As used herein, the term "includes" and "including" mean "including without limitation." Under no circumstances shall the use of the words "includes" or "including" in any request be construed to limit the scope of the documents responsive to any request.

R.     As used herein, the term "Lehman Brothers" means Lehman Brothers, Inc. and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

S.     As used herein, the term "Life Settlement Policy" means a policy of life insurance.

T.     As used herein, the term "LST I" means LST I LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

U.     As used herein, the term "MBIA" means MBIA, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

V.     As used herein, the term "NYAG" means the New York Attorney General and all of the NYAG's assistants, deputies, and other employees.

W.     As used herein, the term "NYAG Lawsuit" refers to the lawsuit filed by the New York Attorney General on or about October 26, 2006, against Coventry First, Montgomery Capital, Inc., and Reid S. Buerger.

X.     As used herein, the term "NYAG Investigation" refers to any formal or informal investigation or inquiry conducted by the New York Attorney General concerning the Origination of Life Settlement Policies generally or Coventry First's Origination of Life Settlement Policies in particular.

Y.     As used herein, the term "Original Seller" means a person or entity that sold a Conveyed Life Settlement Policy to Coventry First.

Z.     As used herein, the terms "Originate" or "Origination" mean the process of purchasing or attempting to purchase Life Settlement Policies.

AA.    As used herein, the term "OTPP" means Ontario Teachers' Pension Plan, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

BB.    As used herein, the term "Plaintiffs" means Ritchie I and Ritchie II collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and includes any of their officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

CC.    As used herein, the term "Phoenix" means The Phoenix Companies, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

DD.    As used herein, "Potential Financing" means any actual, attempted, proposed, or contemplated financing, credit, debt, equity, or liquidity for, in, or of (a) Ritchie I, Ritchie II, Ritchie III or Ritchie IV; and (b) the purchase, sale, securitization, or monetization of any Conveyed Life Settlement Policy.  "Potential Financing" includes any actual, attempted, proposed, or contemplated purchase or sale of any derivative or synthetic concerning Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

EE.    As used herein, the term "Potential Financier" means any person that considered being a source of Potential Financing or with whom Plaintiffs communicated concerning being a source of Potential Financing.

FF.    As used herein, the term "Potential Investment" means any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—any security or debt obligation or other economic interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.  This includes any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—senior notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

GG.    As used herein, the term "Potential Investor" means any person that considered making a Potential Investment or with whom Plaintiffs communicated concerning a Potential Investment.

- 4 -

HH.    As used herein, the term "Potential Purchase" means any actual, attempted, proposed, or contemplated purchase or receipt of any interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.  This includes any actual, attempted, proposed, or contemplated purchase, contribution, or receipt of notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, equity, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

II.    As used herein, the term "Potential Purchaser" means any person that considered making a Potential Purchase or with whom Plaintiffs communicated concerning a Potential Purchase.

JJ.    As used herein, the term "Round Two Qualified Bidder" has the same meaning given to it in the Bidding Procedures.

KK.    As used herein, the term "RCM" means Ritchie Capital Management, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

LL.    As used herein, the term "Ritchie I" means Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

MM.    As used herein, the term "Ritchie II" means Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd., and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

NN.    As used herein, the term "Ritchie III" means Ritchie Risk-Linked Strategies Trading III, LP, and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.  The term "Ritchie III" also means any other entity commonly known as "Ritchie III" that was intended to purchase Conveyed Life Settlement Policies from Ritchie I and Ritchie II as part of any proposed securitization, and includes the officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates of each such entity.

- 5 -

OO.     As used herein, the term "Ritchie IV" means Ritchie Risk-Linked Strategies Trading (Ireland) IV, Ltd., and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

PP.     As used herein, the term "Ritchie I and II Bankruptcy" means bankruptcy petition numbers 07-11906-brl and 07-11907-brl, filed on or about June 20, 2007, in the United States Bankruptcy Court for the Southern District of New York, and all proceedings concerning those petitions.

QQ.     As used herein, the term "Ritchie I MPPA" means the Master Policy Purchase Agreement between LST I and Ritchie I executed on or about June 30, 2005, as the same may have been amended, modified, or supplemented from time to time.

RR.     As used herein, the term "Ritchie II MPPA" means the Master Policy Purchase Agreement between LST I and Ritchie II executed on or about December 15, 2005, as the same may have been amended, modified, or supplemented from time to time.

SS.     As used herein, the term "Second Ritchie Complaint" means the complaint filed in civil action captioned Ritchie Risk-Linked Strategies Trading (Ireland) Ltd., et al. v. Coventry First LLC, et al., No. 09-CV-1086-DLC, in the United States District Court for the Southern District of New York.  For your reference, a copy of the Second Ritchie Complaint is attached as Exhibit C to the subpoena accompanying these requests.

TT.     As used herein, the term "Silver Creek" means Silver Creek Capital Management LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

UU.     As used herein, the term "Silver Point" means Silver Point Capital, L.P., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

VV.     As used herein, the term "Societe Generale" means Société Générale, a French Banking Institution, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

WW.   As used herein, the term "Swiss Re" means Swiss Reinsurance Company Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

XX.   As used herein, the term "Qualified Bidder" has the same meaning given to it in the Bidding Procedures.

YY.   As used herein, the term "UBS" means UBS Securities, LLC, UBS Loan Finance LLC, and UBS AG, London Branch, and includes their officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

ZZ.   As used herein, the term "U.S. Bank" means U.S. Bank National Association, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

AAA.   As used herein, the term "XE Capital" means XE Capital Management, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

BBB.   As used herein, the terms "you," "yours," and "Houlihan Lokey" mean Houlihan, Lokey, Howard, & Zukin, Inc., and includes Houlihan Lokey's officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

## INSTRUCTIONS

A.   You are to produce the requested documents in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York.

B.   Pursuant to Southern District of New York Local Civil Rule 26(d)(3), the use of the singular form of any word includes the plural and vice versa.

C.   Pursuant to Southern District of New York Local Civil Rule 26(d)(2), the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

D.   Any claim of privilege should be made pursuant to Southern District of New York Local Rule 26.2.

- 7 -

E.      Pursuant to Fed. R. Civ. P. 45(d)(1)(A), documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each of the following requests.

F.      Pursuant to Fed. R. Civ. P. 45(d)(1)(B), electronically stored information shall be produced in .tif, .pdf, or native format, whichever is most convenient or practical, with any load and text files necessary to render electronically stored information searchable in a Concordance database.  LST I reserves the right to request metadata, when appropriate, including for spreadsheets.

G.      The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the specification all responses that might otherwise be construed to be outside its scope.

H.      If in responding to any of these document requests you encounter any ambiguity in construing the document request or any definition or instruction relevant to the document request, set forth the matter deemed ambiguous and the construction selected or used in answering the document request.

I.      Unless stated otherwise, the relevant time period shall be January 1, 2005, through the present.

J.      To avoid duplication, these requests do not seek documents or communications produced by Defendants in *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., et al. v. Coventry First LLC, et al.*, Adversary Proceeding #: 07-03197-brl.

## REQUESTS

1.      Documents and communications sufficient to show Houlihan Lokey's background, experience, and expertise in the life settlement industry or with Life Settlement Policies.  This includes documents and communications sufficient to show all instances in which Houlihan Lokey has been engaged to provide services of any kind concerning the life settlement industry or Life Settlement Policies.

2.     All documents and communications concerning Ritchie I and II's retention of Houlihan Lokey. This includes all documents and communications concerning the reason(s) for Plaintiffs' retention of Houlihan Lokey. *See* December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Complaint ¶ 2.

3.     All documents and communications concerning services performed by Houlihan Lokey for Plaintiffs or RCM related, in any way, to any Conveyed Life Settlement Policy, including all engagement letters, contracts, and invoices, including reviewing Plaintiffs' assets, stratifying those assets, discussing sales strategies, and soliciting interest from prospective investors

4.     All documents and communications concerning Houlihan Lokey's review or evaluation of Ritchie I and II's assets. *See* December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Complaint ¶ 3.

5.     All documents and communications concerning the sale, securitization, or potential sale or securitization of some, all or substantially all of Ritchie I and II's assets. *See, e.g.,* December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Complaint ¶ 4. This includes without limitation all documents and communications concerning Houlihan Lokey's provision of advice to Ritchie I and II concerning the sale of their assets, the development of a sale process, and the analysis of information needed for a successful sale of the Conveyed Life Settlement Policies, and any impediments to sale of such assets, including any disputes regarding the ownership of information, authorizations, powers of attorney, and medical records pertaining to any Conveyed Life Settlement Policy. *See* December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Complaint ¶ 2.

6.     All documents and communications concerning the information that was allegedly "integral to assessing the value of the portfolios." *See* August 3, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Motion To Conduct Discovery.

7.     All documents and communications concerning discussions of potential sale, securitization, or strategies to maximize the value of Ritchie I and II's assets, including any exit

- 9 -

strategies. *See* December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors'
Complaint ¶ 3; Transcript of December 24, 2007 Deposition of Bradley C. Geer at 13.

  8.  All documents and communications concerning Houlihan Lokey's solicitation of
potential purchasers of, or investors in, Ritchie I and II's assets including any Conveyed Life
Settlement Policy, and discussions with potential bidders regarding Ritchie I and II's assets. *See*
December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Complaint ¶ 3;
Transcript of December 24, 2007 Deposition of Bradley C. Geer at 8, 13.

  9.  All documents and communications concerning bids submitted during the process
of selling Ritchie I and II's assets, including any Conveyed Life Settlement Policy. *See*
December 21, 2007 Affidavit of Bradley C. Geer in Support of Debtors' Complaint ¶ 3. This
includes without limitation all documents and communications concerning consideration of, and
advice to Ritchie I and II regarding, such bids, and auction procedures. *See id.*

  10.  All documents and communications concerning Qualifying Bidders on Life
Settlement Policies in the Ritchie I and II Bankruptcy.

  11.  All documents and communications concerning Round Two Qualified Bidders on
Life Settlement Policies in the Ritchie I and II Bankruptcy.

  12.  All documents and communications concerning any Conveyed Life Settlement
Policy.

  13.  All documents and communications concerning the Origination or sale of any
Conveyed Life Settlement Policy.

  14.  All documents and communications concerning any Original Seller of any
Conveyed Life Settlement Policy, including all communications with Original Sellers.

  15.  All documents and communications concerning Potential Investments from
January 1, 2005, through the date on which the final Conveyed Life Settlement Policy was sold
in the Ritchie I and II Bankruptcy. This includes all documents and communications with or
concerning Potential Investors, including AIG, BlueCrest, Edward J. Stern, Gottex, Huizenga

Managers Fund, OTPP, Phoenix, Silver Creek, Silver Point, Societe Generale, U.S. Bank, and XE Capital.

16.     All documents and communications concerning Potential Purchases from January 1, 2005, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy. This includes all documents and communications with or concerning Potential Purchasers, including AIG, BlueCrest, Edward J. Stern, Gottex, Huizenga Managers Fund, OTPP, Phoenix, Silver Creek, Silver Point, Societe Generale, U.S. Bank, and XE Capital.

17.     All documents and communications concerning Potential Financing from January 1, 2005, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy. This includes all documents and communications with or concerning Potential Financiers, including Barclays, Lehman Brothers, MBIA, Swiss Re, and UBS.

18.     All documents and communications concerning the value of any Conveyed Life Settlement Policy. This includes all profit and loss statements, market and cash flow analyses, modeling and underwriting analyses, and projected returns concerning any such Conveyed Life Settlement Policy. This also includes all documents and communications reflecting that Plaintiffs had any concerns regarding the purchase or marketability of any Conveyed Life Settlement Policy.

19.     All documents and communications concerning any Potential Purchaser's or Potential Investor's valuation of any Conveyed Life Settlement Policy, including without limitation medical underwriting assumptions; actuarial assumptions, data and tables; and interest rate fluctuations.

20.     All documents and communications concerning any sale, securitization, or monetization—including any attempted or contemplated sale, securitization, or monetization—of any Conveyed Life Settlement Policy. This includes all documents and communications

- 11 -

concerning any rating, provisional rating and the negotiation, formation, or termination of any agreement for the sale, securitization, or monetization of any Conveyed Life Settlement Policy.

21.     All documents and communications concerning the Ritchie I MPPA or Ritchie II MPPA and any amendments thereto, including their negotiation, formation, and termination, and any representations or warranties therein.

22.     All documents and communications concerning rescission, the threat of rescission, defenses to rescission, or the potential for rescission of any Conveyed Life Settlement Policy Originated by Coventry First.

23.     All non-public documents and communications concerning the NYAG Lawsuit or the NYAG Investigation, including any discussions with any Defendant, any Plaintiff, or any other person.

24.     All documents and communications concerning the lawsuit commenced by the First Ritchie Complaint or the lawsuit commenced by the Second Ritchie Complaint, regardless of the date of their creation.  This includes all communications concerning the lawsuit commenced by the First Ritchie Complaint or the lawsuit commenced by the Second Ritchie Complaint with: Plaintiffs or any person acting on their behalf; the NYAG; any investor in Ritchie I or Ritchie II; any purchaser or potential purchaser of a Conveyed Life Settlement Policy; any former employee of Plaintiffs; any journalist or reporter; or any other person.

25.     All documents and communications concerning investigations, civil suits, or criminal proceedings by the United States Securities and Exchange Commission, the NYAG, Massachusetts Secretary of the Commonwealth, and any other person into Plaintiffs' financial or business operations from 2001 to the present, including sticky-asset transactions and market timing activities.

26.     All documents and communications concerning the use of any mortality table, mortality rating, mortality rating provider, life expectancy, or other actuarial information in connection with any transaction involving any Conveyed Life Settlement Policy.

