UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RITCHIE RISK-LINKED STRATEGIES )
TRADING (IRELAND), LIMITED, and RITCHIE )
RISK-LINKED STRATEGIES TRADING )
(IRELAND) II, LIMITED, )
   )
     Plaintiffs, )
   ) Civil Action No. 1:09-cv-01086-VM-DCF
  v. )
   ) (ECF)
COVENTRY FIRST LLC, THE COVENTRY )
GROUP, INC., MONTGOMERY CAPITAL, INC.,)
and LST I LLC, )
   )
     Defendants. )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFFS'
REQUEST FOR "COSTS AND FEES RELATED TO THE BANKRUPTCY PROCESS"**

                  WILLIAMS & CONNOLLY LLP


                     /s/
                  Dane H. Butswinkas
                  David A. Forkner
                  Kenneth J. Brown

                  725 Twelfth Street, N.W.
                  Washington, D.C.  20005
                  (202) 434-5000
                  (202) 434-5029 (facsimile)
                  *Attorneys for Defendants*

Dated:  June 22, 2011

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................... 2

    I.     Plaintiffs Violated Federal Rule of Civil Procedure 26(a)(1)(A)(iii) ....................... 2

    II.    Statements Outside The Initial Disclosures Do Not Cure The Rule 26 Violation ........................................................................................................................ 3

    III.   The Court Should Order Preclusion Under Rule 37(c)(1) ........................................ 5

          A.     Plaintiffs' Non-Disclosure Was Not "Substantially Justified." .................... 5

          B.     Plaintiffs' Non-Disclosure Was Not "Harmless." ........................................ 7

          C.     Preclusion is Warranted ................................................................................ 9

CONCLUSION ...................................................................................................................... 10

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*,
   No. 04 Civ. 3854RCCAJP, 2005 WL 977850 (S.D.N.Y. Apr. 28, 2005) ..........................2, 6, 8

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006)........................................................2, 9

*Exo-Pro, Inc. v. Seirus Innovative Accessories, Inc.*, No. CV 05-3629(LDW)(AKT),
   2008 WL 4878513 (E.D.N.Y. Feb. 19, 2008)..........................................................................10

*Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567 (C.D. Cal. 2009) .........3, 6

*Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541 (N.D. Cal. 2009) .......................................................8

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste*, No. 08-CV-2540 (DJI)(JMA),
   2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011).......................................................................2, 9

*Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000) ........................................................................2

*Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 Civ. 3698(LAP), 2010 WL 3341837
   (S.D.N.Y. Aug. 17, 2010) .........................................................................................................9

*US Salt, Inc. v. Broken Arrow, Inc.*, Civ. No. 07-1988 (RKH/JSM), 2008 WL 2277602
   (D. Minn. May 30, 2008) ..........................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26................................................................................................................... passim

Fed. R. Civ. P. 37................................................................................................................... passim

Nearly one year after fact discovery closed, Plaintiffs disclosed for the first time that they were seeking bankruptcy fees and costs ("Bankruptcy Costs") as damages. *See* Ex. 1 at 12.[1] They had never previously mentioned this damages category, much less provided the "computation" or supporting documents required by Rule 26(a)(1)(A)(iii). This conduct violated Rule 26(a). And it was far from harmless. Defendants had no reason to know Plaintiffs were seeking Bankruptcy Costs, and took no discovery thereon. *See* Dfts.' Mem. ("Mem.") at 15-18.

Nothing in Plaintiffs' Opposition ("Opp.") changes that fact, or diminishes the prejudice it causes. Expert discovery is no substitute for a factual record. And Defendants diligently took discovery on those aspects of the bankruptcy that were relevant to the damages Plaintiffs disclosed at the outset of this case, *i.e.*, "the difference between the amount Plaintiffs paid for the [Policies] they bought from Defendants and the amount Plaintiffs received when [they] sold the [P]olicies in a bankruptcy auction." Opp. at 1; *see also* Mem. at 4-11; Ex. 2 at 1; Dkt. #1 (Compl.) ¶¶ 53-54. But Defendants did not—and had no reason to—seek discovery regarding Bankruptcy Costs or the many possible defenses thereto. *See* Mem. at 15-18.

