UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RITCHIE RISK-LINKED STRATEGIES
TRADING (IRELAND), LIMITED, et al.,          :          09 Civ. 1086 (VM) (DF)

                 Plaintiffs,          :          **REPORT AND**
                                               **RECOMMENDATION**

    -against-          :

COVENTRY FIRST LLC, et al.,          :

                Defendants.          :
------------------------------------------------------------------X

**TO THE HONORABLE VICTOR MARRERO, U.S.D.J.:**

       In this action, referred to this Court for general pretrial supervision pursuant to 28 U.S.C.

§ 636(b), defendants Coventry First LLC, the Coventry Group, Inc., Montgomery Capital, Inc.

and LST I LLC (collectively, "Defendants") have moved under Rule 37 of the Federal Rules of

Civil Procedure and on the basis of equitable estoppel to preclude plaintiffs Ritchie Risk-Linked

Strategies Trading (Ireland), Ltd. and Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd.

(collectively, "Plaintiffs") from seeking, as damages, over $12 million in attorneys' fees and

costs that Plaintiffs have purportedly paid in connection with a bankruptcy proceeding.

Defendants argue that, without justification, Plaintiffs did not disclose this particular portion of

their claimed damages until nearly a year after the close of fact discovery, that various prior

statements and arguments made by Plaintiffs suggested that they were *not* seeking such

damages, and that Defendants would have engaged in substantial additional discovery, had

Plaintiffs' damages disclosure been timely made.  For the reasons discussed below, I recommend

that Defendants' sanctions motion (Dkt. 82) be denied to the extent Defendants seek the drastic

remedy of preclusion, but that a lesser sanction be imposed on Plaintiffs for their inexcusably

late disclosure.

## BACKGROUND

**A.     Plaintiffs' Damages Disclosures in *Ritchie I***

**1.     Damages Demands in Plaintiffs' Original Complaint**

This action is the second of two lawsuits commenced in this Court by Plaintiffs against Defendants, in connection with Plaintiffs' purchase of secondary-market life insurance policies from Defendants.  The first of those actions, *Ritchie Capital Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC), 2007 WL 2044656 (S.D.N.Y. July 17, 2007) ("*Ritchie I*"), was filed on May 2, 2007, and was assigned to the Honorable Denise L. Cote, U.S.D.J.

Plaintiffs alleged in *Ritchie I* that Defendants had expertise in purchasing life insurance policies in the secondary market; that Plaintiffs relied on that expertise by contributing financing for Defendants to purchase policies for Plaintiffs for a planned securitization transaction; but that Defendants then obtained policies for Plaintiffs through bid-rigging and fraud, leading to an investigation by the New York Attorney General's Office and a down-grading by Moody's of its rating of the policies, which in turn made it impossible for Plaintiffs to complete the securitization.  (*See Ritchie I* Dkt. 1 (Complaint, dated May 2, 2007 ("*Ritchie I* Compl.")), ¶¶ 7-52, 58-67; *Ritchie I* Dkt. 49 (Amended Complaint, dated Aug. 1, 2007 ("*Ritchie I* Amended Compl."), ¶¶ 42-67, 89-90.)  In *Ritchie I,* Plaintiffs initially asserted claims against Defendants and their principals, officers, and employees for violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), fraud, fraudulent inducement, breach of fiduciary duty, and breach of contract (based Plaintiffs' two purchase agreements with Defendants, dated September 8 and December 15, 2005).  (*See generally Ritchie I* Compl.)  On

2

each of their claims, Plaintiffs alleged that they suffered actual damages "in an amount believed to be not less than $700 million." (*See id.*, at ¶¶ 75, 81, 85, 90, 96, 101, 106.)[1]

### 2.   Disclosures Following Plaintiffs' Bankruptcy Filing

On June 20, 2007, shortly after *Ritchie I* was filed, and before fact discovery in the action had begun, Plaintiffs filed for bankruptcy. (*See* Memorandum of Law in Support of Motion to Preclude Plaintiffs' Request for "Costs and Fees Related to the Bankruptcy Process," dated June 7, 2011 ("Def. Mem.") (Dkt. 83), at 1 (citing Declaration of Kenneth J. Brown, Esq., dated June 7, 2011 ("Brown Decl.") (Dkt. 85), Ex. 3 (Bankruptcy docket of Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. ("Bankruptcy Docket")).)

### a.   Rule 26(a)(1) Disclosures

On or about July 5, 2007, roughly two weeks after the bankruptcy filing, Plaintiffs made initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure, including a disclosure regarding their claimed damages. At that time, Plaintiffs (collectively identifying themselves as "Ritchie Capital") described their damages as follows:

> Ritchie Capital has alleged that it suffered damages in an amount believed to be not less than approximately $700 million, based on, among other things, the amounts for which Plaintiffs purchased the insurance policies from Defendants, the accretion of the policies, the ongoing cost of servicing the policies, the premiums for the

---

[1] On July 17, 2007, Judge Cote issued an opinion dismissing all of Plaintiffs claims as pleaded, but granting Plaintiffs leave to re-plead their contract and RICO claims. *Ritchie I,* 2007 WL 2044656, at *10. On August 1, 2007, Plaintiff re-pleaded both of those claims (*see Ritchie I* Dkt. 49) and moved for reconsideration as to the dismissal of their other claims (*see Ritchie I* Dkt. 47). On February 29, 2008, Judge Cote denied reconsideration and dismissed the remaining RICO claims with prejudice, leaving only the breach-of-contract claim. *See Ritchie I*, 2008 WL 542596, at *1 n.1, 4, 6 (S.D.N.Y. Feb. 29, 2008). As with Plaintiffs' other claims, Plaintiffs independently sought "not less than $700 million" on their contract claim alone (*see Ritchie I* Compl., ¶ 105; *Ritchie I* Amended Compl., ¶ 111), so this winnowing down of their Complaint did not affect that figure.

> policies, lost opportunity costs relating to the inability to carry
> forward the planned securitization transaction, and reputation
> damages.  Ritchie Capital is entitled to treble damages pursuant to
> [RICO], compensatory damages, and punitive damages.  The
> documentation on which Ritchie Capital relied in reaching this
> initial estimate is described above, under 'Documents.'  Ritchie
> Capital will further refine its claim for damages as the litigation
> progresses.

(*Ritchie I* Dkt. 39 (Plaintiffs' Rule 26(a)(1) Initial Disclosures), at 4 (Section C)).)

Thus, despite their bankruptcy filing, Plaintiffs made no adjustment of the damages demand contained in their Complaint.  Moreover, in describing the components of their damages, Plaintiffs made no express mention of any anticipated bankruptcy fees or costs.  Similarly, the section of Plaintiffs' disclosure regarding "Documents," which identified categories of documents that Plaintiffs stated they might use to support their claims, did not refer to any anticipated bankruptcy-related fees or costs.  (*See id.*, at 3-4 (Section B).)  The closest listed category of documents was "[b]illing and payment records," but Plaintiffs specified that such documents included "records of premium and service fee payments for the policies" (*id.*, at 4), making no suggestion that the category was intended to cover records of bankruptcy fees or costs.