27.     All documents and communications concerning Plaintiffs' reputation from January 1, 2004, to the present, including any diminishment thereof.  This includes all documents and communications reflecting concerns expressed by any person regarding Plaintiffs' reputation or the "Ritchie reputational risk."  This includes all documents and communications concerning potential changes to the names of Ritchie I and Ritchie II.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RITCHIE RISK-LINKED STRATEGIES            )
TRADING (IRELAND), LIMITED, and RITCHIE   )
RISK-LINKED STRATEGIES TRADING            )
(IRELAND) II, LIMITED,                    )
                                          )  Civil Action No. 09-cv-01086-DLC
                    Plaintiffs,           )
                                          )  (ECF)
          v.                              )
                                          )
COVENTRY FIRST LLC, THE COVENTRY          )
GROUP, INC., MONTGOMERY CAPITAL, INC.,    )
and LST I LLC,                            )
                                          )
                    Defendants.           )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## NOTICE OF SUBPOENA

Please take notice that, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant LST I LLC intends to serve on or before January 8, 2010 the enclosed subpoena for

the production of documents to Development Specialists, Inc. The documents to be produced are

indicated in Exhibit A to the enclosed subpoena.

WILLIAMS & CONNOLLY LLP

Katherine L. O'Connor (0902)
Dane H. Butswinkas
David A. Forkner
Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2010, I served a copy of the foregoing on the following individuals via electronic mail and overnight mail.

LIDDLE AND ROBINSON, LLP
Jeffrey L. Liddle
James R. Hubbard
James W. Halter
800 Third Avenue, 8th Floor
New York, NY 10022
(212) 687-8500
(212) 687-1505 (telecopy)

*Attorneys for Plaintiffs*

Katherine L. O'Connor

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| Ritchie Risk-Linked Strategies Trading (Ireland) Ltd. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Coventry First LLC et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   09-cv-01086-DLC

(If the action is pending in another district, state where:

                                                         )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Development Specialists, Inc.
     c/o CT Corporation System 111 Eighth Avenue New York, NY 10011

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A (attached).

| Place: Hodgson Russ, LLP<br>Attn: S. Robert Schrager, Esq.<br>60 East 42nd St., 37th Floor New York, NY 10165-0160 | Date and Time:<br><br>01/22/2010 4:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   01/08/2010

                    *CLERK OF COURT*

                                        OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
LST I LLC _____, who issues or requests this subpoena, are:

Katherine L. O'Connor
Williams & Connolly, LLP, 725 12th Street N.W., Washington D.C. 20005, 202-434-5000

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   09-cv-01086-DLC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____     on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

To:    Development Specialists, Inc.
       c/o CT Corporation System
       111 Eighth Avenue
       New York, NY 10011

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, please produce the documents and things described herein at the place and time specified in the attached subpoena, consistent with the Definitions and Instructions below.

## DEFINITIONS

As used in these Requests, the following terms shall have the meaning set forth and described below:

A.    As used herein, the terms "all" and "each" shall have the full meanings ascribed to them by Southern District of New York Local Civil Rule 26.3(d)(1).

B.    As used herein, the terms "and" and "or" shall have the full meanings ascribed to them by Southern District of New York Local Civil Rule 26.3(d)(2).

C.    As used herein, the term "communication" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(1).

D.    As used herein, the term "concerning" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(7).

E.    As used herein, the term "document" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(2).

F.    As used herein, the term "person" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(6).

G.    As used herein, the term "ABN" means ABN Amro Bank, N.V. and ABN Amro Trustees, Limited, and includes their officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

H.      As used herein, the term "AVS Underwriting" means AVS Underwriting LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

I.      As used herein, the term "Barclays" means Barclays Bank PLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

J.      As used herein, the term "Conveyed Life Settlement Policy" means any Life Settlement Policy or insurance policy sold by LST I to Ritchie I or Ritchie II.

K.      As used herein, the term "Coventry Action" has the same meaning given to it in the Second Modified Chapter 11 Plan of Liquidation for Ritchie Risk-Linked Strategies Trading (Ireland) Limited.

L.      As used herein, the term "Coventry First" means Coventry First LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

M.      As used herein, the term the "Debtors" has the same meaning given to it in the June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 1.

N.      As used herein, the term "Defendants" means Coventry First, The Coventry Group, Inc., Montgomery Capital, Inc., and LST I, and includes their officers, directors, employees, partners, corporate parents, subsidiaries and affiliates, collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

O.      As used herein, the term "Draw Account" has the same meaning given to it in the Ritchie I Amended and Restated Master Policy Purchase Agreement dated September 8, 2005.

P.      As used herein, the term "Gottex" means Gottex Fund Management, Sàrl, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

Q.      As used herein, the term "Houlihan Lokey" means Houlihan, Lokey, Howard, & Zukin, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

R.      As used herein, the terms "includes" and "including" mean "including without limitation." Under no circumstances shall the use of the words "includes" or "including" in any request be construed to limit the scope of the documents responsive to any request.

S.      As used herein, the term "Lehman Brothers" means Lehman Brothers, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

T.      As used herein, the term "Life Settlement Policy" means a policy of life insurance.

U.      As used herein, the term "LST I" means LST I LLC, and includes its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

V.      As used herein, the term "MBIA" means MBIA, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

W.      As used herein, the term "Mercer" means Mercer, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

X.      As used herein, the term "Moody's" means Moody's Investors Service, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

Y.      As used herein, the term "NYAG" means the New York Attorney General and all of the NYAG's assistants, deputies, and other employees.

Z.      As used herein, the term "NYAG Investigation" refers to any formal or informal investigation or inquiry conducted by the NYAG concerning the Origination of Life Settlement Policies generally or Defendants' Origination of Life Settlement Policies in particular.

AA.     As used herein, the term "NYAG Lawsuit" refers to the lawsuit filed by the NYAG on or about October 26, 2006, against Coventry First, Montgomery Capital, Inc., The Coventry Group, Inc., and Reid S. Buerger.

BB.     As used herein, the term "Original Seller" means a person or entity that sold a Conveyed Life Settlement Policy to Coventry First.

CC.    As used herein, the terms "Originate" or "Origination" mean the process of purchasing or attempting to purchase Life Settlement Policies.

DD.    As used herein, the term "Orix" means Orix Corporation, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

EE.    As used herein, the term "OTPP" means Ontario Teacher's Pension Plan, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

FF.    As used herein, the term "Plaintiffs" means Ritchie I and Ritchie II collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

GG.    As used herein, the term "Potential Financing" means any actual, attempted, proposed, or contemplated financing, credit, debt, or liquidity for, in, or of (a) Ritchie I, Ritchie II, Ritchie III, or Ritchie IV; or (b) the purchase, sale, securitization, or monetization of any Conveyed Life Settlement Policy.  "Potential Financing" includes any actual, attempted, proposed, or contemplated purchase or sale of any derivative or synthetic concerning Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

HH.    As used herein, the term "Potential Financier" means any person that considered being a source of Potential Financing or with whom Plaintiffs communicated concerning being a source of Potential Financing.

II.    As used herein, the term "Potential Investment" means any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—any security or debt obligation or other economic interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.  This includes any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—senior notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

JJ.    As used herein, the term "Potential Investor" means any person that considered making a Potential Investment or with whom Plaintiffs communicated concerning a Potential Investment.

KK.    As used herein, the term "Potential Purchase" means any actual, attempted, proposed, or contemplated purchase or receipt of any interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.  This includes any actual, attempted, proposed, or contemplated purchase or receipt of notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

LL.    As used herein, the term "Potential Purchaser" means any person that considered making a Potential Purchase or with whom Plaintiffs communicated concerning a Potential Purchase.

MM.    As used herein, the term "RBS" means The Royal Bank of Scotland plc, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

NN.    As used herein, the term "RCM" means Ritchie Capital Management, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

OO.    As used herein, the term "Ritchie I" means Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

PP.    As used herein, the term "Ritchie II" means Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

QQ.    As used herein, the term "Ritchie III" means Ritchie Risk-Linked Strategies Trading III, LP, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.  The term "Ritchie III" also means any other entity commonly known

as "Ritchie III" that was intended to purchase Conveyed Life Settlement Policies from Ritchie I and Ritchie II as part of any proposed securitization, and includes the officers, directors, employees, partners, corporate parents, subsidiaries and affiliates of each such entity.

RR.     As used herein, the term "Ritchie IV" means Ritchie Risk-Linked Strategies Trading (Ireland) IV, Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

SS.     As used herein, the term "Ritchie I Asset Purchase Agreement" means all Asset Purchase Agreements executed by Ritchie I from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, including those entered into by and between Ritchie I and ABN or its assignees, as the same may have been amended, modified or supplemented from time to time.

TT.     As used herein, the term "Ritchie II Asset Purchase Agreement" means all Asset Purchase Agreements executed by Ritchie II from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, as the same may have been amended, modified or supplemented from time to time.

UU.     As used herein, the term "Ritchie I and II Bankruptcy" means bankruptcy petition numbers 07-11906-brl and 07-11907-brl, filed on or about June 20, 2007 in the United States Bankruptcy Court for the Southern District of New York, and all proceedings concerning those petitions.

VV.     As used herein, the term "Ritchie I Debtor-In-Possession Credit Agreement" means all Debtor-In-Possession Credit Agreements executed by Ritchie I from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, including those entered into by and between Ritchie I and ABN, as the same may have been amended, modified or supplemented from time to time.

WW.     As used herein, the term "Ritchie II Debtor-In-Possession Credit Agreement" means all Debtor-In-Possession Credit Agreements executed by Ritchie II from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I

and II Bankruptcy, including those entered into by and between Ritchie II and Ritchie Risk-Linked Strategies Trading, Ltd., or by a direct or indirect subsidiary of Ritchie Risk-Linked Strategies, Ltd., as the same may have been amended, modified or supplemented from time to time.

XX.    As used herein, the term "Ritchie I Intercreditor Agreement" means the Amended and Restated Intercreditor Agreement, dated October 21, 2005, and entered into by and among Ritchie I, ABN, and others, as the same may have been amended, modified or supplemented from time to time.

YY.    As used herein, the term "Ritchie II Intercreditor Agreement" means the Amended and Restated Intercreditor Agreement, dated December 15, 2005, and entered into by and among Ritchie II, U.S. Bank, and others, as the same may have been amended, modified or supplemented from time to time.

ZZ.    As used herein, the term "Ritchie I MPPA" means the Master Policy Purchase Agreement between LST I and Ritchie I executed on or about June 30, 2005, as the same may have been amended, modified, or supplemented from time to time.

AAA.    As used herein, the term "Ritchie II MPPA" means the Master Policy Purchase Agreement between LST I and Ritchie II executed on or about December 15, 2005, as the same may have been amended, modified, or supplemented from time to time.

BBB.    As used herein, the term "Ritchie I Pre-Petition Loan Facility" means the pre-Petition Date loan and financial accommodation facility as evidenced by the Senior Term Loan and Liquidity Agreement.

CCC.    As used herein, the term "Ritchie Life Advisors (Bermuda)" means Ritchie Life Advisors (Bermuda), Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

DDD.    As used herein, the term "RRLST" refers to the corporation Ritchie Risk-Linked Strategies Trading, Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

EEE.    As used herein, the term "Senior Term Loan and Liquidity Agreement" refers to the Senior Term Loan and Liquidity Agreement dated as of October 21, 2005 entered into by and between Ritchie I and ABN, as the same may have been amended, modified or supplemented from time to time.

FFF.    As used herein, the term "Societe Generale" means Société Générale, a French Banking Institution, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

GGG.    As used herein, the term "Swiss Re" means Swiss Reinsurance Company Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

HHH.    As used herein, the term "UBS" means UBS Securities, LLC, UBS Loan Finance LLC, and UBS AG, London Branch, and includes their officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

III.    As used herein, the term "U.S. Bank" means U.S. Bank National Association, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

JJJ.    As used herein, the terms "you," "yours," and "DSI" mean Development Specialists, Inc., and includes DSI's officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

## INSTRUCTIONS

A.    You are to produce the requested documents in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York.

B.    Pursuant to Southern District of New York Local Civil Rule 26.3(d)(3), the use of the singular form of any word includes the plural and vice versa.

C.    Any claim of privilege should be made pursuant to Southern District of New York Local Rule 26.2.

D.      Pursuant to Fed. R. Civ. P. 45(d)(1)(A), documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each of the following requests.

E.      Pursuant to Fed. R. Civ. P. 45(d)(1)(B), electronically stored information shall be produced in .tif, .pdf, or native format, whichever is most convenient or practical, with any load and text files necessary to render electronically stored information searchable in a Concordance database. LST I reserves the right to request metadata, when appropriate, including for spreadsheets.

F.      The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the specification all responses that might otherwise be construed to be outside its scope.

G.      If in responding to any of these document requests you encounter any ambiguity in construing the document request or any definition or instruction relevant to the document request, set forth the matter deemed ambiguous and the construction selected or used in answering the document request.

H.      Unless stated otherwise, the relevant time period shall be January 1, 2005 through the present.

## **REQUESTS**

1.      All documents and communications concerning Plaintiffs' retention of DSI and services performed by DSI for Plaintiffs or Ritchie III. This includes all documents and communications concerning the reason(s) for Plaintiffs' retention of DSI and all engagement letters or contracts. *See* June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 66(b).

2.      All non-privileged documents and communications concerning DSI's provision of restructuring and turnaround advisory services to Ritchie I and Ritchie II. This includes all documents and communications concerning the sale or potential sale of all or substantially all of

Ritchie I and Ritchie II's assets.  *See* June 19, 2007 Affidavit of Fred C. Caruso Pursuant to

Local Bankruptcy Rule 1007-2 ¶ 66(b).

   3.  All non-privileged documents and communications concerning the origination of

any Conveyed Life Settlement Policy or the origination practices of Coventry First.

   4.  All documents and communications concerning the purchase or planned purchase

of Life Settlement Policies by Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

   5.  All documents and communications concerning the Ritchie I MPPA or the Ritchie

II MPPA.  This includes all documents and communications concerning any representation or

warranty contained in these MPPAs, and whether any such representation or warranty was

breached.

   6.  All documents and communications concerning the Ritchie I Intercreditor

Agreement.