This case must begin moving forward, not backward. It has been 15 months since fact discovery concluded on March 26, 2010, and under Judge Cote's original scheduling order, the Joint Pretrial Order was due on July 23, 2010. Dkt. # 27 ¶ 6. If Plaintiffs were allowed to inject their new damages category at this stage of the case, fact discovery would have to be substantially reopened, the Court would have to revisit Judge Cote's orders as well as its own, and this case would be even more delayed than it already has been. *See* Mem. at 18-19, 22-23. Preclusion is appropriate under Rule 37(c)(1) and the doctrine of equitable estoppel.

---

[1] The numbered exhibits referenced herein are appended to the Declaration of Kenneth J. Brown, filed contemporaneously with Defendants' opening memorandum.

**ARGUMENT**

**I.    Plaintiffs Violated Federal Rule of Civil Procedure 26(a)(1)(A)(iii).**

Rule 26(a)(1)(A)(iii) required Plaintiffs to provide, at the outset of this case, "a computation of each category of damages" they sought, and to produce the documents on which that computation was based. Plaintiffs' initial disclosures, however, said nothing about Bankruptcy Costs.[2] *See* Mem. at 6-8. Plaintiffs provided no computation of those costs, and produced no documents concerning them. To the contrary, they expressly refused to produce any non-public documents post-dating the bankruptcy filing because, they told Judge Cote, such materials were not relevant to their claimed damages. *See id.* at 4-5. Instead, Plaintiffs stated in their initial disclosures that they were seeking compensatory damages consisting of amounts they paid for the Policies, "lost opportunity costs" relating to the planned securitization transaction, and reputational damages. *Id.* at 7. Nonetheless, on March 14, 2011, almost four years after they filed their initial disclosures and nearly a year after fact discovery closed, Plaintiffs informed Defendants that they "also paid $12,718,973 in costs and fees related to the bankruptcy process and seek that amount as part of their compensatory damages as well." Ex. 1 at 12.

Plaintiffs plainly violated Rule 26(a)(1)(A)(iii). And, contrary to their suggestion, that violation does not depend on whether Bankruptcy Costs are general or consequential damages.[3] Opp. at 12-14. Regardless of their categorization, the Bankruptcy Costs themselves are a

---

[2] To be sure, Bankruptcy Costs are a damages category that Plaintiffs were obligated to disclose under Rule 26(a)(1)(A)(iii). *See Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste*, 2011 WL 1239867, at *1 (E.D.N.Y. Mar. 30, 2011) (required to disclose damages from "filing for bankruptcy in Italy"); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 289 (2d Cir. 2006) ("lost profits"); *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, 2005 WL 977850, at *1 (S.D.N.Y. Apr. 28, 2005) ("currency fluctuation damages").

[3] Bankruptcy Costs are consequential damages. Mem. at 15 n.6. General damages compensate for loss of "the very performance promised" in the contract. *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000). The MPPAs say nothing about bankruptcy. Indeed, Plaintiffs claim that they would not have filed for bankruptcy if the contracts had been performed. Dkt. #1 ¶¶ 52, 55.

2

damages category that Plaintiffs were required to disclose when this case began.

## II.     Statements Outside The Initial Disclosures Do Not Cure The Rule 26 Violation.

Plaintiffs argue that, although they never said they were seeking Bankruptcy Costs, they nonetheless made "accurate and sufficient disclosures to Defendants" by stating that they were seeking "compensatory damages" and "out-of-pocket losses." Opp. at 12; *see also id.* at 1, 17. That is legally and factually incorrect. Legally, Rule 26(a)(1)(A)(iii)'s purpose is to accelerate the exchange of information in order to facilitate discovery and trial preparation. *See* Fed. R. Civ. P. 26(a) advisory committee's note (1993 Amendments); *Frontline Med. Assoc., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009) (damages computation must be disclosed "in sufficient detail" for defendant "to understand the contours of its potential exposure and make informed decisions as to settlement and discovery"); *US Salt, Inc. v. Broken Arrow, Inc.*, 2008 WL 2277602, at *4 (D. Minn. May 30, 2008). If plaintiffs could satisfy that rule by stating that they seek "compensatory damages" or "out-of-pocket losses," without any further elaboration or computation of those damages, and without providing any documents supporting such a computation, then that would be standard practice, and the rule would be a nullity.