### b.   Responses to Document Requests

In November 2007, Plaintiffs produced responses to document requests served by Defendants.  (*See* Brown Decl., Ex. 5 (Plaintiffs' Responses to Coventry First LLC's First Set of Document Requests, dated Nov. 8, 2007).)  In response to Defendant's Document Request No. 47, calling for production of  "[a]ll communications and documents concerning [Plaintiffs'] contention that 'Plaintiffs have suffered damages in an amount believed to be not less than $700 million [on their contract claim], including all documents necessary to substantiate and to

calculate Plaintiffs' alleged damages," Plaintiffs asserted objections, but stated that, subject to and without waiving their objections, they would produce non-privileged, responsive documents (*id.*, at 21-22 (Response to Request No. 47)).  Apparently, however, Plaintiffs did not make any production of documents that post-dated their bankruptcy filing.

In fact, on March 11, 2008, Defendants wrote to the Court, seeking assistance in resolving a discovery dispute regarding Plaintiffs' unilateral decision to impose date restrictions on their entire document production.  (*See* Brown Decl., Ex. 6 (Letter to the Hon. Denise L. Cote, from Dane H. Butswinkas, Esq., dated Mar. 11, 2008).)  While Defendants did not specifically complain about Plaintiffs' failure to produce documents in response to Document Request No. 47 (*see id.*, at 1 (itemizing certain other document requests as being relevant to "important matters in this case")), Defendants generally took issue with the fact that, "[f]or the majority of Defendants' requests, Plaintiffs ha[d] refused to search for or produce documents and communications created after May 2, 2007 (the date this lawsuit was filed)" and, "[i]n all other instances in which they have agreed to produce documents, Plaintiffs ha[d] imposed a date restriction of June 20, 2001 (the date Plaintiffs filed for bankruptcy)" (*id.*).

For their part, Plaintiffs argued to the Court that the burden of producing post-bankruptcy-filing documents was outweighed by the relevance of such documents.  (*See* Brown Decl., Ex. 2 (Letter to the Hon. Denise L. Cote, from Thomas P. Puccio, Esq., dated Mar. 13, 2008 ("3/13/08 Puccio Ltr.")).)  After a telephonic conference with counsel, in which Judge Cote apparently accepted Plaintiffs' arguments, the Court denied Defendants' request to compel production of post-bankruptcy documents.  (*See* Declaration of Dane H. Butswinkas, Esq., dated May 23, 2011 ("Butswinkas Decl.") (Dkt. 84), ¶ 4.)

**B.**     **Plaintiff's Damages Disclosures in *Ritchie II***

On March 18, 2008, Plaintiffs voluntarily dismissed *Ritchie I*, without prejudice.  (*See Ritchie I* Dkt. 77.)  Meanwhile, the bankruptcy court continued to administer various aspects of the bankruptcy case.  (*See generally* Bankruptcy Docket.)  In January 2008, the policies purchased by Plaintiffs were sold at auction, under the supervision of the bankruptcy court (*see id.*, at 24, 31), and, ultimately, on February 4, 2009, the bankruptcy court closed the final adversary proceeding, which was the last substantive matter adjudicated in the bankruptcy (*see id.*, at 54).

On February 6, 2009, two days after the end of the bankruptcy proceedings, and nearly a year after the dismissal of *Ritchie I*, Plaintiffs returned to this Court, filing the instant action ("*Ritchie II*").  *Ritchie II*, like *Ritchie I*, was initially assigned to Judge Cote (*see* Dkt. 4), but was reassigned to Judge Marrero on April 9, 2010 (*see* Dkt. 46).

**1.**     **Damages Demand in Plaintiffs' New Complaint**

In their new action, Plaintiffs reasserted their contract claim against Defendants.  (*See* Complaint, dated Feb. 6, 2009 ("Compl.") (Dkt. 1).)  Specifically, in *Ritchie II,* Plaintiffs alleged that Defendants breached certain warranties and representations contained in the two policy purchase agreements.  (*See id.*, ¶ 12.)  This time, however, with respect to damages, Plaintiffs sought "not less than $400,000,000" (*id.*, ¶ 66), presumably because Plaintiffs had recouped some of their originally-claimed losses by selling the policies in the bankruptcy proceedings.  As to any breakdown of their damages, Plaintiffs demanded, in the "Wherefore" clause of their Complaint:

      (a)     All compensatory damages sustained by Plaintiffs;

      (b)     Attorneys' fees and costs;

(c)     Prejudgment and post-judgment interest; and

(d)     Such other relief as the Court may deem just and proper.

(*Id.*, at 22.)

### 2.     Plaintiffs' Reliance on Their Earlier Rule 26(a)(1) Disclosures

Given that *Ritchie II* relied on essentially the same factual allegations as Plaintiffs had

made in *Ritchie I*, the parties stipulated that the discovery exchanged in *Ritchie I* – including the

parties' Rule 26(a)(1) disclosures, written discovery requests and responses, deposition notices,

subpoenas, and document productions – would be operative in *Ritchie II*.  (*See* Rule 26(f) Report

of Parties, dated May 22, 2009 (Dkt. 26), ¶¶ 3, 33).)  Despite the parties' agreement in this

regard, Defendants twice asked Plaintiffs to confirm that their original Rule 26(a)(1) disclosures

remained "complete and accurate."  (Brown Decl., Ex. 7 (Letter from Rachel Rodman, Esq., to

James W. Halter, Esq., dated Jan. 28, 2010); *see also id.*, Ex. 8 (Email from Rachel Rodman,

Esq., to James W. Halter, Esq., dated Mar. 2, 2010)).)  According to Defendants, Plaintiffs never

responded to these inquiries (Def. Mem., at 7-8), and the record does not reflect that Plaintiffs

ever supplemented their Rule 26(a)(1) disclosures under Rule 26(e).

### 3.     Testimony of Plaintiffs' Rule 30(b)(6) Witness on Damages

In any event, fact discovery in *Ritchie II* then proceeded, for over a year.  During the

course of that discovery, Defendants served Plaintiffs with deposition notices under

Rule 30(b)(6) of the Federal Rules of Civil Procedure, seeking testimony from corporate

representatives on, *inter alia,* "[t]he basis, calculation, and amount of Plaintiffs' alleged damages

and any mitigation thereof, including lost profits, out-of-pocket expenses or losses, premium

payments, consequential damages, special damages, transaction costs, and/or opportunity costs."

(Brown Decl., Ex. 9 (topic no. 21), Ex. 10 (topic no. 21).)  Although Plaintiffs objected to this

7

topic, they agreed to designate a witness to testify regarding Plaintiffs' "out-of-pocket expenses and losses, premium payments, and transaction costs." (Brown Decl., Ex. 11, at 10-11; *id.*, Ex. 12, 10-11.)