   7.  All documents and communications concerning the Ritchie II Intercreditor

Agreement.

   8.  All documents and communications concerning any audits of Ritchie I or Ritchie

II.

   9.  All documents and communications concerning the value of any Conveyed Life

Settlement Policy.  This includes all profit and loss statements, borrowing base deficit

calculations, market and cash flow analyses, modeling and underwriting analyses, and projected

returns concerning any Conveyed Life Settlement Policy or any transaction related thereto.

   10.  All documents and communications concerning any services, ratings, or other

work performed by any rating agency, including Moody's, concerning Ritchie I, Ritchie II,

Ritchie III, or Ritchie IV, or any Conveyed Life Settlement Policy.  This includes all documents

and communications concerning the issuance of any rating or presale report for any sale,

securitization, or monetization of any Conveyed Life Settlement Policy.

   11.  All documents and communications concerning any sale, securitization, or

monetization—including any attempted or contemplated sale, securitization, or monetization—of

any Conveyed Life Settlement Policy.  This includes all documents and communications concerning (1) the negotiation, formation, or termination of any agreement for the sale, securitization, or monetization of Conveyed Life Settlement Policies; (2) the issuance of a final rating or opinion concerning any such sale, securitization, or monetization; and (3) whether Plaintiffs, Ritchie III, or Ritchie IV had obtained all funding or equity needed to complete any sale, securitization, or monetization of any Conveyed Life Settlement Policy.

12.    All "Issues Remaining" lists and all other documents and communications concerning unresolved matters pertaining to any actual, attempted, or contemplated sale, securitization, or monetization of any Conveyed Life Settlement Policy.

13.    All documents and communications concerning the involvement of UBS, Lehman Brothers, Barclays, Swiss Re, MBIA, Gottex, OTPP, Orix, RBS, Societe Generale, Mercer, Ritchie Life Advisors (Bermuda), U.S. Bank, or AVS Underwriting in any actual, attempted, proposed, or contemplated financial transaction involving Ritchie I, Ritchie II, Ritchie III, Ritchie IV, or any Conveyed Life Settlement Policy.

14.    All documents and communications concerning any liquidity facility, liquidity facility amortization, senior note, junior note, zero cost collar, priority of payments, contingent forward, or equity tranche that relates to Ritchie I, Ritchie II, Ritchie III, or Ritchie IV or any Conveyed Life Settlement Policy.

15.    All documents and communications concerning the Senior Term Loan and Liquidity Agreement, including documents and communications related to (a) Events of Default; (b) Unmatured Events of Default; (c) Material Adverse Effects; (c) representations and warranties; (d) Covenants; (e) Negative Covenants; (f) notice of material events; (g) potential or actual borrowing base deficits (including any calculations provided by Ritchie I concerning borrowing base deficits); and (f) provisions related to the NYAG Lawsuit.[1]  This includes all notices concerning any of the foregoing.

---

[1]  For the avoidance of doubt, capitalized terms used in this Request have the same meaning ascribed to them in the Senior Term Loan and Liquidity Agreement.

16.     All non-privileged documents and communications concerning the Ritchie I Pre-Petition Loan Facility, including a final, executed copy thereof.

17.     All documents and communications concerning any draft, preliminary, or final offering circular, prospectus, private placement memorandum, or other offering materials concerning Plaintiffs, Ritchie III, or Ritchie IV.

18.     All documents and communications concerning Potential Investments from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy.  This includes all documents and communications with or concerning Potential Investors.

19.     All documents and communications concerning Potential Purchases from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy.  This includes all documents and communications with or concerning Potential Purchasers.

20.     All documents and communications concerning Potential Financing from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy.  This also includes all documents and communications with or concerning Potential Financiers.

21.     All non-privileged documents and communications concerning the Ritchie I Asset Purchase Agreement, including a final, executed copy thereof.

22.     All non-privileged documents and communications concerning the Ritchie II Asset Purchase Agreement, including a final, executed copy thereof.

23.     All non-privileged documents and communications concerning the Ritchie I Debtor-In-Possession Credit Agreement, including a final, executed copy thereof, and all documents and communications related to (a) Events of Default; (b) Unmatured Events of Default; (c) Material Adverse Effects; (c) representations and warranties; (d) Covenants; (e)

Negative Covenants; (f) notice of material events; (g) requests for borrowing; and (h) provisions related to the NYAG Lawsuit.[2]

24.    All non-privileged documents and communications concerning the Ritchie II Debtor-In-Possession Credit Agreement, including a final, executed copy thereof, and all documents and communications related to (a) Events of Default; (b) Unmatured Events of Default; (c) Material Adverse Effects; (c) representations and warranties; (d) Covenants; (e) Negative Covenants; (f) notice of material events; (g) requests for borrowing; and (h) provisions related to the NYAG Lawsuit.[3]

25.    All non-privileged documents and communications concerning the Chapter 11 Plan of Liquidation for Ritchie I and II, filed in the United States Bankruptcy Court for the Southern District of New York, including any amendments or modifications thereto and a final, executed copy thereof.

26.    All non-publicly filed documents and communications concerning the NYAG Lawsuit or the NYAG Investigation.

27.    All documents and communications concerning rescission, the threat of rescission, or the potential for rescission of Life Settlement Policies originated by Coventry First.

28.    All documents and communications concerning any offer by LST I to negotiate an agreement whereby LST I would replace any Life Settlement Policy that was rescinded based on the allegations in the NYAG Lawsuit. This includes all documents and communications concerning any response or proposed response to such an offer.

29.    All documents and communications concerning any dispute over funds remaining in the Draw Account following the filing of the NYAG Lawsuit. This includes all documents and communications concerning the resolution of any such dispute.

---

[2]  For the avoidance of doubt, capitalized terms used in this Request have the same meaning ascribed to them in the Ritchie I Debtor-In-Possession Credit Agreement.

[3]  For the avoidance of doubt, capitalized terms used in this Request have the same meaning ascribed to them in the Ritchie II Debtor-In-Possession Credit Agreement.

30.     All documents and communications concerning any claim, lawsuit, or threatened lawsuit against Plaintiffs by any Original Seller, insured, or other person related to any Life Settlement Policy.

31.     All documents and communications concerning the claim that LST I "sold non-conforming Policies to the Debtors." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 7.

32.     All documents and communications concerning the claim that, "[a]s a consequence of [LST I's alleged sale of non-conforming Policies to the Debtors], the Debtors' ability to market the Policies for sale at acceptable values has deteriorated and the quality of title has been questioned." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 7.

33.     All documents and communications concerning the claim that "the value of . . . the Policies and the proceeds thereof, has declined precipitously." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 7.

34.     All documents and communications concerning the claim that the "decline in value also has affected the Debtors' ability to execute a planned securitization transaction and impaired the ability of the Debtors to pay their obligations with regard to the Policies, thereby impacting further the marketability of the Debtors' assets through ordinary sale processes and requiring the Debtors to seek relief under the Bankruptcy Code in order to preserve the value of the assets for their creditors." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 7.

35.     All documents and communications concerning the claim that "the Debtors were not able to successfully market the Policies for sale or to obtain funding necessary to maintain the Policies until their natural maturation (the death of the Insureds)." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 25.

36.     All documents and communications concerning the claim that "[a]s a result of the [NYAG] Complaint, the Debtors were unable to complete the planned securitization transaction,

- 14 -

the Debtors' financial status and ability to obtain additional funding deteriorated significantly, and the Debtors were forced to initiate efforts to restructure their obligations and to sell the Policies." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 23.

37.    All documents and communications concerning the claim that "[b]ased on the initial indications from potential buyers and in order to preserve and enhance the value of the Policies for their creditors, the Debtors determined that protection under chapter 11 of the Bankruptcy Code was required." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 31. This includes all documents and communications concerning the "indications from potential buyers" referenced in the foregoing statement.

38.    All documents and communications concerning the claim that Ritchie I and Ritchie II "purchased the Policies from LST [I] at prices expected to yield a profit to the Debtors' investors upon the earlier of payment of the death benefit to the Debtors or the securitization of the Policies." June 19, 2007 Affidavit of Fred C. Caruso Pursuant to Local Bankruptcy Rule 1007-2 ¶ 7.

39.    All non-publicly filed documents concerning the Coventry Action or this lawsuit, including all communications with Ritchie I, Ritchie II, RCM, Ritchie Life Strategies Master Trust, Ritchie Risk-Linked Life Strategies Trust, and any affiliated person or entity. This also includes all such communications with Plaintiffs or their counsel or any other person acting on their behalf; ABN; Houlihan Lokey; the NYAG; any investor in Ritchie I or II; any Potential Purchaser; any former employee of Plaintiffs; any journalist or reporter; or any other person.

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RITCHIE RISK-LINKED STRATEGIES )
TRADING (IRELAND), LIMITED, and RITCHIE )
RISK-LINKED STRATEGIES TRADING )
(IRELAND) II, LIMITED, )
 ) Civil Action No. 09-cv-01086-DLC
     Plaintiffs, )
 ) (ECF)
   v. )
 )
COVENTRY FIRST LLC, THE COVENTRY )
GROUP, INC., MONTGOMERY CAPITAL, INC., )
and LST I LLC, )
 )
     Defendants. )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF SUBPOENA

  Please take notice that, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant LST I LLC intends to serve on or before February 5, 2010 the enclosed subpoena for

the production of documents to Lewis & Ellis, Inc.  The documents to be produced are indicated

in Exhibit A to the enclosed subpoena.

       WILLIAMS & CONNOLLY LLP

       Kenneth J. Brown
       Dane H. Butswinkas
       David A. Forkner
       Katherine L. O'Connor (0902)

       725 Twelfth Street, N.W.
       Washington, D.C.  20005
       (202) 434-5000
       (202) 434-5029 (facsimile)

       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2010, I caused to be served a copy of the foregoing on

the following individuals via electronic mail and overnight mail.

LIDDLE AND ROBINSON, LLP
Jeffrey L. Liddle
James R. Hubbard
James W. Halter
800 Third Avenue, 8th Floor
New York, NY 10022
(212) 687-8500
(212) 687-1505 (telecopy)

*Attorneys for Plaintiffs*

Kenneth J. Brown

2

Issued by the
**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF TEXAS

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), et al.,
        Plaintiffs,

        V.

LST I LLC, et al.,
        Defendants.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:[1]  09 –CV-1086-DLC

(Pending in the United States District Court in the
Southern District of New York)

TO:   Lewis & Ellis, Inc.
       c/o Glenn A. Tobleman
       2929 North Central Expressway, Suite 200
       Richardson, TX 75081

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☐  YOU ARE COMMANDED to appear at the date, place, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded by videographic and stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See EXHIBIT A, ATTACHED.**

| PLACE | DATE AND TIME |
|---|---|
| Esquire Deposition Solutions<br>1700 Pacific Avenue<br>Suite 4750<br>Dallas, TX 75201 | February 17, 2010, 12:00 p.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|         Attorney for Defendants | February 5, 2010 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Kenneth J. Brown
Williams & Connolly, 725 Twelfth Street, N.W., Washington, D.C.   20005
Tel: (202) 434-5000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AD 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct:

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

To:    Lewis & Ellis, Inc.
       c/o Glenn A. Tobleman
       2929 North Central Expressway, Suite 200
       Richardson, TX 75081

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, please produce the documents and things described herein at the place and time specified in the attached subpoena, consistent with the Definitions and Instructions below.

## DEFINITIONS

As used in these Requests, the following terms shall have the meaning set forth and described below:

A.    As used herein, the terms "all" and "each" shall be construed as all and each.

B.    As used herein, the terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

C.    As used herein, the term "communication" means any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

D.    As used herein, the term "concerning" means relating to, referring to, describing, evidencing, constituting, responding to, pertaining to, comprising, evidencing, memorializing, commenting on, regarding, discussing, showing, describing, concerning, analyzing, constituting, in connection with, or in any way legally, logically, or factually connected with the matter discussed.

E.    As used herein, the term "document" shall be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), and shall include electronically stored information. A draft or non-identical copy is a separate document within the meaning of this term.

F.    As used herein, the term "person" means any natural person or any business, legal, governmental, or other entity or association.

G.      As used herein, the term "AIG" means American International Group, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

H.      As used herein, the term "Barclays" means Barclays Bank PLC, and includes its officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

I.      As used herein, the term "BlueCrest" means BlueCrest Capital Management LLP, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

J.      As used herein, the term "Conveyed Life Settlement Policy" means any Life Settlement Policy that has been sold by LST I to Ritchie I or Ritchie II.

K.      As used herein, the term "Coventry First" means Coventry First LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

L.      As used herein, the term "Defendants" means Coventry First, The Coventry Group, Inc., Montgomery Capital, Inc., and LST I, and includes their officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates, collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

M.      As used herein, the term "Gottex" means Gottex Fund Management, Sàrl, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

N.      As used herein, the term "Houlihan Lokey" means Houlihan, Lokey, Howard, & Zukin, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

O.      As used herein, the term "Huizenga Managers Fund" means Huizenga Managers Fund LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

P.      As used herein, the term "IFA" means Institut für Finanz - und Aktuarwissenschaften, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

- 2 -

Q.     As used herein, the term "includes" and "including" mean "including without limitation."  Under no circumstances shall the use of the word "includes" or "including" in any request be construed to limit the scope of the documents responsive to any request.

R.     As used herein, the term "Lehman Brothers" means Lehman Brothers, Inc., and includes its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

S.     As used herein, the term "Life Settlement Policy" means a policy of life insurance.

T.     As used herein, the term "LST I" means LST I LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

U.     As used herein, the term "MBIA" means MBIA, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

V.     As used herein, the term "Milliman" means Milliman, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

W.     As used herein, the term "NYAG" means the New York Attorney General and all of the NYAG's assistants, deputies, and other employees.

X.     As used herein, the term "NYAG Lawsuit" refers to the lawsuit filed by the New York Attorney General on or about October 26, 2006, against Coventry First, Montgomery Capital, Inc., and Reid S. Buerger.