Factually, Plaintiffs cannot seriously contend that referencing "compensatory damages" or "out-of-pocket losses" sufficiently disclosed that they would seek Bankruptcy Costs. That is true for at least four reasons. First, if those disclosures were sufficient, then Plaintiffs would not have needed to itemize Bankruptcy Costs as a separate damages category in a supplemental discovery response. *See* Ex. 1 at 12. Second, notwithstanding their vague references to "compensatory" and "out-of-pocket" damages, Defendants repeatedly asked Plaintiffs to identify the particular damages they were seeking. When Plaintiffs did so, including in their complaint, Rule 26(a)(1) disclosures, Rule 30(b)(6) deposition testimony, initial interrogatory responses, and refusal to produce documents created after the bankruptcy, they never mentioned

Bankruptcy Costs.[4]  *See* Mem. at 4-11.

Third, Defendants had no reason to suspect that Plaintiffs' references to "compensatory damages" or "out-of-pocket losses" meant "Bankruptcy Costs."  The losses Plaintiffs repeatedly said they were seeking—the amount they paid for the Policies minus the amount they received in bankruptcy, *see* Mem. at 4-11—would be "out-of-pocket" and would constitute "compensatory damages."  Plaintiffs acknowledge as much in their Opposition:  "As consistently described in the Complaint and in discovery, Plaintiffs are seeking their out-of-pocket losses – here, the difference between the amount Plaintiffs paid for the life insurance policies they bought from Defendants and the amount Plaintiffs received when [they] sold the policies in a bankruptcy auction."  Opp. at 1.  Plaintiffs do not begin to explain why Defendants should have divined that they were also seeking a second, undisclosed category of "out-of-pocket losses."

Fourth, the mere fact that Plaintiffs filed for bankruptcy did not mean they were seeking Bankruptcy Costs.  Plaintiffs might have decided against pursuing such costs because they were at least equal to the costs associated with alternate exit strategies, or were offset by savings from the bankruptcy.  *See* Mem. at 16-18.  Or perhaps Plaintiffs wished to avoid the extensive discovery that a claim for Bankruptcy Costs would occasion.  Or perhaps they just did not think of it.  Regardless, Plaintiffs failed to reveal this damages category until March 14, 2011.

It is Plaintiffs who must suffer the consequences of that failure.  Indeed, the law rejects Plaintiffs' argument that, notwithstanding their violation of Rule 26(a)(1)(A)(iii) and

---

[4] Plaintiffs blame Defendants for not asking precisely the right question during Plaintiffs' Rule 30(b)(6) deposition.  *See* Opp. at 9 n.6.  That argument is not well-taken.  Plaintiffs—not Defendants—bear responsibility for identifying each category of their claimed damages at the outset of the case.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).  And, in any event, Defendants explicitly asked for Plaintiffs' ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Mem. at 8.  If Plaintiffs did not disclose Bankruptcy Costs in response to this question—whether because such harms were not caused by the breaches or because Plaintiffs were not seeking this damages category at the time—the fault is theirs.

4

Defendants' diligent efforts to identify Plaintiffs' damages with greater specificity, *see* Mem. at 4-11, it is Defendants—not Plaintiffs—who should suffer the consequences of not having gleaned that Bankruptcy Costs were in play.  Because Plaintiffs violated Rule 26(a)(1)(A)(iii) and 26(e)(1)(A), Rule 37(c)(1) sanctions are required unless the violation was "substantially justified" or "harmless."  Here, it was neither.

**III.  The Court Should Order Preclusion Under Rule 37(c)(1).**

    **A.  Plaintiffs' Non-Disclosure Was Not "Substantially Justified."**

There is no justification for Plaintiffs' failure to disclose that they were seeking Bankruptcy Costs.  The bankruptcy effectively concluded before this case commenced, and if Plaintiffs incurred costs therein, they knew it when they filed this action.  *See* Mem. at 13-14.  Nor, notwithstanding Plaintiffs' contrary assertion, *see* Opp. at 15, could a reasonable person have believed that Plaintiffs' complete failure to mention Bankruptcy Costs prior to the close of fact discovery, to provide any computation thereof, and to produce a single non-public document supporting such a computation, complied with Rule 26(a)(1)(A)(iii).  *See supra* Sections I, II.