On March 11 and 12, 2010, Plaintiffs' Rule 30(b)(6) witness, William Hobbs ("Hobbs"), gave deposition testimony. (*See* Brown Decl, Ex. 13.)  In response to a question asking for Plaintiffs' contention as to how Defendants' alleged breach of the purchase agreements "caused [Plaintiffs'] alleged harm," Hobbs described how, as a result of the alleged breaches of representations and warranties, Plaintiffs had purchased life insurance policies that they otherwise would not have bought; how Defendants' conduct led to Moody's withdrawal of its rating, which reduced the value of the policies portofolio; how Plaintiffs had "spent a lot of money preparing the securitization," which then could not go forward; and how the money spent by Plaintiffs "could not be recouped through a successful securitization."  (*Id.*, at 552-55.) Hobbs did not reference or describe any injury to Plaintiffs subsequent to the failed securitization transaction.

### 4.    Interrogatory Responses

On February 23, 2010, about a month before discovery was set to close, Defendants served Plaintiffs with a set of interrogatories, including the following:

> For each and every cause of action alleged against Defendants, explain in detail how each Plaintiff has been injured by the alleged wrongful conduct; state the amount of damage claimed by each Plaintiff; and explain how that damage amount was calculated, including but not limited to providing specific calculations identifying the total dollar amounts of damages allegedly owed to each Plaintiff.

(Brown Decl. Ex. 14 (Defendant Coventry First LLC's Second Set of Interrogatories), at 6

(Interrogatory No. 10).)  On March 25, 2010, Plaintiffs served responses, objecting on various

grounds to this interrogatory, but, notwithstanding their objections, stating:

> Plaintiffs do not possess the answer to Interrogatory No. 10 at this
> time.  Fact discovery is not closed as there are additional
> depositions to be taken.  Furthermore, expert reports have not yet
> been submitted . . . .  Since Plaintiffs' experts have not yet
> completed their review and analysis of the damages in this case,
> Plaintiffs cannot, at this time, provide an accurate damages
> calculation.  Plaintiffs will be seeking the following categories of
> damages:
>
> •    Compensatory damages;
> •    Expectation damages, including lost profits;
> •    Prejudgment and post-judgment interest; and
> •    Attorney's fees.

(Brown Decl., Ex. 15 (Plaintiff's Responses and Objection to Defendant's Second Set of

Interrogatories, dated Mar. 25, 2010), at 14.)  Again, Plaintiffs said nothing, in particular,

regarding any bankruptcy-related fees or costs.

### 5.    Amended Interrogatory Responses

Fact discovery finally closed in *Ritchie II* on May 5, 2010.  (*See* Dkts. 52, 53.)  Then, on

March 14, 2011, nearly a year after fact discovery had been completed, and more than two years

after the closing of the bankruptcy proceedings, Plaintiffs amended their response to Defendants'

interrogatory regarding damages.  (*See* Brown Decl., Ex. 1 (Plaintiff's Second Amended

Responses and Objections to Defendant's Second Set of Interrogatories, dated Mar. 14, 2010),

at 12.)  In their amended responses, Plaintiffs, for the first time, stated that their "compensatory

damages" included over $12 million (specifically, $12,718,973.00) that Plaintiff claimed to have

paid in "costs and fees related to the bankruptcy process."  (*Id.*)

### C.    Defendants' Motion To Preclude

In the motion now before the Court, Defendants complain that Plaintiffs not only failed to make this disclosure in a timely manner, but – to the contrary – made statements to both Defendants and the Court, at various points, that suggested Plaintiffs were *not* seeking such damages.  (*See* Def. Mem., at 1.)  According to Defendants, Plaintiffs' Rule 26(a)(1) disclosures, which were never supplemented despite Defendants' inquiries (*see id.*); Plaintiffs' responses to document requests, interrogatories, and deposition questions, which, as set forth above, never mentioned bankruptcy costs (*see id.*, at 5-11); and, finally, Plaintiffs' insistence to the Court that they should not be compelled to produce documents generated after the date of the bankruptcy filing all led Defendants to believe that bankruptcy costs were not being claimed (*see id.*).  This, in turn, Defendants argue, led them to forego discovery necessary to contest what is now being raised as a $12-plus million claim.  (*see id.*, at 15-16.)  Defendants argue that, under the circumstances, Plaintiffs should be sanctioned under Rule 37 of the Federal Rules of Civil Procedure for their untimely disclosure, and further argue that the appropriate discovery sanction in this instance is preclusion.  (*See id.*, at 11-23; *see also* Reply In Support of Motion to Preclude Plaintiffs' Request for "Costs and Fees Related to the Bankruptcy Process," dated June 22, 2011 ("Def. Reply"), at 5-10.)  Alternatively, Defendants seek preclusion of the bankruptcy-related portion of Plaintiffs' damages claim based the doctrine of equitable estoppel.  (*See* Def. Mem., at 23-25.)

Plaintiffs counter that they complied with Rule 26(a) and (e) by communicating their intention to seek "compensatory damages," which, in their view, is a category broad enough to encompass their bankruptcy fees and costs.  (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Preclude Plaintiffs' Request for "Costs and Fees Related to the

Bankruptcy Process," dated June 17, 2011 ("Pl. Mem."), at 12-14.)  Plaintiffs further contend

that "[t]hey had no reason to believe that there could be any confusion regarding the proper

measure of damages" (*id.*, at 15), as "[t]he costs and fees of the bankruptcy process are part of a

standard general damages analysis to compensate Plaintiffs for Defendants' breach and put

[Plaintiffs] in the same economic position had Defendants not breached" (*id.*, at 16).  If

Defendants had any "misunderstanding" as to the scope of Plaintiffs' claimed compensatory

damages, Plaintiffs assert that they were unaware of this, and further assert that, in any event, the

lack of an expert damages analysis prevented them from making more specific damages

disclosures.  (*See id.*, at 15-16.)  Moreover, Plaintiffs argue that Defendants have suffered no

harm as a result of the late disclosure because they in fact conducted extensive discovery

regarding the bankruptcy proceedings, and because they will still have ample opportunity to

address damages issues during expert discovery.  (*See id.*, at 15-19.)

## DISCUSSION

## I.   DISCOVERY SANCTIONS

In their motion, Defendants primarily argue that Plaintiffs should be sanctioned under

Rule 37 of the Federal Rules of Civil Procedure, for failing to provide an adequate, timely

disclosure of their damages claim.  (*See generally* Def. Mem.; Def. Reply.)

### A.   Applicable Legal Standards

#### 1.   Rule 26(a)

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, each party must

provide to the other parties "a copy – or description by category and location – of all

documents, electrically stored information, and tangible things that the disclosing party . . .

may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  "A party is not

excused from making its disclosures because it has not fully investigated the case."