Y.     As used herein, the term "NYAG Investigation" refers to any formal or informal investigation or inquiry conducted by the New York Attorney General concerning the Origination of Life Settlement Policies generally or Coventry First's Origination of Life Settlement Policies in particular.

Z.     As used herein, the term "Origination" means the process of purchasing or attempting to purchase Life Settlement Policies.

AA.     As used herein, the term "OTPP" means Ontario Teachers' Pension Plan, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

BB.     As used herein, the term "Phoenix" means The Phoenix Companies, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

CC.     As used herein, the term "Plaintiffs" means Ritchie I and Ritchie II, and includes their officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates, collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

DD.     As used herein, "Potential Financing" means any actual, attempted, proposed, or contemplated financing, credit, debt, equity, or liquidity for, in, or of (a) Ritchie I, Ritchie II, Ritchie III or Ritchie IV; or (b) the purchase, sale, securitization, or monetization of any Conveyed Life Settlement Policy. "Potential Financing" includes any actual, attempted, proposed, or contemplated purchase or sale of any derivative or synthetic concerning Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

EE.     As used herein, the term "Potential Financier" means any person that considered being a source of Potential Financing or with whom Plaintiffs communicated concerning being a source of Potential Financing.

FF.     As used herein, the term "Potential Investment" means any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—any security or debt obligation or other economic interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV. This includes any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—senior notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

GG.     As used herein, the term "Potential Investor" means any person that considered making a Potential Investment or with whom Plaintiffs communicated concerning a Potential Investment.

- 4 -

HH.    As used herein, the term "Potential Purchase" means any actual, attempted, proposed, or contemplated purchase or receipt of any interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV. This includes any actual, attempted, proposed, or contemplated purchase, contribution, or receipt of notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, equity, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

II.    As used herein, the term "Potential Purchaser" means any person that considered making a Potential Purchase or with whom Plaintiffs communicated concerning a Potential Purchase.

JJ.    As used herein, the term "RCM" means Ritchie Capital Management, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

KK.    As used herein, the term "Ritchie I" means Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

LL.    As used herein, the term "Ritchie II" means Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd., and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

MM.    As used herein, the term "Ritchie III" means Ritchie Risk-Linked Strategies Trading III, LP, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates. The term "Ritchie III" also means any other entity commonly known as "Ritchie III" that was intended to purchase Conveyed Life Settlement Policies from Ritchie I and Ritchie II as part of any proposed securitization, and includes the officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates of each such entity.

NN.    As used herein, the term "Ritchie IV" means Ritchie Risk-Linked Strategies Trading (Ireland) IV, Ltd., and includes any of its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

OO.    As used herein, the term "Ritchie I and II Bankruptcy" means bankruptcy petition numbers 07-11906-brl and 07-11907-brl, filed on or about June 20, 2007 in the United States Bankruptcy Court for the Southern District of New York, and all proceedings concerning those petitions.

PP.    As used herein, the term "Silver Creek" means Silver Creek Capital Management LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

QQ.    As used herein, the term "Silver Point" means Silver Point Capital, L.P., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

RR.    As used herein, the term "Societe Generale" means Société Générale, a French Banking Institution, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

SS.    As used herein, the term "Swiss Re" means Swiss Reinsurance Company Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

TT.    As used herein, the term "UBS" means UBS Securities, LLC, UBS Loan Finance LLC, and UBS AG, London Branch, and includes their officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

UU.    As used herein, the term "U.S. Bank" means U.S. Bank National Association, and includes its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

VV.    As used herein, the term "XE Capital" means XE Capital Management, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries, and affiliates.

WW.    As used herein, the terms "you," "yours," and "Lewis & Ellis" mean Lewis & Ellis, Inc., and include any of its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

## INSTRUCTIONS

A.      You are to produce the requested documents in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Northern District of Texas.

B.      Any claim of privilege should be made in accordance with pursuant to Fed. R. Civ. P. 45(d)(2).

C.      Pursuant to Fed. R. Civ. P. 45(d)(1)(A), documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each of the following requests.

D.      Pursuant to Fed. R. Civ. P. 45(d)(1)(B), electronically stored information shall be produced in .tif, .pdf, or native format, whichever is most convenient or practical, with any load and text files necessary to render electronically stored information searchable in a Concordance database.  LST I reserves the right to request metadata, when appropriate, including for spreadsheets.

E.      The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the specification all responses that might otherwise be construed to be outside its scope.

F.      If in responding to any of these document requests you encounter any ambiguity in construing the document request or any definition or instruction relevant to the document request, set forth the matter deemed ambiguous and the construction selected or used in answering the document request.

G.      The use of the singular form of any word includes the plural and vice versa.

H.      Unless stated otherwise, the relevant time period shall be January 1, 2005, through the present.

**REQUESTS**

1.    All documents and communications concerning the retention of Lewis & Ellis by Plaintiffs, Houlihan Lokey, or any other person concerning any Conveyed Life Settlement Policy. *See* Transcript of December 22, 2007 Deposition of Stephen Gibson at 7-8. This includes all documents and communications concerning the reason(s) for such retention of Lewis & Ellis.

2.    All documents and communications concerning services performed by Lewis & Ellis concerning any Conveyed Life Settlement Policy, including all engagement letters, contracts, and invoices. *See, e.g.* Transcript of December 22, 2007 Deposition of Stephen Gibson at 67 (discussions with Fred Caruso concerning services performed by Lewis & Ellis).

3.    Documents and communications sufficient to show Lewis & Ellis's background, experience, and expertise in the life settlement industry and with Life Settlement Policies. *See, e.g.*, December 21, 2007 Declaration of S. Scott Gibson in Support of Debtors' Complaint ¶ 4. This includes documents and communications sufficient to show all instances in which Lewis & Ellis has been engaged to provide services of any kind concerning the life settlement industry or Life Settlement Policies.

4.    All documents and communications concerning any Conveyed Life Settlement Policy.

5.    All documents and communications concerning the value of any Conveyed Life Settlement Policy. This includes all profit and loss statements, market and cash flow analyses, modeling and underwriting analyses, accounting analyses, and projected returns concerning any such Conveyed Life Settlement Policy. This also includes all documents and communications reflecting that Plaintiffs had any concerns regarding the purchase or marketability of any Conveyed Life Settlement Policy.

6.    All documents and communications concerning the use of any mortality table, mortality rating, mortality rating provider, life expectancy, medical underwriting, or other actuarial information in connection with any transaction involving any Conveyed Life Settlement

Policy. This includes all documents and communications concerning any actuarial conclusions regarding any Conveyed Life Settlement Policy.

7.      All documents and communications concerning any evaluations or reports concerning life expectancy estimates related to any Conveyed Life Settlement Policy, including evaluations by you, IFA, and Milliman.

8.      All documents and communications concerning Lewis & Ellis's compilation of "pertinent information relative to valuing" any Conveyed Life Settlement Policy. Transcript of December 22, 2007 Deposition of Stephen Gibson at 8-9. This includes all "pertinent information relative to valuing" any Conveyed Life Settlement Policy compiled by Lewis & Ellis.

9.      All documents and communications concerning the Ritchie I MPPA, the Ritchie II MPPA, or any other contract or agreement concerning any Conveyed Life Settlement Policy. This includes all documents and communications concerning any representation or warranty contained therein.

10.     All documents and communications concerning any sale, securitization, or monetization—including any attempted or contemplated sale, securitization, or monetization—of any Conveyed Life Settlement Policy. This includes all documents and communications concerning the negotiation, formation, or termination of any agreement for the sale, securitization, or monetization of any Conveyed Life Settlement Policy.

11.     All non-public documents and communications concerning the NYAG Lawsuit or the NYAG Investigation.

12.     All documents and communications concerning rescission, the threat of rescission, or the potential for rescission of any Conveyed Life Settlement Policy.

13.     All documents and communications concerning Potential Investments from January 1, 2005, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy. This includes all documents and communications with or concerning Potential Investors, including AIG, BlueCrest, Edward J. Stern, Gottex, Huizenga

- 9 -

Managers Fund, OTPP, Phoenix, Silver Creek, Silver Point, Societe Generale, U.S. Bank, and XE Capital.

14.     All documents and communications concerning Potential Purchases from January 1, 2005, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy. This includes all documents and communications with or concerning Potential Purchasers, including AIG, BlueCrest, Edward J. Stern, Gottex, Huizenga Managers Fund, OTPP, Phoenix, Silver Creek, Silver Point, Societe Generale, U.S. Bank, and XE Capital.

15.     All documents and communications concerning Potential Financing from January 1, 2005, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy. This includes all documents and communications with or concerning Potential Financiers, including Barclays, Lehman Brothers, MBIA, Swiss Re, and UBS.

16.     All documents and communications concerning any Potential Investor's, Potential Purchaser's, or Potential Financier's valuation of any Conveyed Life Settlement Policy, including medical underwriting assumptions; actuarial assumptions, data and tables; and interest rate fluctuations.

17.     All documents and communications concerning the actual, attempted, proposed, or contemplated sale of any Conveyed Life Settlement Policy after October 26, 2006. This includes all documents and communications concerning potential sale strategies to maximize the value of any Conveyed Life Settlement Policy.

18.     All documents and communications concerning any actual, attempted, proposed, or contemplated bid for one or more Conveyed Life Settlement Policies.

19.     All non-publicly filed documents and communications concerning the lawsuit captioned *Ritchie Capital Management, LLC, et al. v. Coventry First LLC*, No. 07-CV-3494-DLC (S.D.N.Y.) or the lawsuit captioned *Ritchie Risk-Linked Strategies Trading (Ireland) Ltd., et al. v. Coventry First LLC, et al.*, No. 09-CV-1086-DLC (S.D.N.Y.). This includes without

- 10 -

limitation all such communications with Plaintiffs or their counsel or any other person acting on their behalf; the NYAG; Houlihan Lokey; DSI; ABN Amro; any investor in Ritchie I or II; any creditor, trustee, or creditor committee of any Plaintiff; any purchaser or potential purchaser of Life Settlement Policies; any former employee of Plaintiffs; any journalist or reporter; or any other person.

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RITCHIE RISK-LINKED STRATEGIES )
TRADING (IRELAND), LIMITED, and RITCHIE )
RISK-LINKED STRATEGIES TRADING )
(IRELAND) II, LIMITED, )
                                  )
                                  ) Civil Action No. 09-cv-01086-DLC
                 Plaintiffs, )
                                  ) (ECF)
            v. )
                                    )
COVENTRY FIRST LLC, THE COVENTRY )
GROUP, INC., MONTGOMERY CAPITAL, INC., )
and LST I LLC, )
                                    )
                 Defendants. )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF SUBPOENA

Please take notice that, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant LST I LLC intends to serve on or before January 8, 2010 the enclosed subpoena for

the production of documents to ABN Amro Bank, N.V. The documents to be produced are

indicated in Exhibit A to the enclosed subpoena.

                              WILLIAMS & CONNOLLY LLP

                              *KatOCon*

                              Katherine L. O'Connor (0902)
                              Dane H. Butswinkas
                              David A. Forkner
                              Kenneth J. Brown

                              725 Twelfth Street, N.W.
                              Washington, D.C. 20005
                              (202) 434-5000
                              (202) 434-5029 (facsimile)

                              *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2010, I served a copy of the foregoing on the following individuals via electronic mail and overnight mail.

LIDDLE AND ROBINSON, LLP
Jeffrey L. Liddle
James R. Hubbard
James W. Halter
800 Third Avenue, 8th Floor
New York , NY 10022
(212) 687-8500
(212) 687-1505 (telecopy)

*Attorneys for Plaintiffs*

Katherine L. O'Connor

2

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| Ritchie Risk-Linked Strategies Trading (Ireland) Ltd. | ) | |
| *Plaintiff* | ) | Civil Action No.   09-cv-01086-DLC |
| v. | ) | |
| Coventry First LLC et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  ABN Amro Bank, N.V.
    c/o Raniero D'Aversa Jr. Orrick, Herrington & Sutcliffe LLP 666 Fifth Avenue New York, NY 10103-0001

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A (attached).

| Place: Hodgson Russ, LLP<br>Attn:  S. Robert Schrager, Esq.<br>60 East 42nd St., 37th Floor New York, NY 10165-0160 | Date and Time:<br><br>01/22/2010 4:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    01/08/2010

                    *CLERK OF COURT*
                                    OR

    _____          _____
    *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  _____
LST I LLC _____ , who issues or requests this subpoena, are:
Katherine L. O'Connor
Williams & Connolly, LLP, 725 12th Street N.W., Washington D.C. 20005, 202-434-5000

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   09-cv-01086-DLC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

To:    ABN Amro Bank, N.V.
       c/o Raniero D'Aversa Jr.
       Orrick, Herrington & Sutcliffe LLP
       666 Fifth Avenue
       New York, NY 10103-0001

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, please produce the documents and things described herein at the place and time specified in the attached subpoena, consistent with the Definitions and Instructions below.

## DEFINITIONS

As used in these Requests, the following terms shall have the meaning set forth and described below:

A.     As used herein, the terms "all" and "each" shall have the full meanings ascribed to them by Southern District of New York Local Civil Rule 26.3(d)(1).

B.     As used herein, the terms "and" and "or" shall have the full meanings ascribed to them by Southern District of New York Local Civil Rule 26.3(d)(2).

C.     As used herein, the term "communication" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(1).

D.     As used herein, the term "concerning" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(7).

E.     As used herein, the term "document" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(2).

F.     As used herein, the term "person" shall have the full meaning ascribed to it by Southern District of New York Local Civil Rule 26.3(c)(6).

G.     As used herein, the term "AVS Underwriting" means AVS Underwriting LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

H.     As used herein, the term "Barclays" means Barclays Bank PLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

I.      As used herein, the term "Conveyed Life Settlement Policy" means any Life Settlement Policy or insurance policy sold by LST I to Ritchie I or Ritchie II.