Nonetheless, Plaintiffs claim that their failure to comply with Rule 26(a)(1)(A)(iii) was substantially justified (1) "in light of the fact that expert discovery . . . has not yet begun," Opp. at 17; and (2) because they "were not aware of any purported misunderstanding by Defendants." Opp. at 16.  Neither excuse is remotely sufficient.

<u>First</u>, Plaintiffs' claim that they needed expert testimony to calculate their Bankruptcy Costs is factually wrong and legally inapposite.  Factually, nearly one year after the close of fact discovery—but before expert discovery began—Plaintiffs stated that they paid precisely "$12,718,973 in costs and fees related to the bankruptcy process and seek that amount as part of their compensatory damages." Opp. at 11.  Obviously, expert testimony was unnecessary for that disclosure.  *See also* Mem. at 13-14.  And legally, the Federal Rules reject the notion that the

5

need for expert testimony—which is often used to calculate damages—can excuse compliance with Rule 26(a)(1)(A)(iii).  *See* Fed. R. Civ. P. 26(a)(1) (initial disclosures must be provided "without awaiting a discovery request"); *Frontline*, 263 F.R.D. at 570 ("Future expert analysis does not relieve Plaintiff of its obligation" to comply with Rule 26(a)(1)(A)(iii)); *Austrian Airlines*, 2005 WL 977850, at *2 ("[E]ven if plaintiff could not calculate its . . . damages at the time of its initial disclosure . . . there is no reason that it did not disclose its . . . damage *theory*.") (emphasis in original).

Second, Plaintiffs claim that their non-compliance with Rule 26(a)(1)(A)(iii) is substantially justified because Defendants should have divined from other disclosures that Plaintiffs were seeking Bankruptcy Costs.  Opp. at 17.  As set forth in Sections I and II, *supra*, such a view is legally indefensible and factually baseless.  Indeed, none of Plaintiffs' disclosures fairly apprised Defendants that Plaintiffs were seeking Bankruptcy Costs:

- Plaintiffs' initial disclosures do not mention Bankruptcy Costs—or even bankruptcy generally.  *See*  Mem. at 6-8.

- Plaintiffs' March 13, 2008 letter expressly disclaims the relevance of any documents created after the bankruptcy filing, except insofar as materials filed with the Bankruptcy Court related to the sale of the Policies—which by Plaintiffs' account is synonymous with their efforts to mitigate damages.[5]  Ex. 2 at 1; *see also* Mem. at 4-5.  That, of course, is the damages theory Plaintiffs have pursued from the outset of this case.  If Plaintiffs had sought Bankruptcy Costs, Judge Cote would not have allowed them to avoid producing a single document post-dating bankruptcy.

- The references in Plaintiffs' complaint and the March 25, 2010 interrogatory response to "compensatory damages" or "transaction costs, including the cost of maintaining the policies in force," do not disclose Bankruptcy Costs as a damages category.  *See* Mem. at 5-6, 10-11.  The March 25, 2010 interrogatory responses do not even contain the word "bankruptcy."  And, the Complaint includes the word bankruptcy in paragraph 52, but does not mention Bankruptcy Costs.  Instead, Plaintiffs disclosed this category of

---

[5] Plaintiffs claim that they "mitigated" their damages by selling the Policies in bankruptcy.  *See* Opp. at 1 (sale was "part of Plaintiffs' mitigation efforts"); *id.* at 13 (same).  Thus, in arguing that Defendants took discovery on their alleged "mitigation" of damages, *id.* at 8, Plaintiffs are saying that Defendants took discovery on the damages theory they have pursued from the outset.

damages for the first and only time in their March 14, 2011 interrogatory responses, nearly one year after the close of fact discovery.