Fed. R. Civ. P. 26(a)(1)(E).  In addition, pursuant to Rule 26(a)(1)(A)(iii), a party seeking

damages must automatically "provide to the other parties . . . a computation of each category of

damages claimed by the disclosing party" and must "make available for inspection and copying

as under Rule 34 the documents or other evidentiary material . . . on which each computation is

based," Fed. R. Civ. P. 26(a)(1)(A)(iii).

### 2.    Rule 26(e)

Rule 26(e) provides:  "A party who has made a disclosure under Rule 26(a) – or who has

responded to an interrogatory, request for production, or request for admission – must

supplement or correct its disclosure or response:  . . . in a timely manner if the party learns that in

some material respect the disclosure or response is incomplete or incorrect, and if the additional

or corrective information has not otherwise been made known to the other parties during the

discovery process or in writing."  Fed. R. Civ. P. 26(e).

The duty to supplement "applies whether the corrective information is learned by the

client or by the attorney."  Fed. R. Civ. P. 26(e) advisory committee's note (1993 Amendment).

Moreover, "the federal discovery rules place a duty on a party to turn over not only proper

materials of which he is aware, but also those of which he reasonably *ought* to have been aware,"

*Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (emphasis in

original) (imposing sanctions where plaintiff's counsel ought to have been aware that additional

medical records had become available).

12

### 3.    Rule 37(c)

In order to ensure parties' compliance with the mandatory disclosure requirements of Rule 26, Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that:  "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The Rule further provides, however, that:

> [i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)    may inform the jury of the party's failure; and
>
> (C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

*Id.*  In turn, Rule 37(b)(2)(A)(i)-(vi) lists a range of available sanctions, ranging from directing that certain facts be taken as established, to rendering a default judgment against a party.

The purpose of Rule 37(c) is to prevent the practice of "sandbagging" an adversary with new evidence.  *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004); *Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 77 F. Supp. 2d 446, 458-59 (S.D.N.Y. 1999).  Yet despite the seeming "self-executing" nature of the preclusion sanction contained in the Rule, *see* Fed. R. Civ. P. 37(c) advisory committee's note (1993 Amendment), imposition of the preclusion sanction remains within the trial court's discretion.  Indeed, "the plain text" of the rule provides that, after affording the dilatory party an opportunity to be heard, the Court has the

discretion to impose less severe sanctions.  *See Design Strategy, Inc. v. Davis,* 469 F.3d 284, 298 (2d Cir. 2006).

Courts, in fact, have "broad discretion" to determine the nature of any sanction that should be imposed under Rule 37, "based on all the facts of the case." *AAIpharma Inc. v. Kremers Urban Dev. Co.*, No. 02 Civ. 9628 (BSJ) (RLE), 2006 U.S. Dist. LEXIS 79815, at *13 (S.D.N.Y. Oct. 31, 2006) (quoting *Dimensional Sound, Inc. v. Rutgers Univ.*, No. 92 Civ. 2350 (DLC), 1996 U.S. Dist. LEXIS 188, at *10 (S.D.N.Y. Jan. 10, 1996)); *see also Schiller v. City of New York*, No. 04 Civ. 7922 (RJS) (JCF), 2008 U.S. Dist. LEXIS 79620, at *12 (S.D.N.Y. Oct. 9, 2008); *Design Strategy*, 469 F.3d at 294; *Johnson Electric,* 77 F. Supp. 2d at 458. Further, as preclusion of evidence is a "harsh remedy," it "should be imposed only in rare situations." *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)); *see also, e.g.*, *Conte v. Newsday, Inc.*, No. CV 06–4859, 2011 WL 2671216, at *1 (E.D.N.Y. July 7, 2011) (noting that "courts in this Circuit have recognized that preclusion is a 'harsh sanction'"); *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007) (noting that preclusion is "disfavored"); *Ebewo*, 309 F. Supp. 2d at 607 ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution.").

"Before [granting] the extreme sanction of preclusion," the Court "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. New York*, 837 F.2d 587, 591 (2d Cir. 1988); *see also Webb v. Buchanan Marine*, No. 99 Civ. 3573 (DLC), 2000 U.S. Dist. LEXIS 4148, at *6-7 (S.D.N.Y. Mar. 31, 2000).  In determining whether preclusion or another sanction would be appropriate, courts

should consider:  "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc*., 118 F.3d 955, 961 (2d Cir.1997).  While a showing of "bad faith" is not required for preclusion to be ordered under Rule 37(c), a party's bad faith "can be taken into account" by the Court in considering the party's explanation for its failure to satisfy its discovery obligations.  *Design Strategy*, 469 F.3d at 296.  In determining whether a party's "bad faith" in discovery should dictate a severe sanction, the Court should view the party's conduct in the case as a whole.  *See, e.g.*, *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) (upholding preclusion of evidence sanction because conduct of defendant's counsel at deposition, combined with defendant's repeated refusal to produce demanded documents "evince[d] a willful frustration" of discovery); *Ashkinazi v. Sapir*, No. 02 Civ. 00002 (RCC) (MHD), 2005 U.S. Dist. LEXIS 6900, at *17 (S.D.N.Y. Apr. 20, 2005) (finding willfulness where defendant had "attempted to impede discovery . . . for much of the unusually protracted discovery period").

Even where preclusion is not ordered under Rule 37, it is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions.  *See Izzo*, 235 F.R.D. at 188 (noting that the Second Circuit has characterized the imposition of reasonable expenses, including attorney's fees, on the disobedient party as "'the mildest' of the sanctions authorized by Rule 37") (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).  In addition, where excusing a party's dilatory conduct would have the effect of causing

another party to incur additional costs that it would not have otherwise incurred, it may be appropriate for the court to shift those costs to the party at fault.  *See Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 CIV. 4837 (HB), 2006 U.S. Dist. LEXIS 32211, at *28-29 (S.D.N.Y. May 23, 2006) (ordering dilatory party to pay costs of sanctions motion and $10,000 for each re-deposition) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 437 (S.D.N.Y. 2004) (ordering defendant to "pay the costs of any depositions or re-depositions required by the late production").