J.      As used herein, the term "Coventry Action" has the same meaning given to it in the Second Modified Chapter 11 Plan of Liquidation for Ritchie Risk-Linked Strategies Trading (Ireland) Limited.

K.      As used herein, the term "Coventry First" means Coventry First LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

L.      As used herein, the term "Defendants" means Coventry First, The Coventry Group, Inc., Montgomery Capital, Inc., and LST I, and includes their officers, directors, employees, partners, corporate parents, subsidiaries and affiliates, collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

M.      As used herein, the term "DSI" means Development Specialists, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

N.      As used herein, the term "Draw Account" has the same meaning given to it in the Ritchie I Amended and Restated Master Policy Purchase Agreement dated September 8, 2005.

O.      As used herein, the term "Gottex" means Gottex Fund Management, Sàrl, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

P.      As used herein, the term "Houlihan Lokey" means Houlihan, Lokey, Howard, & Zukin, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

Q.      As used herein, the terms "includes" and "including" mean "including without limitation." Under no circumstances shall the use of the words "includes" or "including" in any request be construed to limit the scope of the documents responsive to any request.

R.      As used herein, the term "Lehman Brothers" means Lehman Brothers, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

S.      As used herein, the term "Life Settlement Policy" means a policy of life insurance.

T.      As used herein, the term "LST I" means LST I LLC, and includes its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

U.      As used herein, the term "MBIA" means MBIA, Inc., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

V.      As used herein, the term "Mercer" means Mercer, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

W.      As used herein, the term "Moody's" means Moody's Investors Service, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

X.      As used herein, the term "NYAG" means the New York Attorney General and all of the NYAG's assistants, deputies, and other employees.

Y.      As used herein, the term "NYAG Investigation" refers to any formal or informal investigation or inquiry conducted by the NYAG concerning the Origination of Life Settlement Policies generally or Defendants' Origination of Life Settlement Policies in particular.

Z.      As used herein, the term "NYAG Lawsuit" refers to the lawsuit filed by the NYAG on or about October 26, 2006, against Coventry First, Montgomery Capital, Inc., The Coventry Group, Inc., and Reid S. Buerger.

AA.     As used herein, the terms "Originate" or "Origination" mean the process of purchasing or attempting to purchase Life Settlement Policies.

BB.     As used herein, the term "Orix" means Orix Corporation, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

CC.     As used herein, the term "OTPP" means Ontario Teacher's Pension Plan, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

DD.    As used herein, the term "Plaintiffs" means Ritchie I and Ritchie II collectively, individually, or in any combination as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

EE.    As used herein, the term "Potential Financing" means any actual, attempted, proposed, or contemplated financing, credit, debt, or liquidity for, in, or of (a) Ritchie I, Ritchie II, Ritchie III, or Ritchie IV; or (b) the purchase, sale, securitization, or monetization of any Conveyed Life Settlement Policy.  "Potential Financing" includes any actual, attempted, proposed, or contemplated purchase or sale of any derivative or synthetic concerning Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

FF.    As used herein, the term "Potential Financier" means any person that considered being a source of Potential Financing or with whom Plaintiffs communicated concerning being a source of Potential Financing.

GG.    As used herein, the term "Potential Investment" means any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—any security or debt obligation or other economic interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.  This includes any actual, attempted, potential, or contemplated investment in—or purchase, issuance, undertaking, transfer, conveyance, or assumption of—senior notes, junior notes, contingent notes, securities, subordinated securities, debt, debt facilities, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

HH.    As used herein, the term "Potential Investor" means any person that considered making a Potential Investment or with whom Plaintiffs communicated concerning a Potential Investment.

II.    As used herein, the term "Potential Purchase" means any actual, attempted, proposed, or contemplated purchase or receipt of any interest in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.  This includes any actual, attempted, proposed, or contemplated purchase or receipt of notes, junior notes, contingent notes, securities,

- 4 -

subordinated securities, debt, debt facilities, or stock in any Conveyed Life Settlement Policy or in Ritchie I, Ritchie II, Ritchie III, or Ritchie IV.

JJ.    As used herein, the term "Potential Purchaser" means any person that considered making a Potential Purchase or with whom Plaintiffs communicated concerning a Potential Purchase.

KK.    As used herein, the term "RBS" means The Royal Bank of Scotland plc, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

LL.    As used herein, the term "RCM" means Ritchie Capital Management, LLC, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

MM.    As used herein, the term "relating to" means directly or indirectly referring to, reflecting, mentioning, describing, pertaining to, arising out of or in connection with, or in any way legally, logically, or factually connected with the matter discussed.

NN.    As used herein, the term "Ritchie I" means Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

OO.    As used herein, the term "Ritchie II" means Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

PP.    As used herein, the term "Ritchie III" means Ritchie Risk-Linked Strategies Trading III, LP, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates. The term "Ritchie III" also means any other entity commonly known as "Ritchie III" that was intended to purchase Conveyed Life Settlement Policies from Ritchie I and Ritchie II as part of any proposed securitization, and includes the officers, directors, employees, partners, corporate parents, subsidiaries and affiliates of each such entity.

QQ.    As used herein, the term "Ritchie IV" means Ritchie Risk-Linked Strategies Trading (Ireland) IV, Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

RR.    As used herein, the term "Ritchie I Asset Purchase Agreement" means all Asset Purchase Agreements executed by Ritchie I from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, including those entered into by and between Ritchie I and ABN or its assignees, as the same may have been amended, modified or supplemented from time to time.

SS.    As used herein, the term "Ritchie II Asset Purchase Agreement" means all Asset Purchase Agreements executed by Ritchie II from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, as the same may have been amended, modified or supplemented from time to time.

TT.    As used herein, the term "Ritchie I and II Bankruptcy" means bankruptcy petition numbers 07-11906-brl and 07-11907-brl, filed on or about June 20, 2007 in the United States Bankruptcy Court for the Southern District of New York, and all proceedings concerning those petitions.

UU.    As used herein, the term "Ritchie I Debtor-In-Possession Credit Agreement" means all Debtor-In-Possession Credit Agreements executed by Ritchie I from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, including those entered into by and between Ritchie I and ABN, as the same may have been amended, modified or supplemented from time to time.

VV.    As used herein, the term "Ritchie II Debtor-In-Possession Credit Agreement" means all Debtor-In-Possession Credit Agreements executed by Ritchie II from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy, including those entered into by and between Ritchie II and Ritchie Risk-Linked Strategies Trading, Ltd., or by a direct or indirect subsidiary of Ritchie Risk-Linked Strategies, Ltd., as the same may have been amended, modified or supplemented from time to time.

WW.  As used herein, the term "Ritchie I Intercreditor Agreement" means the Amended and Restated Intercreditor Agreement, dated October 21, 2005, and entered into by and among

Ritchie I, ABN, and others, as the same may have been amended, modified or supplemented from time to time.

XX.    As used herein, the term "Ritchie II Intercreditor Agreement" means the Amended and Restated Intercreditor Agreement, dated December 15, 2005, and entered into by and among Ritchie II, U.S. Bank, and others, as the same may have been amended, modified or supplemented from time to time.

YY.    As used herein, the term "Ritchie I MPPA" means the Master Policy Purchase Agreement between LST I and Ritchie I executed on or about June 30, 2005, as the same may have been amended, modified, or supplemented from time to time.

ZZ.    As used herein, the term "Ritchie II MPPA" means the Master Policy Purchase Agreement between LST I and Ritchie II executed on or about December 15, 2005, as the same may have been amended, modified, or supplemented from time to time.

AAA.    As used herein, the term "Ritchie I Pre-Petition Loan Facility" means the pre-Petition Date loan and financial accommodation facility as evidenced by the Senior Term Loan and Liquidity Agreement.

BBB.    As used herein, the term "Ritchie-ABN Sharing Agreement" means the sharing agreement by and between Plaintiffs, ABN, Ritchie Risk-Linked Strategies Trading, Ltd., Walkers SPV Limited, in its capacity as trustee of Ritchie Risk-Linked Life Strategies Trust I, and Ritchie Life Strategies Master Trust, and RCM.

CCC.    As used herein, the term "Ritchie Life Advisors (Bermuda)" means Ritchie Life Advisors (Bermuda), Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

DDD.    As used herein, the term "Senior Term Loan and Liquidity Agreement" refers to the Senior Term Loan and Liquidity Agreement dated as of October 21, 2005 entered into by and between Ritchie I and ABN, as the same may have been amended, modified or supplemented from time to time.

EEE.    As used herein, the term "Societe Generale" means Société Générale, a French Banking Institution, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

FFF.    As used herein, the term "Swiss Re" means Swiss Reinsurance Company Ltd., and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

GGG.    As used herein, the term "UBS" means UBS Securities, LLC, UBS Loan Finance LLC, and UBS AG, London Branch, and includes their officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

HHH.    As used herein, the term "U.S. Bank" means U.S. Bank National Association, and includes its officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

III.    As used herein, the terms "you," "yours," and "ABN" mean ABN Amro Bank, N.V. and ABN Amro Trustees, Limited, and includes ABN's officers, directors, employees, partners, corporate parents, subsidiaries and affiliates.

## INSTRUCTIONS

A.    You are to produce the requested documents in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York.

B.    Pursuant to Southern District of New York Local Civil Rule 26.3(d)(3), the use of the singular form of any word includes the plural and vice versa.

C.    Any claim of privilege should be made pursuant to Southern District of New York Local Rule 26.2.

D.    Pursuant to Fed. R. Civ. P. 45(d)(1)(A), documents must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond with each of the following requests.

E.    Pursuant to Fed. R. Civ. P. 45(d)(1)(B), electronically stored information shall be produced in .tif, .pdf, or native format, whichever is most convenient or practical, with any load

and text files necessary to render electronically stored information searchable in a Concordance database. LST I reserves the right to request metadata, when appropriate, including for spreadsheets.

      F.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the specification all responses that might otherwise be construed to be outside its scope.

      G.     If in responding to any of these document requests you encounter any ambiguity in construing the document request or any definition or instruction relevant to the document request, set forth the matter deemed ambiguous and the construction selected or used in answering the document request.

      H.     Unless stated otherwise, the relevant time period shall be January 1, 2005 through the present.

## <u>REQUESTS</u>

1.     All non-public documents and communications concerning the origination of any Conveyed Life Settlement Policy or the origination practices of Coventry First.

2.     All documents and communications concerning the Ritchie I MPPA or the Ritchie II MPPA. This includes all documents and communications concerning any representation or warranty contained in these MPPAs, and whether any such representation or warranty was breached.

3.     All documents and communications concerning the Ritchie I Intercreditor Agreement.

4.     All documents and communications concerning the Ritchie II Intercreditor Agreement.

5.     All documents and communications concerning any audits of Ritchie I or Ritchie II.

6.     All non-privileged documents and communications concerning the value of any Conveyed Life Settlement Policy. This includes all profit and loss statements, borrowing base

deficit calculations, market and cash flow analyses, modeling and underwriting analyses, and projected returns concerning any Conveyed Life Settlement Policy or any transaction related thereto.

7.      All documents and communications concerning any services, ratings, or other work performed by any rating agency, including Moody's, concerning Ritchie I, Ritchie II, Ritchie III, or Ritchie IV, or any Conveyed Life Settlement Policy. This includes all documents and communications concerning the issuance of any rating or presale report for any sale, securitization, or monetization of any Conveyed Life Settlement Policy.

8.      All documents and communications concerning any draft, preliminary, or final offering circular, prospectus, private placement memorandum, or other offering materials concerning Plaintiffs, Ritchie III, or Ritchie IV.

9.      All documents and communications concerning any sale, securitization, or monetization—including any attempted or contemplated sale, securitization, or monetization—of any Conveyed Life Settlement Policy. This includes all documents and communications concerning (1) the negotiation, formation, or termination of any agreement for the sale, securitization, or monetization of Conveyed Life Settlement Policies; (2) the issuance of a final rating or opinion concerning any such sale, securitization, or monetization; and (3) whether Plaintiffs, Ritchie III, or Ritchie IV had obtained all funding or equity needed to complete any sale, securitization, or monetization of any Conveyed Life Settlement Policy.

10.     All "Issues Remaining" lists and all other documents and communications concerning unresolved matters pertaining to any actual, attempted, or contemplated sale, securitization, or monetization of any Conveyed Life Settlement Policy.

11.     All documents and communications concerning the involvement of UBS, Lehman Brothers, Barclays, Swiss Re, MBIA, Gottex, OTPP, Orix, RBS, Societe Generale, Mercer, Ritchie Life Advisors (Bermuda), U.S. Bank, or AVS Underwriting in any actual, attempted, proposed, or contemplated financial transaction involving Ritchie I, Ritchie II, Ritchie III, Ritchie IV, or any Conveyed Life Settlement Policy.

12.     All documents and communications concerning any liquidity facility, liquidity facility amortization, senior note, junior note, zero cost collar, priority of payments, contingent forward, or equity tranche that relates to Ritchie I, Ritchie II, Ritchie III, or Ritchie IV or any Conveyed Life Settlement Policy.

13.     All documents and communications concerning Potential Purchases from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy.  This includes all documents and communications with or concerning Potential Purchasers.

14.     All documents and communications concerning Potential Investments from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy.  This includes all documents and communications with or concerning Potential Investors.

15.     All documents and communications concerning Potential Financing from June 20, 2007, through the date on which the final Conveyed Life Settlement Policy was sold in the Ritchie I and II Bankruptcy.  This also includes all documents and communications with or concerning Potential Financiers.

16.     All non-privileged documents and communications concerning the Ritchie I Asset Purchase Agreement, including a final, executed copy thereof.

17.     All non-privileged documents and communications concerning the Ritchie II Asset Purchase Agreement, including a final, executed copy thereof.

18.     All documents and communications concerning the Senior Term Loan and Liquidity Agreement, including all documents and communications related to (a) Events of Default; (b) Unmatured Events of Default; (c) Material Adverse Effects; (c) representations and warranties; (d) Covenants; (e) Negative Covenants; (f) notice of material events; (g) potential or actual borrowing base deficits (including any calculations provided by Ritchie I concerning

borrowing base deficits); and (f) provisions related to the NYAG Lawsuit.[1] This includes all notices concerning any of the foregoing.