### B. Plaintiffs' Non-Disclosure Was Not "Harmless."

The harm caused by Plaintiffs' Rule 26(a)(1)(A)(iii) violation is substantial. Because Defendants did not know Plaintiffs were seeking Bankruptcy Costs, they took no discovery of any kind—whether from Plaintiffs, any of their bankruptcy service providers, or anyone else—targeting the issues implicated by that category: (1) the makeup or computation of the Bankruptcy Costs, including the reasonableness and necessity of the actions taken by the bankruptcy service providers, see Mem. at 15-16; (2) the costs associated with alternate exit strategies, *see id.* at 16-17; and (3) costs savings achieved through the bankruptcy, *see id.* at 17-18. Defendants did not address Bankruptcy Costs in their subpoenas to Houlihan Lokey, Lewis & Ellis, ABN Amro ("ABN"), or DSI.[6] They did not ask questions at the deposition of ABN or DSI targeting the foregoing issues.[7] And, not knowing these issues were in the case, Defendants did not depose Houlihan Lokey or Lewis & Ellis at all. Nor did Defendants take any discovery regarding these issues from Plaintiffs' bankruptcy counsel. Nor have Defendants taken discovery from any entity that provided "accounting services" to Plaintiffs. Opp. at 13. Nor, during their depositions of Plaintiffs and eight of their current or former employees or agents—many of whom likely had knowledge of these issues—did Defendants ask any question targeting the issues set forth above. Nor did Defendants obtain a single non-public document from Plaintiffs created after the bankruptcy was filed, as Plaintiffs said such materials were not

---

[6] Plaintiffs' claim that Houlihan Lokey and DSI produced hundreds of thousands of pages is misleading. The vast majority of those documents consisted of Policy-specific materials that LST had produced to Plaintiffs in the bankruptcy, and were simply being produced back to LST.

[7] If Plaintiffs could identify any testimony regarding those issues, they assuredly would have done so, rather than submitting reams of testimony that simply mention the word "bankruptcy" or touch on some aspect of the bankruptcy that is irrelevant to their new damages category.

7

relevant to their damages theory. *See* Mem. at 4-5. Notably, much of that discovery would not have concerned the bankruptcy at all, but rather would have focused on the costs associated with alternate exit strategies. *See* Mem. at 16-17. To that end, Defendants have not taken any document or deposition discovery from numerous entities that would have knowledge of the costs associated with alternate strategies for exiting the life settlement investment, including those that Plaintiffs claim would have participated in their securitization.

Thus, Defendants have no factual record on which to attack Plaintiffs' new damages category. That is anything but harmless. And, contrary to Plaintiffs' suggestion, *see* Opp. at 22, a two-hour Rule 30(b)(6) deposition of Plaintiffs would not even begin to make up the difference. To develop the necessary record, Defendants would have to re-do substantial aspects of fact discovery, targeting this new set of issues. But fact discovery closed on March 26, 2010.

Plaintiffs do not—and cannot—dispute those facts. Instead, they make three arguments as to why the Court should disregard them, none of which has merit. First, Plaintiffs repeat that Defendants took extensive discovery regarding "the bankruptcy." Opp. at 19-20. Of course they did. From the start of *Ritchie I*, Plaintiffs' stated damages measure has been the difference between the amount they paid for the Policies and the amount they received in the bankruptcy. *See, e.g.*, *id.* ¶ 53; Opp. at 1 (so acknowledging). As reflected in the materials attached to Mr. Halter's declaration, Defendants did their best to explore this theory thoroughly. But Defendants took no discovery on the different set of issues raised by Plaintiffs' new damages category.

Second, they note that this case is not on the eve of trial.[8] That is true, but only because

---

[8] Courts routinely find "harm" for Rule 37(c)(1) purposes, when trial is not imminent. *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 554 (N.D. Cal. 2009) (preclusion proper where "fact discovery does not close for several more months," but "discovery . . . necessitated by Plaintiffs' new categories of damages would prejudice Defendants and almost certainly derail the trial schedule"); *Austrian Airlines*, 2005 WL 977850, at *1 (disclosure two weeks prior to close

8

Plaintiffs have delayed the case since March 2010 by improperly attempting to undo Judge Cote's discovery rulings, requesting privileged documents, and refusing to provide adequate responses to Defendants' contention interrogatories. *See* Mem. at 22-23. Indeed, under the original scheduling order, all expert discovery was to have been completed by June 25, 2010, and the Joint Pretrial Order filed by July 23, 2010. Dkt. # 27 ¶¶ 5, 6. Further delay attributable to Plaintiffs' Rule 26 violations would be unwarranted. And the fact that trial is not imminent does not alleviate Defendants' choice between re-doing significant aspects of fact discovery, which will be expensive and substantially delay this case, *see* Mem. at 18-19, or proceeding to expert discovery without doing so. Either way, Plaintiffs' untimely disclosure is not "harmless."