"Monetary sanctions are appropriate 'to punish the offending party for its actions [and] to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated.'" *Green v. McClendon*, No. 08 Civ. 8496 (JGK) (JCF), 2009 U.S. Dist. LEXIS 71860, at *23 (S.D.N.Y. Aug. 13, 2009) (alteration in original) (citing *In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 201 (S.D.N.Y. 2007).  Such sanctions may be imposed on a party, its counsel, or both.  *See Phoenix Four*, 2006 U.S. Dist. LEXIS 32211, at *28-29 (imposing Rule 37(c)(1) sanctions on both counsel and party).[2]

---

[2] Although Defendants do not cite the sanctions provision of Rule 26 itself (*i.e.*, Rule 26(g)), it is also worth noting the obligation that this provision imposes on counsel.  Rule 26(g) states that "every disclosure under Rule 26(a)(1) or (a)(3) and every discovery . . . response . . . must be signed by at least one attorney of record in the attorney's own name" and that "[b]y signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . [the disclosure] is complete and correct as of the time it is made."  Fed. R. Civ. P. 26(g).  It further provides that, "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  Fed. R. Civ. P. 26(g)(3).  The sanction for this violation "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  *Id.*

### B.    Appropriateness of a Discovery Sanction in This Case

#### 1.    Plaintiffs' Violations of Rule 26(a) and (e)

Defendants argue that Rule 37(c)(1) sanctions are required in this case, as, in their view, "Plaintiffs unquestionably have failed to fulfill their obligations under Rule 26(a) and (e) with respect to their claimed bankruptcy fees and costs." (Def. Mem., at 12.)  Essentially, Defendants argue that Plaintiffs failed to satisfy the Rule 26(a) requirement to "provide to the other parties . . . a computation of each category of damages claimed by the disclosing party," Fed. R. Civ. P. 26(a)(1)(A)(iii), failed to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based," *id.*, and failed to supplement their Rule 26(a)(1) damages disclosure on a timely basis, *see* Fed. R. Civ. P. 26(e).  Defendants further argue that Plaintiffs not only failed to make required disclosures, but, by answering discovery requests and deposition questions as they did, misled both Defendants and the Court as to the potential relevance of discovery regarding the bankruptcy proceedings.  (*See* Def. Mem., at 1, 5-11.)

This Court agrees that Plaintiffs' Rule 26(a)(1)(A)(iii) damages computation was inadequate, as were Plaintiffs' other disclosures regarding damages, made over the course of fact discovery in *Ritchie I* and *Ritchie II*.  Although the $12-plus million that Plaintiffs now claim as bankruptcy-related damages may seem but a drop in the bucket compared to Plaintiffs' overall claimed damages (which purportedly measure in the hundreds of millions of dollars), $12 million is still inherently a large sum, as Plaintiffs themselves concede (*see* Pl. Mem., at 21), and Plaintiffs should have made it clear to Defendants that such damages were being sought. Plaintiffs did not do so in their Rule 26(a)(1) disclosures, or in their responses to Defendants'

document requests and interrogatories, or in the deposition testimony of their Rule 30(b)(6) witness.

The Court also agrees with Defendants that, if Plaintiffs were claiming millions of dollars in damages as a result of the bankruptcy proceedings, then they should have *not* have argued to the Court that virtually all documents generated after the bankruptcy filing were irrelevant to these proceedings, or that the relevance of almost all documents related to the bankruptcy was so slight that it was plainly outweighed by the burden of production.  To the contrary, documents regarding Plaintiffs' costs in the bankruptcy – *and* any offsetting benefits to Plaintiffs that derived from that proceeding – would all have been highly relevant to Plaintiffs' damages claim (*see* Def. Mem., at 17-18 (citing cases)), and unquestionably should have been subject to production.  Quite apart from whether Plaintiffs' argument in opposition to Defendants' application to compel served to mislead to the Court, it assuredly cemented Defendants' understanding that Plaintiffs were not making any affirmative claim for damages based on the bankruptcy proceedings.

Overall, this Court finds that Plaintiffs did not comply with the requirements of Rule 26(a) and (e) to make a materially complete damages disclosure, and that their argument to the Court regarding the relevance of documents generated after the bankruptcy filing only made it appear more likely that Plaintiffs were not making the type of damages claim that they are now pressing.

### 2.    Plaintiffs' Arguments Regarding "Justification" and "Harmlessness"

Even where there is violation of Rule 26(a) or (e), courts may not impose sanctions under Rule 37(c)(1) where a party's failure to comply was "substantially justified" or where the

conduct was "harmless." *See* Fed. R. Civ. P. 37(c)(1). "Substantial justification" may be demonstrated where "there is 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request,' or 'if there exists a genuine dispute concerning compliance.'" *AIG Global Asset Management Holdings v. Branch, et al.*, No. 04Civ.8803 (RMB) (THK), 2005 WL 425494, at*1 (S.D.N.Y. Feb. 18, 2005) (quoting *Jockey Int'l, Inc. v. M/V "Leverkusen Express"*, 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002)). "Harmless[ness]" means an absence of prejudice to the defendant. *See Williams v. County of Orange*, No. 03 CIV 5182(LMS), 2005 WL 6001507, at *3 (S.D.N.Y. Dec.13, 2005). The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified, *see American Stock Exchange*, 215 F.R.D. at 93, and that it was harmless, *see Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 635 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284.

As to whether their dilatory conduct was "substantially justified," Plaintiffs primarily argue, as noted above, that their disclosures during the fact-discovery period were sufficient because they "consistently indicated" that Plaintiffs were seeking "compensatory" damages, which should have signaled Plaintiffs' intent to seek bankruptcy fees and costs. (Pl. Mem., at 12.) By seeking to justify their Rule 26(a) disclosures in this way, however, Plaintiffs make an argument that cannot square with the language or purpose of Rule 26(a)(1). This particular rule does not merely require a plaintiff to describe its damages in general terms, such as "compensatory," but – as best as the party is able at an early stage in the case – to provide a "computation" of each category of damages, and to produce the documents on which that computation is based. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *Haber v. ASN 50th Street, LLC*,

19

272 F.R.D. 377, 380 (S.D.N.Y. 2011) (holding that Rule 26(a)(1)(A)(iii) entitled defendants to "discovery regarding Plaintiff's claim for $6 million in damages and his calculation of this amount" and directing Plaintiff to "itemiz[e] each category of damages alleged in the amended complaint" and "produc[e] responsive documents" regarding such damages).  Even if, during the course of *Ritchie I,* Plaintiffs could not initially calculate all of the attorneys' fees and other expenses it would eventually incur in the bankruptcy proceedings, those proceedings were complete by the time Plaintiffs returned to this Court to file *Ritchie II,* and the amounts of those fees and costs were certainly subject to reasonable "computation" prior to the close of fact discovery, a year after that.  Plaintiffs have offered no plausible explanation as to why it could not even produce a summary of its attorneys' bills, or of its bankruptcy costs, prior to the close of fact discovery, or why it took yet *another* year to supplement an interrogatory response so as merely to mention this $12-plus million damages item.[3]

Plaintiffs' additional argument to justify the meager nature of its damages disclosures – that it was premature to make such disclosures without the benefit of expert discovery – is also unpersuasive, as most, if not all, of Plaintiffs' claimed damages relating to the bankruptcy could have been readily calculated without special expertise.  For example, if attorneys' fees in the bankruptcy were being claimed, Plaintiffs could have simply provided the total amount spent on such fees, which would have been available from the attorneys' bills.  As Plaintiffs did not commence *Ritchie II* until after the completion of the bankruptcy proceedings, those bills would