19.     All non-privileged documents and communications concerning the Ritchie I Pre-Petition Loan Facility, including a final, executed copy thereof.

20.     All non-privileged documents and communications concerning the Ritchie I Debtor-In-Possession Credit Agreement, including a final, executed copy thereof, and all documents and communications related to (a) Events of Default; (b) Unmatured Events of Default; (c) Material Adverse Effects; (c) representations and warranties; (d) Covenants; (e) Negative Covenants; (f) notice of material events; (g) requests for borrowing; and (h) provisions related to the NYAG Lawsuit.[2]

21.     All non-privileged documents and communications concerning the Ritchie II Debtor-In-Possession Credit Agreement, including a final, executed copy thereof, and all documents and communications related to (a) Events of Default; (b) Unmatured Events of Default; (c) Material Adverse Effects; (c) representations and warranties; (d) Covenants; (e) Negative Covenants; (f) notice of material events; (g) requests for borrowing; and (h) provisions related to the NYAG Lawsuit.[3]

22.     All non-privileged documents and communications concerning the Chapter 11 Plan of Liquidation for Ritchie I and II, filed in the United States Bankruptcy Court for the Southern District of New York, including any amendments or modifications thereto and a final, executed copy thereof.

---

[1]  For the avoidance of doubt, capitalized terms used in this Request have the same meaning ascribed to them in the Senior Term Loan and Liquidity Agreement.

[2]  For the avoidance of doubt, capitalized terms used in this Request have the same meaning ascribed to them in the Ritchie I Debtor-In-Possession Credit Agreement.

[3]  For the avoidance of doubt, capitalized terms used in this Request have the same meaning ascribed to them in the Ritchie II Debtor-In-Possession Credit Agreement.

23.     All documents and communications concerning requests or proposals by Ritchie I or Ritchie II to borrow or otherwise obtain additional liquidity from ABN, including all such requests made after October 26, 2006, and ABN's response thereto or evaluation thereof.

24.     All documents and communications concerning any dispute over funds remaining in the Draw Account following the filing of the NYAG Lawsuit.  This includes all documents and communications concerning the resolution of any such dispute.

25.     All non-publicly filed documents and communications concerning the NYAG Lawsuit or the NYAG Investigation.

26.     All documents and communications concerning rescission, the threat of rescission, or the potential for rescission of Life Settlement Policies originated by Coventry First.

27.     All documents and communications concerning any offer by LST I to negotiate an agreement whereby LST I would replace any Life Settlement Policy that was rescinded based on the allegations in the NYAG Lawsuit.  This includes all documents and communications concerning any response or proposed response to such an offer.

28.     All documents and communications concerning any claim, lawsuit, or threatened lawsuit against Plaintiffs by any Original Seller, insured, or other person related to any Life Settlement Policy.

29.     All documents and communications related to the Ritchie-ABN Sharing Agreement, including a final, executed copy thereof.

30.     Documents and communications sufficient to show the value and financial performance of any life settlement certificate issued by ABN, or the ABNWLIFE Index, from its inception to the present.

31.     All documents and communications concerning any effect of the NYAG Investigation, the NYAG Lawsuit, or any conduct alleged therein, on any life settlement certificate issued by ABN, or the ABNWLIFE Index, from its inception to the present.

32.     All documents and communications concerning any actual, attempted, proposed or contemplated transaction involving ABN's purchase or sale of any Conveyed Life Settlement

Policy.  This includes all documents and communications concerning ABN's plans to opportunistically sell any Conveyed Life Settlement Policy either directly or through a newly-formed entity.

33.     All non-privileged documents concerning your disposition or plans relating to Conveyed Life Settlement Policies acquired by you in the Ritchie I and II Bankruptcy.

34.     All non-publicly filed documents concerning the Coventry Action or this lawsuit, including all communications with Ritchie I, Ritchie II, RCM, Ritchie Life Strategies Master Trust, Ritchie Risk-Linked Life Strategies Trust, and any affiliated person or entity.  This also includes all such communications with Plaintiffs or their counsel or any other person acting on their behalf; ABN; Houlihan Lokey; the NYAG; any investor in Ritchie I or II; any Potential Purchaser; any former employee of Plaintiffs; any journalist or reporter; or any other person.

# EXHIBIT E

# [FILED UNDER SEAL]

# EXHIBIT F

# [FILED UNDER SEAL]

# EXHIBIT G

# [FILED UNDER SEAL]

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED and RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., and LST I LLC,<br><br>Defendants. | Case No. 09 CV 1086 (DLC)<br>ECF Case |

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Plaintiffs, Ritchie Risk-Linked Strategies Trading (Ireland), Limited and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited, through their attorneys, Liddle & Robinson, L.L.P., provides the following Responses to Defendants' Second Set of Interrogatories, dated February 23, 2010.

These responses are made without waiver of and with preservation of:

(1)    all questions as to competency, relevancy, materiality, privilege and admissibility of the response and its subject matter as evidence for any purpose in any further proceeding (including trial) in this and any other action;

(2)    the right to object to the use of any of the responses, or the subject matter of any of the interrogatories, on any ground in any further proceeding (including trial) in this and any other action;

(3)    the right at any time to revise, correct, add to, supplement and clarify any of the responses; and

(4)    the right to object on any ground at any time to a demand for further response to Defendants' Second Set of Interrogatories.

These responses and any further responses are made expressly without acknowledgement of the materiality or relevance of the interrogatories or that they are in any way reasonably calculated to lead to the discovery of admissible evidence.

## GENERAL OBJECTIONS

(1)    Plaintiffs object to all requests to the extent that they seek discovery of material protected by the attorney-client privilege and/or the work-product doctrine as outlined in Fed. R. Civ. P. 26(b)(3), which include e-mails Plaintiffs exchanged with attorneys at Liddle & Robinson, L.L.P. after they had established an attorney-client relationship with Liddle & Robinson, L.L.P. concerning their contractual relationship with Defendants.

(2)    Plaintiffs object to any request for documents or the identification of documents on the grounds that such requests are outside the scope of interrogatories pursuant to Local Civil Rule 33.3(a).

(3)    Plaintiffs object to the extent that the Defendants have exceeded 25 interrogatories between the Defendants' First Set of Interrogatories and Defendants' Second Set of Interrogatories in violation of Federal Rule of Civil Procedure 33(a)(1) through the inclusion of numerous discrete subparts to each interrogatory.

2

(4)    Plaintiffs object to all instructions, definitions and interrogatories to the extent that they impose obligations beyond those imposed by the Federal Rules of Civil Procedure, or the Local Civil Rules of the United States Court for the Southern District of New York.

(5)    Plaintiffs object to Instruction E because it imposes a greater obligation than Fed. R. Civ. P. 33(b)(4).  Plaintiffs will comply with Fed. R. Civ. P. 33(b)(4).

(6)    Plaintiffs object to Instruction F because it imposes a greater obligation than Fed. R. Civ. P. 26(e) and 33(b).  Plaintiffs will comply with Fed. R. Civ. P. 26(e) and 33(b).

(7)    These General Objections are incorporated into each of the Responses and Specific Objections below.  The following responses are made without waiver of these General Objections.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

### Interrogatory No. 1

State all facts on which you base your contention that "Defendants likely acquired most if not all of the life insurance policies sold to Ritchie I and Ritchie II through a pattern of bribes, bid-rigging, fraud and falsification of documents…." Compl. ¶ 43; *see also id.* ¶29 ("Plaintiffs learned that many if not all the life insurance policies they had purchased from LST likely had been purchased by Defendants in violation of federal, state, and local law and regulations").

Response and Specific Objections to Interrogatory No. 1

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 1 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No.

3

93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 1 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 1 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to Interrogatory No. 1 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D.Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D.Kan. Sept. 15, 2000). Additionally, Plaintiffs object to Interrogatory No. 1 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. February 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991). Plaintiffs further objects to Interrogatory No. 1 on the grounds that Defendants' have exceeded the maximum allowable number of interrogatories through the use of numerous subparts within both their First Set of Interrogatories and Second Set of Interrogatories.

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 1, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced in this case, deposition transcripts and exhibits as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 1 or swear that any response given was accurate and complete.

## Interrogatory No. 2

**If Plaintiffs contend that Coventry First's Origination of any Conveyed Life Settlement Policy violated any federal, state, or local law or regulations, Compl. ¶ 29, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state the legal or theoretical basis for your contention, identify all laws, statutes or regulations you claim were violated,**

4

**and state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 2

       In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 2 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 2 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 2 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

       Plaintiffs also object to stating "the legal or theoretical basis for your contention" and stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in subparts of Interrogatory No. 2 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No, 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

       Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in subparts of Interrogatory No. 2 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

       Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 2, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 2 or swear that any response given was accurate and complete.

**Interrogatory No. 3**

If Plaintiffs contend that the sale of any Conveyed Life Settlement Policy to Ritchie I or Ritchie II violated the Ritchie I MPPA or Ritchie II MPPA, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state the legal or theoretical basis for your contention, identify each provision of the Ritchie I MPPA or Ritchie II MPPA you claim was violated, and state all facts and identify all witnesses and documents that support your contention.

Response and Specific Objections to Interrogatory No. 3

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 3 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 3 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 3 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "the legal or theoretical basis for your contention" and stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in subparts of Interrogatory No. 3 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in subparts of Interrogatory No. 3 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 3, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil

Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 3 or swear that any response given was accurate and complete.

**Interrogatory No. 4**

       **If Plaintiffs contend that any Conveyed Life Settlement Policy was Originated unlawfully due to "bid-rigging," or because Defendants paid "brokers...undisclosed 'co-brokering fees,' to 'sit on' or reduce competitive bids from buyers," Compl. ¶32, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 4

       In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 4 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 4 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997).

       Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 4 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

       Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 4, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5

(N.D.N.Y. Feb. 24, 2010); *See Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *See Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 4 or swear that any response given was accurate and complete.

**Interrogatory No. 5**

> If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully due to the creation of "false and misleading documentation," Compl. ¶33, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state all facts and identify all witnesses and documents that support your contention.

Response and Specific Objections to Interrogatory No. 5

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 5 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 5 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 5 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 5 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 5, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5

(N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007).   However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 5 or swear that any response given was accurate and complete.

**Interrogatory No. 6**

> **If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully due to the use of "gross offers," Compl. ¶38, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed life Settlement Policy identified, identify all laws, statutes, and regulations you claim were violated, and state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 6

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 6 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 6 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 6 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 6 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in a subpart of Interrogatory No. 6 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007

WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 6, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 6 or swear that any response given was accurate and complete.

## Interrogatory No. 7

**If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully due to "falsifying any paperwork the [s]eller sees to show less compensation than is actually paid to brokers," Compl. ¶33, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each such Conveyed Life Settlement Policy identified, state all facts and identify all witnesses and documents that support your conclusion.**

## Response and Specific Objections to Interrogatory No. 7

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 7 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 7 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 7 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 7 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group,*

*Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 7, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 7 or swear that any response given was accurate and complete.

## Interrogatory No. 8

**If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully for reasons other than those identified in response to Interrogatories 1-7, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, identify the basis for your contention, identify all laws, statutes or regulations you claim were violated, and state all facts and identify all witnesses and documents that support your contention.**

## Response and Specific Objections to Interrogatory No. 8

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 8 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 8 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 8 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 8 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation.

*See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

   Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in a subpart of Interrogatory No. 8 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, Case No. 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

   Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 8, Plaintiffs do not know the answer to this Interrogatory and are prevented from ascertaining the answer due to the Defendants' conduct. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). However, the Defendants have so pervasively marked the documents produced, deposition transcripts and exhibits in this case as "Attorneys' Eyes Only" that it is impossible for Plaintiffs to respond to Interrogatory No. 8 or swear that any response given was accurate and complete.

## Interrogatory No. 9

   **If Plaintiffs contend that they satisfied all conditions precedent prior to filing suit against Defendants, identify the basis for your contention, and state all facts and identify all witnesses and documents that support your contention.**

## Response and Specific Objections to Interrogatory No. 9

   In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 9 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 9 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 9 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101,

*10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to Interrogatory No. 9 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000). Additionally, Plaintiffs object to Interrogatory No. 9 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 9, Plaintiffs assert that, to the extent notice of breach of the agreements is a condition precedent, the following satisfy the notice requirement:

- RITE000863519 to RITE000863521
- RITE000863522
- RITE000863523 to RITE000863524
- RITE000863525 to RITE000863526
- RITE000863527 to RITE000863528
- RITE000863529 to RITE000863530
- RITE000863531 to RITE000863533
- RITE001533300
- RITE001533296
- RITE001533297
- Conversations and other correspondence between Plaintiffs and Defendants from October 26, 2006 through approximately December 11, 2006.

Plaintiffs continue to search for documents and information responsive to this Interrogatory and will amend the Response as necessary

**Interrogatory No. 10**

**For each and every cause of action alleged against Defendants, explain in detail how each Plaintiff has been injured by the alleged wrongful conduct; state the amount of damage claimed by each Plaintiff; and explain how that damage amount was calculated, including but not limited to providing specific calculations identifying the total dollar amounts of damages allegedly owed to each Plaintiff.**

13

<u>Response and Specific Objections to Interrogatory No. 10</u>

   In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 10 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, \*1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, \*1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 10 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, \*13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, \*1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 10 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, \*10 (S.D.N.Y. October 23, 2003).

   Plaintiffs also object to "explain[ing] in detail how each Plaintiff has been injured by the alleged wrongful conduct" as requested in a subpart of Interrogatory No. 10 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, \*6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, \*1 (D. Kan. Sept. 15, 2000).

   Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 10, Plaintiffs do not possess the answer to Interrogatory No. 10 at this time. Fact discovery is not closed as there are additional depositions to be taken. Furthermore, expert reports have not yet been submitted, nor has the deadline for their submission passed. Federal Rule of Civil Procedure 33 requires that the party responding to an Interrogatory swear to the veracity of the response. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, \*5 (N.D.N.Y. Feb. 24, 2010); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26 (S.D.N.Y. 1966); *Kenneth v. Nationwide Mutual Fire Ins.*, Case No. 03-521F, 2007 WL 3533887 (W.D.N.Y. Nov. 13, 2007). Since Plaintiffs' experts have not yet completed their review and analysis of the damages in this case, Plaintiffs cannot, at this time, provide an accurate damages calculation. Plaintiffs will be seeking the following categories of damages:

- Compensatory damages;
- Expectation damages, including lost profits;
- Prejudgment and post-judgment interest; and
- Attorney's fees

Dated: New York, New York
      March 25, 2010

                          LIDDLE & ROBINSON, L.L.P.

                      By: _____
                           James R. Hubbard
                           Jeffrey L. Liddle
                           James W. Halter
                    800 Third Avenue
                    New York, New York 10022
                    Tel:    (212) 685-8500
                    Fax:   (212) 685-1505
                    jhubbard@liddlerobinson.com
                    *Attorneys for Plaintiff*

## VERIFICATION

I hereby certify that I have read the foregoing Responses to Defendants' Second Set of Interrogatories that the are true and accurate to the best of my knowledge and belief.

_____

William B. Hobbs

Dated: March ___, 2010.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of March, 2010, I served true and accurate copies of the attached Plaintiffs' Responses to Defendants' Second Set of Interrogatories by first-class mail on counsel for Defendants at the following address:

> David A. Forkner, Esq.
> Williams & Connolly LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005-5901
> dforkner@wc.com

> By: _____
> James W. Halter, Esq.

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RITCHIE RISK-LINKED STRATEGIES )
TRADING (IRELAND), LIMITED and )
RITCHIE RISK-LINKED STRATEGIES )
TRADING (IRELAND) II, LIMITED, )
 )
     ) Case No. 09 CV 1086 (VM) (DCF)
    Plaintiffs, ) ECF Case
 )
 v. )
 )
COVENTRY FIRST LLC, THE COVENTRY )
GROUP, INC., MONTGOMERY CAPITAL, )
INC., and LST I LLC, )
 )
    Defendants. )
 )

## PLAINTIFFS' SECOND AMENDED RESPONSES AND OBJECTIONS TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Plaintiffs, Ritchie Risk-Linked Strategies Trading (Ireland), Limited and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited, through their attorneys, Liddle & Robinson, L.L.P., provides the following Amended Responses to Defendants' Second Set of Interrogatories, dated February 23, 2010.

These responses are made without waiver of and with preservation of:

(1) all questions as to competency, relevancy, materiality, privilege and admissibility of the response and its subject matter as evidence for any purpose in any further proceeding (including trial) in this and any other action;

(2) the right to object to the use of any of the responses, or the subject matter of any of the interrogatories, on any ground in any further proceeding (including trial) in this and any other action;

(3)    the right at any time to revise, correct, add to, supplement and clarify any of the responses; and

(4)    the right to object on any ground at any time to a demand for further response to Defendants' Second Set of Interrogatories.

These responses and any further responses are made expressly without acknowledgement of the materiality or relevance of the interrogatories or that they are in any way reasonably calculated to lead to the discovery of admissible evidence.

## GENERAL OBJECTIONS

(1)    Plaintiffs object to all requests to the extent that they seek discovery of material protected by the attorney-client privilege and/or the work-product doctrine as outlined in Fed. R. Civ. P. 26(b)(3), which include e-mails Plaintiffs exchanged with attorneys at Liddle & Robinson, L.L.P. after they had established an attorney-client relationship with Liddle & Robinson, L.L.P. concerning their contractual relationship with Defendants.

(2)    Plaintiffs object to any request for documents or the identification of documents on the grounds that such requests are outside the scope of interrogatories pursuant to Local Civil Rule 33.3(a).

(3)    Plaintiffs object to the extent that the Defendants have exceeded 25 interrogatories between the Defendants' First Set of Interrogatories and Defendants' Second Set of Interrogatories in violation of Federal Rule of Civil Procedure 33(a)(1) through the inclusion of numerous discrete subparts to each interrogatory.

2

(4)     Plaintiffs object to all instructions, definitions and interrogatories to the extent that they impose obligations beyond those imposed by the Federal Rules of Civil Procedure, or the Local Civil Rules of the United States Court for the Southern District of New York.

(5)     Plaintiffs object to Instruction E because it imposes a greater obligation than Fed. R. Civ. P. 33(b)(4).  Plaintiffs will comply with Fed. R. Civ. P. 33(b)(4).

(6)     Plaintiffs object to Instruction F because it imposes a greater obligation than Fed. R. Civ. P. 26(e) and 33(b).  Plaintiffs will comply with Fed. R. Civ. P. 26(e) and 33(b).

(7)     These General Objections are incorporated into each of the Responses and Specific Objections below.  The following responses are made without waiver of these General Objections.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

### Interrogatory No. 1

**State all facts on which you base your contention that "Defendants likely acquired most if not all of the life insurance policies sold to Ritchie I and Ritchie II through a pattern of bribes, bid-rigging, fraud and falsification of documents...." Compl. ¶ 43; _see also id._ ¶29 ("Plaintiffs learned that many if not all the life insurance policies they had purchased from LST likely had been purchased by Defendants in violation of federal, state, and local law and regulations").**

Response and Specific Objections to Interrogatory No. 1

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 1 is improper because it is not a more practical means of obtaining this information than document requests and depositions.  _See Tribune Co. v. Purcigliotti_, Case No.

3

93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 1 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 1 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to Interrogatory No. 1 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D.Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D.Kan. Sept. 15, 2000). Additionally, Plaintiffs object to Interrogatory No. 1 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. February 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991). Plaintiffs further objects to Interrogatory No. 1 on the grounds that Defendants' have exceeded the maximum allowable number of interrogatories through the use of numerous subparts within both their First Set of Interrogatories and Second Set of Interrogatories.

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 1, Plaintiffs respond by referring Defendants to the information listed on the attached Schedule A.

**Interrogatory No. 2**

      **If Plaintiffs contend that Coventry First's Origination of any Conveyed Life Settlement Policy violated any federal, state, or local law or regulations, Compl. ¶ 29, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state the legal or theoretical basis for your contention, identify all laws, statutes or regulations you claim were violated, and state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 2

      In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 2 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No.

02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003).   Additionally, Plaintiffs object to Interrogatory No. 2 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 2 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "the legal or theoretical basis for your contention" and stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in subparts of Interrogatory No. 2 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in subparts of Interrogatory No. 2 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 2, Plaintiffs respond by referring Defendants to the attached Schedule A and Columns E, F, G, H, I, J, and K thereto.

## Interrogatory No. 3

**If Plaintiffs contend that the sale of any Conveyed Life Settlement Policy to Ritchie I or Ritchie II violated the Ritchie I MPPA or Ritchie II MPPA, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state the legal or theoretical basis for your contention, identify each provision of the Ritchie I MPPA or Ritchie II MPPA you claim was violated, and state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 3

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 3 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No.

93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 3 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 3 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "the legal or theoretical basis for your contention" and stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in subparts of Interrogatory No. 3 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in subparts of Interrogatory No. 3 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 3, Plaintiffs respond by referring Defendants to the attached Schedule A and Columns E, F, G, H, I, J, and K thereto.

## Interrogatory No. 4

**If Plaintiffs contend that any Conveyed Life Settlement Policy was Originated unlawfully due to "bid-rigging," or because Defendants paid "brokers...undisclosed 'co-brokering fees,' to 'sit on' or reduce competitive bids from buyers," Compl. ¶32, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 4

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 4 is improper because it is not a more practical means of obtaining this

information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 4 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 4 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 4, Plaintiffs respond by referring Defendants to the policies identified with a "Y" in Columns F, G, and H of the attached Schedule A.

## Interrogatory No. 5

**If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully due to the creation of "false and misleading documentation," Compl. ¶33, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 5

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 5 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 5 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 5 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 5 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 5, Plaintiffs respond by referring Defendants to the policies identified with a "Y" in Columns H and I of the attached Schedule A.

**Interrogatory No. 6**

**If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully due to the use of "gross offers," Compl. ¶38, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, identify all laws, statutes, and regulations you claim were violated, and state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 6

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 6 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 6 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 6 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 6 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000

WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in a subpart of Interrogatory No. 6 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 1, Plaintiffs respond by referring Defendants to the policies listed on the attached Schedule A.

## Interrogatory No. 7

**If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully due to "falsifying any paperwork the [s]eller sees to show less compensation than is actually paid to brokers," Compl. ¶33, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each such Conveyed Life Settlement Policy identified, state all facts and identify all witnesses and documents that support your conclusion.**

Response and Specific Objections to Interrogatory No. 7

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 7 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 7 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 7 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 7 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000

9

WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 7, Plaintiffs respond by referring Defendants to the policies identified with a "Y" in Column H of the attached Schedule A.


**Interrogatory No. 8**

**If Plaintiffs contend any Conveyed Life Settlement Policy was Originated unlawfully for reasons other than those identified in response to Interrogatories 1-7, then identify each such Conveyed Life Settlement Policy by insured name and policy number and, for each Conveyed Life Settlement Policy identified, identify the basis for your contention, identify all laws, statutes or regulations you claim were violated, and state all facts and identify all witnesses and documents that support your contention.**

Response and Specific Objections to Interrogatory No. 8

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 8 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 8 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 8 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. Oct. 23, 2003).

Plaintiffs also object to stating "all facts and identify[ing] all witnesses and documents that support your contention" as requested in a subpart of Interrogatory No. 8 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Additionally, Plaintiffs object to identifying "all laws, statutes or regulations you claim were violated" as requested in a subpart of Interrogatory No. 8 on the grounds that it seeks an answer to questions of pure law. *See Trueman v. New York State Canal Corp.*, Case No. 09-049, 2010 WL 681341, *2 (N.D.N.Y. Feb. 24, 2010); *Sheehy v. Ridge Tool Co.*, Case No. 05-01614, 2007 WL 102074, *1 (D. Conn. April 2, 2007); *Bishop v. Nat'l Account Sys., Inc.*, Case

10

No. 91-132, 1991 WL 11675888, *2 (D. Conn. Sept. 4, 1991).

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 8, Plaintiffs respond by referring Defendants to the policies identified with a "Y" in Column J of the attached Schedule A.

**Interrogatory No. 10**

**For each and every cause of action alleged against Defendants, explain in detail how each Plaintiff has been injured by the alleged wrongful conduct; state the amount of damage claimed by each Plaintiff; and explain how that damage amount was calculated, including but not limited to providing specific calculations identifying the total dollar amounts of damages allegedly owed to each Plaintiff.**

Response and Specific Objections to Interrogatory No. 10

In addition to the General Objections, Plaintiffs object on the grounds that Interrogatory No. 10 is improper because it is not a more practical means of obtaining this information than document requests and depositions. *See Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997); *Chiquelin v. Efunds Corp.*, Case No. 02-51521, 2003 WL 21459581, *1 (S.D.N.Y. June 24, 2003). Additionally, Plaintiffs object to Interrogatory No. 10 on the grounds that the interrogatory is improper because it would require Plaintiffs' to reiterate evidence previously provided in discovery. *See Convolve Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, Case No. 06-6198, 2007 WL 1521117, *13 (S.D.N.Y. May 24, 2007); *Tribune Co. v. Purcigliotti*, Case No. 93-7222, 1997 WL 540810, *1 (S.D.N.Y. Sept. 3, 1997). Plaintiffs further object to Interrogatory No. 10 on the grounds that it is not sufficiently specific to allow a focused response. *See Melendez v. Greiner*, Case No. 01-07888, 2003 WL 22434101, *10 (S.D.N.Y. October 23, 2003).

Plaintiffs also object to "explain[ing] in detail how each Plaintiff has been injured by the alleged wrongful conduct" as requested in a subpart of Interrogatory No. 10 on the grounds that it is improper for an interrogatory to seek all facts supporting a particular allegation. *See Clean Earth Remediation And Construction Services, Inc. v. American International Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007); *Grynberg v. Total S.A.*, Case No. 03-01280, 2006 WL 1186836, *6 (D. Colo. May 3, 2006); *Thompson v. United Transp.*, Case No. 99-2288, 2000 WL 1375293, *1 (D. Kan. Sept. 15, 2000).

Since expert discovery has not been completed and Plaintiffs' experts have not yet completed their review and analysis of the damages in this case, Plaintiffs reserve the right to amend this response at a later time based on additional information.

Notwithstanding the General Objections and the Specific Objections to Interrogatory No. 10, Plaintiffs provide the following good faith estimate of damages.

11

Compensatory Damages:

Ritchie I paid $652,799,643 to purchase policies from Defendants (other than the nineteen matured policies discussed below). Ritchie I paid $95,823,750 to keep those policies in force. Ritchie I received $86,187,260 in loans and withdrawals from those policies. Thus, the net acquisition cost for the policies to Ritchie I was $662,436,133.

Nineteen policies matured while held by Ritchie I which resulted in a net gain for Ritchie I of $16,414,714.51. Ritchie I sold the remaining policies for $410,564,670.15.

Thus, Ritchie I seeks damages for its out-of-pocket losses with respect to the policies in the amount of $235,456,748.34.

Ritchie II paid $105,907,072 to purchase policies from Defendants (other than the one matured policy discussed below). Ritchie II paid $5,909,237 to keep those policies in force. Ritchie II received $12,951,000 in loans and withdrawals from those policies. Thus, the net acquisition cost for those policies to Ritchie II was $98,865,309.

One policy matured while held by Ritchie II which resulted in a net gain for Ritchie II of $426,267.00. Ritchie II sold all but one of the remaining policies for $58,205,720.98.

Thus, Ritchie II seeks damages for its out-of-pocket losses with respect to the policies in the amount of $40,233,321.02.