Finally, Plaintiffs observe that expert discovery has not begun. *See* Opp. at 11, 16, 18, 20, 22. But expert discovery is no substitute for fact discovery. If either party were to designate an expert regarding Bankruptcy Costs—which may or may not be an appropriate subject for expert testimony—that expert would have no factual record on which to base his or her opinions. *See* Mem. at 15-18. Likewise, Defendants have no factual record on which to cross-examine Plaintiffs' expert. An expert opinion cannot replace a full and fair opportunity to take the broad fact discovery that Defendants would need to defend this new damages category.

### C.   Preclusion is Warranted.

Plaintiffs' arguments regarding the four-factor *Design Strategy* standard are likewise deficient. First, Plaintiffs explain their Rule 26 violation by claiming it was "not intentional." Opp. at 21. But as a matter of law, preclusion does not require a showing of bad faith. *Design Strategy*, 469 F.3d at 296. Plaintiffs offer no legitimate explanation for their failure to disclose

---

of discovery); *see also Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (discovery closed four months earlier). In *Rienzi*, no trial date had been set (because trial had been continued due to the motion to preclude), and the court held that the closure of discovery weighed heavily against a continuance. 2011 WL 1239867, at *4.

9

this damages theory.  Second, although this factor favors Plaintiffs insofar as they will be precluded from seeking Bankruptcy Costs, *see* Mem. at 22 n.8, Plaintiffs admit that this constitutes a small percentage (less than 3%, *see id.*) of their total claimed damages.  Opp. at 21.

Third, the notion that Defendants will not suffer any prejudice if they are forced to re-do substantial aspects of fact discovery, as would be necessary to address Plaintiffs' new damages theory, is flatly incorrect.  *See* Mem. at 18-20; *supra* Section III.B.  Nor did Judge Cote somehow endorse Plaintiffs' conduct.  *See* Opp. at 21 (claiming Judge Cote found that "the relevant documents were made public during the bankruptcy process itself").  To be sure, Judge Cote did not rule that Plaintiffs could disclaim a damages category, only to later change their mind without ever producing the documents needed to evaluate that claim.

Finally, the fact that no trial date is set does not eliminate the need for a continuance.[9]  In fact, Defendants would need more than a continuance, which implies postponing existing deadlines to allow some action to occur in the interim.  The Court would instead have to reverse this case's progress by undoing its own rulings and those of Judge Cote, *see* Mem. at 22-23, and by reopening fact discovery long after it closed, a step the Court recently refused to take.[10]  *Id.*

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Preclude Plaintiffs' Request for "Costs and Fees Related to the Bankruptcy Process" should be granted.

---

[9] *Exo-Pro, Inc. v. Seirus Innovative Accessories, Inc.*, 2008 WL 4878513, at *3-4 (E.D.N.Y. Feb. 19, 2008), on which Plaintiffs rely, is inapposite.  There, the plaintiff failed to timely identify an expert, in violation of a scheduling order, which implicates Rule 16(f)(1)(C), not Rule 37(c)(1).  Because the defendant already had proffered its own expert on the pertinent subject, and could depose the one new expert without disrupting the trial schedule, however, the Court did not preclude his testimony.  Here, Defendants would need to re-do substantial aspects of fact discover to address Plaintiffs' new damages category.

[10] Plaintiffs' arguments regarding equitable estoppel duplicate their contentions regarding Rule 37(c)(1), which we have addressed at length.  As such, Defendants rely on the foregoing discussion and the arguments in their opening brief regarding that doctrine.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the 22nd day of June, 2011, in accordance with Fed. R. Civ. P. 5 and the General Order on Electronic Case Filing (ECF), the foregoing was served via the district court's ECF system on:

Jeffrey L. Liddle, Esq.
James R. Hubbard, Esq.
James Halter, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue, 8th Floor
New York, NY 10022
*Attorneys for Plaintiffs*

                                                   /s/Thomas Windom
                                                   Thomas Windom