---

[3] The Court also notes that including language like "among other things" in a damages computation, or indicating that a claim for damages will be "further refine[d] . . . as the litigation progresses" (*see Ritchie I* Dkt. 39 (Plaintiffs' Rule 26(a)(1) Initial Disclosure), at 4), while often appropriate and even necessary at an early stage of a case, cannot indefinitely insulate either a party or its counsel from Rule 37 sanctions, where no timely supplementation is then made.

presumably have been in Plaintiffs' possession at the start of the re-filed action.  Moreover, even

if Plaintiffs could not provide an exact or complete calculation of their damages without an

expert analysis, Plaintiffs offer no compelling justification for their failure to notify Defendants

of their theory that compensatory damages encompassed bankruptcy fees and costs.  *See*

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.*, No. 04 Civ. 3854

(RCC) (AJP), 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) ("And even if plaintiff could not

calculate its currency conversion damages at the time of its initial disclosure (which the Court

doubts, since the Euros' value as against the dollar is published in the New York Times, among

other sources), there is no reason that it did not disclose its currency conversion damage

theory."); *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No.

08–CV–2540 (DLI)(JMA), 2011 WL 1239867, at *3 (E.D.N.Y. Mar. 30, 2011) (holding that

Rule 26(a)(1)(A) (iii) required dilatory party to disclose category of damages "even if a definite

figure was not available").

   Plaintiffs also have not satisfied their burden of demonstrating that their failure to make

timely disclosure was "harmless," within the meaning of Rule 37(c)(1).  On this point, Plaintiffs

argue that their provision of a supplemental interrogatory response prior to expert discovery has

provided Defendants with more than sufficient time to address Plaintiffs' entire damages theory

and calculation.  (*See* Pl. Mem., at 18-20.)  Plaintiffs note that no trial date has yet been set (*id.*,

at 18), that Defendants will have "ample opportunity" to review the report of Plaintiffs' damages

expert and to depose that expert (*id.*, at 20), and that Defendants will thus be fully able to prepare

for trial (*see id.*, at 18-20).  None of these arguments, though, address the fact that the *fact-*

*discovery* period had closed nearly a year prior to Plaintiffs' supplemental disclosure, and that

Defendants undoubtedly would have pressed for additional documents and asked additional deposition questions of fact witnesses, had this disclosure been made prior to the depositions. It is no answer to say that Defendants can simply address the damages at issue now, by deposing Plaintiffs' damages expert.  By making their damages disclosure after the close of fact discovery, Plaintiffs effectively deprived Defendants of the tools necessary to challenge the underlying assumptions of Plaintiffs' expert – *i.e.,* the documents or and deposition testimony that would speak to the factual matters being evaluated by the expert.  *See Serin v. Northern Leasing Systems, Inc.*, No. 7:06–CV–1625, 2010 WL 6501664, at *1 (S.D.N.Y. Oct. 26, 2010) (rejecting argument that "Plaintiffs . . . complied with the requirements of Rule 26(a)(1)(A)(iii) by providing the expert report of . . . Plaintiffs' damages expert" because "[a]lthough in this instance both [the expert and Rule 26(a)(1)(A)(iii) disclosures] . . . are addressing the same subject matter, the[se two] disclosures are not necessarily identical and disclosure of one will not excuse non-disclosure of the other").

Plaintiffs also suggest that Defendants, in fact, engaged in the fact discovery necessary for them to evaluate Plaintiffs' damages claim.  (*See* Pl. Mem., at 19-20 (stating that,"despite [Defendants'] purported reliance on alleged representations that actions after Plaintiffs filed for bankruptcy were irrelevant, Defendants engaged in substantial fact discovery regarding the bankruptcy process").)  Yet even assuming that Defendants did conduct fact discovery regarding certain aspects of the bankruptcy proceedings, Plaintiffs have not been able to point to any documents or testimony obtained by Defendants through that discovery that directly relate to Plaintiffs' claimed attorneys' fees or bankruptcy costs.   Nor have Plaintiffs been able to

demonstrate that, through discovery, Defendants explored the various types of offsetting benefits that Plaintiffs received from the bankruptcy.  As Defendants argue:

> [A]ny award of bankruptcy fees and costs would be offset by savings resulting from the bankruptcy process.  . . .  As only a few of the many possible examples of such potential offsets, Plaintiffs may well have benefitted from their bankruptcy filing because they were able to obtain medical underwriting information which they had not purchased from LST or Coventry First, for a fraction of its value as a result of pressure created by the bankruptcy process. . . . And, separately, the value of the Policies may have increased as their underwriting was updated based on this information. . . . Plaintiffs also were able to strip various contractual limitations on the Policies' resale, which likely enabled Plaintiffs to market the Policies to a broader universe of buyers. . . .  Plaintiffs also were able to strip Coventry First's servicing rights in the bankruptcy, which saved them significant costs associated therewith, and likely allowed them to sell the Policies for more than they otherwise could have. . . .  Defendants have not taken meaningful discovery on any of these issues.

(Def. Mem., at 17-18 (citations omitted).)  While some of these potential savings may have been reflected in the policies' ultimate sale prices, which Plaintiffs have apparently disclosed, the record before the Court bears no indication that Defendants had the opportunity to explore any cost savings that were separately realized by Plaintiffs, as a result of the bankruptcy.  *See Rienzi*, 2011 WL 1239867, at \*3 (noting that, even where a party has produced documents that it believes are necessary to support its claim, the opposing party "is entitled to investigate the claim in order to defend itself").

While a party may – and, indeed, has an affirmative obligation to – supplement fact disclosures that are discovered to be incomplete, such supplementation must be made "in an timely manner," Fed. R. Civ. P. 26(e), so as to avoid prejudicing adverse parties.  Making a supplemental disclosure nearly a year after the close of fact discovery is not "timely," by any

definition.  *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 80-81 (W.D.N.Y. 2011) ("As the court has determined these documents were subject to Plaintiff's duty to supplement as information material to the accuracy or completeness of Defendants' responses to Plaintiff's Document Requests, but not produced for six months after their creation, the documents were not provided in a 'timely manner,' as required by Rule 26(e)(1)(A), and Defendants were not otherwise made aware of the information represented by the documents, Plaintiff is subject to sanctions pursuant to Fed. R. Civ. P. 37(c).").  Given the extent of the fact discovery that Defendants were led to forego, with respect to both Plaintiffs' damages claim and potential defenses to that claim, Plaintiffs cannot demonstrate that there is "an absence of prejudice" stemming their failure to comply with Rule 26.  *See Williams*, 2005 WL 6001507, at *3.

### 3.     Appropriateness of Preclusion Sanction

Despite Plaintiffs' failure to comply with the discovery rules, and the resulting prejudice to Defendants, this Court is cognizant of the fact that preclusion is a harsh sanction, and of the importance of imposing such a sanction sparingly.  In this case, certain factors weigh in favor of preclusion, but others do not, which serves as a caution that such an extreme sanction may not be warranted.