Ritchie I and Ritchie II also paid $12,718,973 in costs and fees related to the bankruptcy process and seek that amount as part of their compensatory damages as well.

Expectation Damages

Ritchie I and Ritchie II purchased the policies from Defendants at an agreed-upon discount rate of 10%. The discount rate for the sale of the 598 policies due to the anticipated securitization was 8%. Thus, the anticipated profit to Ritchie I and Ritchie II combined was $66,875,839.

Ritchie I and Ritchie II anticipated the remaining policies would be sold at the same discount rate and they would have received a combined profit of $93,180,013.

Additional Damages

Ritchie I and Ritchie II also seek prejudgment and post-judgment interest and attorneys fees in an amount to be determined.

12

Dated: New York, New York
     March 14, 2011

LIDDLE & ROBINSON, L.L.P.

By: _____
    James W. Halter
    Jeffrey L. Liddle
    James R. Hubbard
800 Third Avenue
New York, New York 10022
Tel:   (212) 685-8500
Fax:   (212) 685-1505
jhubbard@liddlerobinson.com
*Attorneys for Plaintiff*

13

## **VERIFICATION**

I hereby certify that, as an agent of Plaintiffs, I have read the foregoing Second Amended Responses to Defendants' Second Set of Interrogatories and that the facts asserted therein are true and accurate to the best of my knowledge and belief.

Dated: March 14, 2010.

James W. Halter
*Counsel for Plaintiffs*

14

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of March 2011, I served true and accurate copies of the attached Plaintiffs' Second Amended Responses to Defendants' Second Set of Interrogatories by e-mail on counsel for Defendants at the following address:

> David A. Forkner, Esq.
> Williams & Connolly LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005-5901
> dforkner@wc.com

By: _____
James W. Halter, Esq.

15

# EXHIBIT J

LAW OFFICES OF THOMAS P. PUCCIO

230 PARK AVENUE

SUITE 301

NEW YORK, N.Y. 10169

TEL: 212-883-6383

FAX: 212-883-6388

E-MAIL: tpuccio@lotpp.com

March 13, 2008

**By Hand Delivery**

Hon. Denise L. Cote
500 Pearl Street, Rm. 1040
New York, NY 10007

Re:   *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC)

Dear Judge Cote:

I write on behalf of Plaintiffs in response to Defendants' letter of March 11, 2008. Plaintiffs have produced, in response to Defendants' 147 separately numbered requests, more than 1.5 million pages of documents. Plaintiffs' production has been diligent and thorough, and the objections they asserted – and of which Defendants belatedly complain – are well founded.

Defendants first complain that Plaintiffs have not produced documents – specifically, documents concerning the life insurance policies at issue (the "Policies") – generated long after the events at issue in this lawsuit.[1] In particular, Plaintiffs have not produced such documents after they filed for bankruptcy in June 20, 2007.[2] To have done so likely would have increased by as much as three-fold the burden of reviewing and privilege-logging for the applicable document custodians.

Defense counsel claims that these documents, generated so long after the events at issue, are relevant to Plaintiffs' damages. But with the bankruptcy filing, Plaintiffs' financial condition, their attempts to mitigate damages, the attempted and actual sale of the policies – indeed, every category of document highlighted by Defendants – became the subject of a voluminous public record. Moreover, the Policies were sold in a court-supervised public auction early this year, so the "floor" in Plaintiffs' damage calculation is now established. Accordingly, this is – as we have explained to defense counsel, who have not actually disputed the point – a situation in which the

---

[1] Defendants incorrectly state that Plaintiffs did not object to the requests for production on burden grounds. Virtually all of the requests Defendants cite were the subject of either general or specific burden objections, and all agreements to produce were subject to those objections. It is Defendants who chose not to take issue with any of Plaintiffs' objections until fully three months after objections were first served.

[2] Documents created after the lawsuit was filed last May are mostly either irrelevant – because they do not concern the events at issue in the lawsuit – or overwhelmingly protected by privilege and work-product doctrine. To the extent a document generated after the lawsuit was filed has any relevance to the claims or defenses of any party – to the extent, that is, that it concerns the Policies or any transaction involving them – Plaintiffs produced the documents until the burden of doing so became outweighed by the benefit in light of the transparency created by the bankruptcy proceeding.

LAW OFFICES OF THOMAS P. PUCCIO

burden of discovery, especially in light of other available sources, greatly outweighs any conceivable benefit. F.R.C.P. 26(b)(2)(C)(i) & (iii).

Second, Defendants' bullet-points misstate what Plaintiffs have produced:

a.    Plaintiffs have not refused to produce documents relating to "Defendants' claim . . . that Plaintiffs could not have completed the attempted securitization underlying their damages theory due to Ritchie's own . . . problems." On the contrary, we explained to defense counsel that Plaintiffs would produce all documents and communications concerning the attempted securitization. To the extent any such document reflects on Plaintiffs' ability to complete the securitization, or indeed on any supposed "problem" of any Ritchie entity, it has been produced. What Plaintiffs have not produced is documents that have nothing to do with the securitization or with Defendants' argument that Plaintiffs could not have completed it.

b.    Defendants' suggestion that Plaintiffs are refusing to produce documents concerning "mitigation of damages" is mystifying. Plaintiffs expressly stated that they would produce "non-privileged documents . . . regarding Plaintiffs' efforts to mitigate damages," and have done so. Resp. to First Req. No. 48. Moreover, as we have repeatedly explained (beginning one month ago, when Defendants first raised these issues), Plaintiffs have indeed produced the documents concerning the "various means of profiting from the Policies other than securitizing them" (Mar. 11 letter, p.2).[3]

c.    Defendants have asked for "all personnel records" of "all employees, agents, and other individuals affiliated with or acting at the direction of any Plaintiff who were involved in any capacity in the events described in [the] Complaint." First Req. No. 39. As we have repeatedly explained, and as Defendants have never disputed, this Request is overbroad and vague. Nevertheless, we have already explained that Plaintiffs' document production includes precisely what Defendants now say (for the first time) they particularly seek: "records showing [key] employees' experience in the life settlement market." In any event, these documents are not relevant. Defendants have said that Plaintiffs' allegation that they relied on Defendants' expertise puts in issue the "sophistication and expertise of . . . employees who were involved in the transactions at issue." Feb. 11 letter, p.4. The allegations of reliance, however, were made in the context of the now-dismissed tort claims; they are not relevant to the contract claims, and Defendants have never suggested otherwise.

We look forward to addressing these matters with the Court this afternoon.

Respectfully submitted,

Thomas P. Puccio

cc: Dane H. Butswinkas

---

[3] From their citation, Defendants' real complaint appears to be that Plaintiffs have objected to Second Set of Requests No. 46, which deals not with mitigation of damages but with "all documents . . . concerning alternatives to filing a lawsuit against Defendants that were considered by Plaintiffs." Defendants' only explanation for the relevance of this Request has been that it somehow bears on Plaintiffs' motives for filing suit. But as we explained to defense counsel – and as defense counsel has not disputed – Plaintiffs' motives are not relevant to the claims or defenses of any party. Moreover, this Request is (as Defendants have never disputed) hopelessly vague.

# EXHIBIT K

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT, L.L.C., RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED, WALKERS SPV LIMITED, as trustee for Ritchie Risk-Linked Strategies Trust I and Ritchie Life Strategies Master Trust, and RITCHIE RISK-LINKED STRATEGIES TRADING, LTD., | ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 07CV3494 (DLC)(DCF)  ECF Case  **PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES** |
| Plaintiffs, | ) ) |
| v. | ) ) |
| COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., LST I LLC, ALAN BUERGER, CONSTANCE BUERGER, REID S. BUERGER, ANTONIO MUNIZ, ALEX SELDIN, NEAL JACOBS, EILEEN SHOVLIN, and JIM DODARO, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES

Plaintiffs (collectively "Ritchie Capital"), pursuant to Federal Rule of Civil Procedure 26(a)(1) hereby make their Initial Disclosures. Plaintiffs reserve the right to supplement these disclosures in a timely fashion.

### A.   Witnesses

The following is a list of each individual likely to have discoverable information that Ritchie Capital may use to support its claims, unless solely for impeachment. Ritchie Capital reserves the right to supplement this list. Ritchie Capital employees and contractors can be contacted through undersigned counsel.

1.  The following individuals may have knowledge about the allegations in the Complaint.

Duncan Goldie-Morrison (former Ritchie Capital employee)
David Govrin (former Ritchie Capital employee)
Bud Hunt (Ritchie Capital employee)
Elliot Lem (former Ritchie Capital employee)
Tiffany Lenz (former Ritchie Capital employee)
Jeff Mulholland (former Ritchie Capital employee)
Brian Murphy (Ritchie Capital employee)
James G. Rickards (former Ritchie Capital employee)
Thane Ritchie (Ritchie Capital employee)

Alan Buerger (Coventry employee)
Reid Buerger (Coventry employee)
Constance Buerger (Coventry employee)
Jim Dodaro (Coventry employee)
Neal Jacobs (Coventry employee)
Krista Lake (Coventry employee)
Antonio Muniz (Coventry employee)
Alex Seldin (Coventry employee)
Eileen Shovlin (Coventry employee)

2.  The following individuals served as counsel for Ritchie Capital in the transactions underlying the allegations in the Complaint. These persons will likely have information regarding the merits of the Complaint, the communications and negotiations relating to the underlying transactions, and the events that transpired after Plaintiffs purchased the policies from Defendants.

Maria Dantas (Leboeuf, Lamb, Greene & MacRae LLP)
Don Henderson (Leboeuf, Lamb, Greene & MacRae LLP)
Susan Marshall (Leboeuf, Lamb, Greene & MacRae LLP)
Bruce Reit (Leboeuf, Lamb, Greene & MacRae LLP)

3.  The following individuals served as counsel for Coventry in the transactions underlying the allegations in the Complaint. These persons will likely have information regarding the merits of the Complaint, the communications and negotiations relating to the underlying transactions, and the events that transpired after Plaintiffs purchased policies from Defendants.

Brian Brooks (O'Melveny & Myers LLP)

Francisco Flores (O'Melveny & Myers LLP)
Dan Passage (O'Melveny & Myers LLP)

4. The following contractors hired by Ritchie Capital may have general knowledge of the transactions underlying the Complaint:

Fred Caruso
DSI
Suite 2300
70 West Madison St.
Chicago, IL 60602
312-263-4141

5. Certain persons at ABN Amro, Ernst & Young, HSBC, Lehman Brothers, US Bank and UBS may have knowledge of the purchase of insurance policies from Coventry and the planned securitization transaction.

6. Certain persons at the Moody's rating service may have general knowledge of the insurance policies that Ritchie Capital purchased from Coventry and of the planned securitization transaction.

7. Certain persons at the New York Attorney General's office and the Florida Office of Insurance Regulation may have general knowledge of the merits of the Complaint and of the allegations outlined in the Complaint.

**B.**     **Documents**

Ritchie Capital identifies the following categories of documents in its possession, custody, or control that it may use to support its claims. Ritchie Capital reserves the right to supplement this list. Ritchie Capital will produce the documents on a timely basis.

1. Select filings from *People of the State of New York* v. *Coventry First LLC, Montgomery Capital Inc., The Coventry Group, Inc. and Reid S. Buerger*, Case No. 404620/06 (New York Supreme Court),

3

2. Select filings from *In the Matter of Coventry First LLC*, Case No. 88270-06 (Florida Office of Insurance Regulation),

3. Certain emails, correspondence and notes from individuals named above as "Witnesses" pertaining to Ritchie Capital's purchase of insurance policies from Coventry and the planned securitization transaction,

4. Copies of purchase agreements, servicing and monitoring agreements, loan and other financing agreements, and other documents from Ritchie Capital relating to the purchase of insurance policies from Coventry and the planned securitization transaction,

5. Copies of pre-sale reports relating to the planned securitization transaction, and documentation from the Moody's rating service, and

6. Billing and payment records, including records of premium and service fee payments for the policies.

**C.   <u>Damages</u>**

Ritchie Capital has alleged that it suffered damages in an amount believed to be not less than approximately $700 million, based on, among other things, the amounts for which Plaintiffs purchased the insurance policies from Defendants, the accretion of the policies, the ongoing cost of servicing the policies, the premiums for the policies, lost opportunity costs relating to the inability to carry forward the planned securitization transaction, and reputation damages. Ritchie Capital is entitled to trebled damages pursuant to the Racketeer Influenced and Corrupt Organizations Act, compensatory damages, and punitive damages. The documentation on which Ritchie Capital relied in reaching this initial estimate is described above, under "Documents." Ritchie Capital will further refine its claim for damages as the litigation progresses.

**D.**     <u>**Insurance Agreement(s)**</u>

Ritchie Capital is not aware of any such agreement at this time. In the event that Ritchie

Capital learns of such an insurance policy, Ritchie Capital will supplement this response.


Respectfully submitted,


LAW OFFICES OF THOMAS P. PUCCIO

Thomas P. Puccio (TPP-8403)
230 Park Avenue
New York, NY 10169
Tel: (212) 883-6383
Fax: (212) 883-6388


ROBBINS,   RUSSELL,   ENGLERT,   ORSECK   &
UNTEREINER LLP

By:    /s/ Lawrence S. Robbins
Lawrence S. Robbins (LR-8917)
Gary A. Orseck
Daniel R. Walfish (DW-5916)
Rachel S. Li Wai Suen (RS-1145)
1801 K Street, N.W.
Suite 411
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of July, 2007, I caused true and correct copies of Plaintiffs' Rule 26(a)(1) Initial Disclosures to be served electronically via the Court's ECF system on the following counsel:

Dane H. Butswinkas
Robert H. Cary
Kenneth J. Brown
Katherine G. Lindsey
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
dbutswinkas@wc.com
rcary@wc.com
kbrown@wc.com
klindsey@wc.com

*Attorneys for Defendants*

  /s/ Lawrence S. Robbins
Lawrence S. Robbins