Weighing in favor of preclusion is Plaintiffs' anemic explanation for their failure to make or supplement their Rule 26(a)(1)(A)(iii) disclosure within the fact discovery period, rather than nearly a year later.  While the Court has no basis to find that Plaintiffs acted in bad faith by withholding information from Defendants (and, indeed, the most plausible explanation for Plaintiffs' late disclosure may be that it was an afterthought), Plaintiffs should not be permitted

to gain an advantage from their late disclosure, in the absence of a compelling justification for their delay.  In this particular case, Plaintiffs' lack of an adequate excuse for their failure to comply with the discovery rules is magnified by the argument they advanced to Judge Cote, seeking – successfully – to limit almost all of their document production to the period post-dating the bankruptcy filing.  (*See* 3/13/08 Puccio Ltr.; Butwinkas Decl., ¶ 4.)  Even if, once again, there is no basis to find that Plaintiffs advanced their argument to Judge Cote in bad faith, that argument had the foreseeable effect of shutting the door on relevant party discovery, and, arguably, Plaintiffs should not be allowed to pursue a damages claim that is at odds with a discovery ruling they secured based on a lack of full disclosure.

Also weighing in favor of preclusion is the fact that, as described above, Defendants suffered substantial prejudice from proceeding through all of fact discovery without a full understanding of Plaintiffs' damages claim, and from entering into the expert phase of discovery without having had the opportunity to explore the factual bases of that claim.  The dollar amount of Plaintiffs' claimed bankruptcy fees and costs is high, and the fact that Defendants were effectively blocked by Plaintiffs from obtaining documents relevant to those fees and costs, as well as any offsetting gains, should not inure to Plaintiffs' benefit.

On the other hand, the fact that the stakes are high in this case arguably weighs against preclusion, as precluding Plaintiffs from pursuing $12-plus million in damages would seem a particularly severe result.  The high-stakes nature of this case and the complexity of the issues to be tried also make it especially appropriate for the Court to consider the option of granting a reasonable continuance, so as to allow Defendants the opportunity to develop the full factual record that will be needed for summary judgment motions or trial.

With no trial date yet set, this Court sees no reason why a continuance would not be feasible here. *See Schiller v. City of New York*, Nos. 04 Civ. 7922(RJS)(JCF), 04 Civ. 7921(RJS)(JCF), 2008 WL 4525341, *7 (S.D.N.Y. Oct. 09, 2008) (noting that "[c]urrently, no date is scheduled for a summary judgment motion or for trial, so a continuance is certainly possible"). Further, the Court would have the authority to shift certain discovery costs to Plaintiffs, so as to avoid burdening Defendants with costs they would not have incurred, but for Plaintiffs' non-compliance with the discovery rules. As to the length or scope of reopened fact discovery that would be appropriate, this Court finds that Plaintiffs' suggestion – of "an additional two hours of deposition by a Rule 30(b)(6) witness on behalf of Plaintiffs, limited to the topic of damages and mitigation from the bankruptcy process" (Pl. Mem., at 22) – would ignore the realities of Defendants' potential defenses to the damages claim, and would be wholly insufficient. While, for their part, Defendants' recitation of the types of additional fact discovery it would need (*see* Def. Mem., at 18-19) seems somewhat excessive, this Court is persuaded that, in the interest of fairness, some number of weeks or months would be needed, not hours.

It would also be appropriate here for Plaintiffs to be required to pay Defendants the reasonable attorneys' fees and costs they incurred in bringing this motion, as well as certain costs associated with the additional discovery. *See* Fed. R. Civ. P. 37(c)(1)(A); *Tse v. UBS Financial Services, Inc.*, 568 F. Supp. 2d 274, 321-22 (S.D.N.Y. 2008) (awarding fees and costs incurred in connection with the sanctions motion, and also noting that "[c]ourts in this circuit have often awarded attorney's fees to sanction a party who disregards [its] discovery obligations") (collecting cases); *Zubulake*, 229 F.R.D. at 439 (imposing Rule 37 sanctions including fees and costs associated with making motion); *Fleming v. City of New York*, 01 Civ.

8885 (CM) (RLE), 2007 U.S. Dist. LEXIS 90114 , at *10-11 (S.D.N.Y. Dec. 5, 2007) (imposing attorney's fees for defendants' failure to make timely production of documents needed by plaintiff's expert to aid in his review).

Under the circumstances, I recommend that the Court:

(1)     Order Plaintiffs to produce to Defendants all documents relating to the attorneys fees and costs incurred by Plaintiffs in the bankruptcy proceedings, without temporal limitation;

(2)     Direct the parties to confer in good faith regarding the additional fact discovery (including both party and non-party discovery) that Defendants would reasonably require, in order to be able to respond adequately to Plaintiffs' damages demand for bankruptcy fees and costs, and jointly to propose to the Court a schedule – not to exceed 120 days – for the completion of this additional fact discovery;

(3)     Order Plaintiffs to pay the reasonable attorneys' fees and costs – not to exceed the fees and costs for four hours of deposition time, per witness – associated with reopening the depositions of any fact witnesses who were already deposed by Defendants, and from whom Defendants now wish to obtain testimony regarding fees, costs, and/or financial benefits to Plaintiffs resulting from the bankruptcy proceedings; and

(4)     Order Plaintiffs to pay the reasonable attorneys' fees and costs incurred by Defendants in making the sanctions motion.

If the parties cannot agree on a reasonable schedule to complete the additional discovery, or if they cannot agree on the scope of the additional fact discovery (and any additional expert discovery that it may occasion), then I further recommend that the parties be directed to set forth their particular disputes for this Court to review and resolve.[4]

---

[4] While any prior limit on the number of depositions taken by Defendants should be lifted in order to give meaning to this recommendation, this should not be viewed as an invitation for Defendants to notice an unreasonable number of additional depositions.

II.    **EQUITABLE ESTOPPEL**

As an alternative to Rule 37, Defendants also argue that the doctrine of equitable estoppel would justify preclusion in this case.  (*See* Def. Mem., at 23-24.)

A.    **Applicable Legal Standards**

"Equitable estoppel" can form the basis of a claim, or it can serve as a defense.  *See, e.g.*, *Halifax Fund, L.P. v. MRV Communications, Inc.*,  No. 00 CIV 4878 HB, 2001 WL 1622261, at *3 (S.D.N.Y. Dec. 18, 2001) (finding for plaintiff on affirmative equitable estoppel claim); *Gen. Elec. Capital Corp. v. Eva Armadora*, *S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (defendant estopped by its conduct from challenging plaintiff's view of contract provision); *One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 386 F. Supp. 2d 394, 401 (S.D.N.Y. 2005) (where carrier renews insurance policy and accepts premiums, it may be estopped from claiming that policy was void from inception).  As illustrated by the cases cited by Defendants, the doctrine has been invoked, for example, to estop a defendant from raising an affirmative defense of lack of administrative exhaustion, *see Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 447 (2d Cir. 2006) (cited in Def. Mem., at 23); to estop an employer from challenging an employee's eligibility for statutory protection, *see Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706, 724-27 (2d Cir. 2001) (cited in Def. Mem., at 23); and to estop a comic book artist from claiming that a publisher had violated his rights in characters he created, *see DeCarlo v. Archie Comic Publications, Inc.,* 127 F. Supp. 2d 497, 509-10 (S.D.N.Y. 2001) (cited in Def. Mem., at 24).

To establish the defense of equitable estoppel under New York law,[5] a party must show, by clear and convincing evidence, that  "(1) an act constituting a concealment of facts or a false misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; [and] (4) reliance upon the misrepresentations which causes the innocent part to change its position to its substantial detriment."  *Gen. Elec.*, 37 F.3d at 45; *Halifax Fund, L.P. v. MRV Communications, Inc.*,  No. 00 CIV 4878 HB, 2001 WL 1622261, at *3 (S.D.N.Y. Dec. 18, 2001) (outlining same four factors for equitable estoppel under New York law).  The misrepresentation "need not be intentional." *MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06 Civ. 4412 (THK), 2007 WL 2325867, at *16 n.17 (S.D.N.Y. Aug. 13, 2007) (applying New York equitable estoppel standard).  Rather, "[i]t is sufficient that the party being estopped knew or had reason to believe that their acts or inaction might prejudice the party asserting the estoppel."  *Id.* (citing *Sterling v. Interlake Indus., Inc.*, 154 F.R.D. 579, 585 (E.D.N.Y. 1994) (applying New York law (internal quotation marks omitted)).  Accordingly, even "[a]n innocent misleading of another party may estop one from claiming the benefits of his or her deception."  *One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 386 F. Supp. 2d 394, 401 (S.D.N.Y. 2005) (quoting *State Farm Ins. Co. v. Lofstad*, 278 A.D.2d 224, 225 (2d Dep't 2000)).

---

[5] Citing to *Kosakow*, 274 F.3d at 725, the parties invoke the federal standard for equitable estoppel.  (*See* Def. Mem., at 23-24; Pl. Mem., at 22-23.)  In *Kosakow,* however, the Second Circuit employed the federal standard because the claims in that case were brought under federal statutes.  *Kosakow*, 274 F.3d at 725 ("Because this is an equitable estoppel claim under a federal statute, federal law principles of equitable estoppel are applicable.").  In this case, Plaintiffs only assert state-law contract claims.  (*See* Compl., at ¶¶ 58-67.)  The New York standard for equitable estoppel, therefore, applies here.  *See Gen. Elec.*, 37 F.3d at 45 (applying New York standard for equitable estoppel in breach-of-contract action).

**B.**     **Application of Doctrine to This Case**

While, as discussed above, equitable estoppel may be invoked as a claim or as an affirmative defense, Defendants have offered no support for the application of this doctrine in the discovery context, where the imposition of sanctions for discovery failures is governed by well-established rules and case law.  Nor would the doctrine easily fit the facts presented here, which lend themselves more readily to analysis under Rule 37.

As a threshold matter, it is difficult to conclude that Defendants have shown, by clear and convincing evidence, that – either through Rule 26(a)(1) or other disclosures – Plaintiffs made an affirmative misrepresentation regarding the scope of their claimed damages or engaged in an act of "concealment."  It is more fair to say that Defendants have shown that Plaintiffs' initial disclosures were far too cursory, that the necessary damages computation was not included, and that Plaintiffs failed to supplement that disclosure in a timely manner, as the rules required.

Similarly, it is difficult to characterize Plaintiffs' arguments to Judge Cote regarding the appropriate scope of discovery as a misrepresentation or act of concealment, so as to make those arguments fit within the framework of the equitable estoppel doctrine.  Although this Court is not aware of the precise statements made in the parties' conference before Judge Cote, this Court has reviewed Plaintiffs' past correspondence to Judge Cote, in which Plaintiffs principally argued that the burden of producing post-filing documents "regarding the policies at issue" outweighed those documents' relevance.  (*See* 3/13/08 Puccio Ltr., at 1.)  Plaintiffs also argued that it would be particularly inappropriate to impose on Plaintiffs a substantial burden of production when the bankruptcy proceedings were the subject of a "voluminous public record." (*See id.*)  Although "[s]ilence in the face of an explicit contrary assumption by an innocent party

30

may constitute a concealment of facts or a false misrepresentation for estoppel purposes," *Gen. Elec.*, 37 F.3d at 45, Defendants, in this instance, never made an explicit request to compel documents regarding Plaintiffs' bankruptcy fees or costs, and Plaintiffs did not focus their arguments on such a request.  Thus, as troubling as Plaintiffs arguments to the Court may have been, and as much as they may have had the effect of obscuring the scope of Plaintiffs' damages claim, this Court cannot find, on this record, that Defendants have satisfied their heightened burden of demonstrating that those arguments meet the standard necessary to warrant estoppel.

In addition, although this Court has already found that Defendants were prejudiced by Plaintiffs' failure to make an adequate damages disclosure in a timely fashion, it would strain the estoppel doctrine to characterize Defendants as having changed their position, to their detriment, in reliance on Plaintiffs' omission.  A more apt description would be that, had Defendants been aware of the scope of Plaintiffs' damages claim, Defendants would have known of the need for further inquiry, and would likely have sought further information, through the discovery process, to enable them to develop their defenses more fully.  Such a situation is best dealt with under the discovery rules, which set out a scheme for addressing inadequate disclosures and the prejudice they can cause.

Overall, I recommend that the Court deny Defendants' motion, to the extent that it seeks preclusion of Plaintiffs' damages claim on the basis of equitable estoppel.

## CONCLUSION

For all the foregoing reasons, I respectfully recommend that the Court deny Defendants' motion (Dkt.82) to the extent it seeks an order precluding Plaintiffs from claiming bankruptcy fees and costs as a component of compensatory damages, but I further recommend that Plaintiffs

be sanctioned under Rule 37 of the Federal Rules of Civil Procedure, in the manner set forth herein, for an inadequate Rule 26(a)(1)(A)(iii) disclosure, and for the failure to provide a timely supplementation of that disclosure under Rule 26(e).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, United States Courthouse, 500 Pearl Street, Room 660, New York, NY 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, NY 10007.  Any requests for an extension of time for filing objections should be directed to Judge Marrero.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
          January 9, 2012

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Victor Marrero, U.S.D.J.

Jeffrey L. Liddle
James W. Halter
James R. Hubbard
Liddle & Robinson, LLP
800 Third Avenue, 8th Floor
New York , NY 10022

Kenneth J. Brown
Richmond T. Moore
Rachel Shanahan
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005