**REDACTED VERSION – ORIGINAL FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED and RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>COVENTRY FIRST LLC, THE COVENTRY GROUP, INC., MONTGOMERY CAPITAL, INC., and LST I LLC,<br><br>Defendants. | Case No. 09 CV 1086 (VM)(DCF)<br>ECF Case |

### SUPPLEMENTAL DECLARATION OF JAMES W. HALTER IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FEBRUARY 17, 2012 ORDER DENYING PLAINTIFFS' REQUEST TO DISCLOSE REBUTTAL EXPERT TESTIMONY

I, James W. Halter, an attorney duly admitted to practice in the courts of the State of New York and the Southern District of New York, declare as follows:

1. I am an associate with the law firm of Liddle & Robinson, L.L.P, counsel for Plaintiffs Ritchie Risk-Linked Strategies Trading (Ireland), Limited and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited. I submit this supplemental declaration in support of Plaintiffs' Objections to the Magistrate Judge's February 17, 2012 Order Denying Plaintiffs' Request to Disclose Rebuttal Expert Testimony (Dkt. 104).

2. Attached hereto as Exhibit M is a true and correct copy of an excerpt of the transcript of the March 15, 2010 deposition of John Mulholland (filed under seal).

1

3. Attached hereto as Exhibit N is a true and correct copy of an excerpt of the transcript of the March 17, 2010 deposition of Duncan Goldie-Morrison (filed under seal).

4. Attached hereto as Exhibit O is a true and correct copy of an excerpt of the May 14, 2010 trial transcript in *Huizenga Managers Fund, LLC v. A.R. Thane Ritchie, et al.*, Case No. 07 CH 9626 (Cir. Ct., Cook Cnty., Ill.) (filed under seal).

5. Attached hereto as Exhibit P is a true and correct copy of a March 23, 2011 letter from Kenneth J. Brown, Esq., counsel for Defendants, to The Honorable Debra Freeman, with respect to this matter (without the exhibits attached thereto).

6. On January 11, 2012, Plaintiffs' counsel had not yet completed their review of the expert reports transmitted to us on December 21, 2011 and had made no decision concerning whether to request a rebuttal actuarial report, or to seek authorization to do so.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: March 19, 2012
New York, New York

_____
James W. Halter

## CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of March, 2012, I caused true and correct copies of the foregoing to be served, by e-mail and by overnight delivery, on:

>David A. Forkner, Esq.
>Kenneth J. Brown, Esq.
>Williams & Connolly LLP
>725 Twelfth Street, N.W.
>Washington, D.C. 20005
>dforkner@wc.com
>kbrown@wc.com

Dated: March 19, 2012
       New York, New York

*/s/ James W. Halter*
James W. Halter

# EXHIBIT M

# FILED UNDER SEAL

# EXHIBIT N

# FILED UNDER SEAL

# EXHIBIT O

# FILED UNDER SEAL

# EXHIBIT P

LAW OFFICES
## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

KENNETH J. BROWN
(202) 434-5818
kbrown@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 23, 2011

**BY FEDEX**

The Honorable Debra Freeman
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Ritchie Risk-Linked Strategies Trading (Ireland), Limited et al. v. Coventry First LLC et al.*, Case No. 1:09-cv-01086-VM-DCF

Dear Judge Freeman:

      Defendants are now in receipt of Plaintiffs' amended responses to Defendant Coventry First LLC's Second Set of Interrogatories (the "Contention Interrogatories"). Those amended responses, however, are inadequate. Plaintiffs have failed to comply with Judge Marrero's guidance and their own commitment to identify all material facts supporting their claim that certain life insurance policies ("Policies") they purchased from Defendant LST I LLC were improperly originated.

      In requiring the parties to meet and confer regarding the Contention Interrogatories, *see* Dkt. # 80 at 7, Judge Marrero gave specific guidance as to the appropriate substance of Plaintiffs' responses. He suggested that Plaintiffs should provide "certain principal or material facts, pieces of evidence, witnesses and legal applications" supporting their allegations of improper origination. Dkt. # 80 at 6; *see also United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana*, No. Civ 08-0501 JB/ACT, 2009 WL 2426194, at *9 (D.N.M. July 20, 2009) ("Interrogatories may ask for the material or principal facts that support a party's contentions[.]"); *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2009 WL 2058759, at *2 (D. Kan. July 15, 2009) ("An interrogatory may reasonably ask for the material or principal facts which support a party's contentions in the case."); *Turner v. Moen Steel Erection, Inc.*, No. 8:06CV227, 2006 WL 3392206, at *4 (D. Neb. Oct. 5, 2006) ("The parties' interrogatories may properly ask for the principal or material facts which support an allegation or defense[.]").

      In December 2010, the parties conferred regarding the scope of Plaintiffs' responses. Plaintiffs agreed to provide the categories of information described in Judge Marrero's order,

Honorable Debra C. Freeman
March 23, 2011
Page 2

including the material facts that support their contention. To be sure, on January 12, 2010, Defendants confirmed that "Plaintiffs agreed to respond to Interrogatories Nos. 1-8 by identifying, *inter alia*, . . . *all material facts you claim support your contention (i.e., to state Plaintiffs' contentions as to why those laws, statutes, or regulations were violated)*[.]" Ex. 1 (emphasis added). Plaintiffs responded nine days later by stating that "regarding contention interrogatories 1-8, we do agree that we will provide the appropriate information regarding the categories you identified (i.e., policies, laws, facts, and witnesses)." *Id.*[1]

On March 14, 2011, Plaintiffs provided Defendants with a spreadsheet identifying the Policies they claim were improperly originated. This spreadsheet, however, provides none of the promised "material facts." Instead, Plaintiffs simply used a "Y" designation to place Policies in one or more of the following ill-defined categories: (1) "Improper Use of Co-Broker Payments"; (2) "Improper Payment in Restraint of Trade"; (3) "Improper Deferred Compensation to Brokers"; (4) Improper Disclosures to Sellers"; and (5) "Compensating an Unlicensed Broker." Ex. 2. But, the assignment of a particular Policy to one or more of these categories is not a "material fact" supporting Plaintiffs' allegation of improper conduct. Instead, it is the allegation itself in its barest possible form, devoid of any explanation as to what exactly the allegation is— for example, what do Plaintiffs mean by "Improper Disclosures to Sellers"?—much less factual support for their claim, *i.e.*, what was improper about disclosures made to the seller of Policy X?

For instance, as to Policy Number 1A23371230, Plaintiffs allege that Coventry First LLC's conduct falls into each of the five broad categories above and violated 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1349 (conspiracy to commit mail or wire fraud); 15 U.S.C. § 1 (Sherman Antitrust Act); and Iowa Code §§ 508E.8 (life settlement disclosure law), 553.5 (Iowa anti-monopoly law), 714.8 (criminal "fraudulent practice"), and 715A.5 (criminal tampering with records with the intent to deceive or injure). *See* Ex. 2 at Schedule A, Line 160.[2] But Plaintiffs have not provided a single fact suggesting *why* this Policy falls within any of those five categories, or *how* they believe this broad assortment of laws was violated. By failing to divulge any facts, Plaintiffs' responses to the Contention Interrogatories merely regurgitate the allegations in their Complaint in spreadsheet rather than long-hand form. *See* Compl. (dkt. #1) ¶ 44 (alleging violations of 18 U.S.C. §§ 1341, 1343, 1349; 15 U.S.C. § 1; and an assortment of various state laws). Thus, Defendants are left to speculate as to the factual basis of Plaintiffs' claims regarding this Policy, just as they have been since Plaintiffs filed their Complaint more than two years ago.

---

[1] In an effort to prevent further disagreement regarding the scope of Plaintiffs' responses, in December 2010 Defendants requested that Plaintiffs provide a sample answer for a single Policy responsive to the Contention Interrogatories. Doing so, Defendants suggested, would enable the parties to resolve any disputes over the scope of Plaintiffs' responses quickly, and without waiting weeks until Plaintiffs generated answers pertaining to an unknown number of policies. Plaintiffs declined this request.

[2] Exhibit 2 is one sheet excerpted from a much larger spreadsheet provided by Plaintiffs. The entire spreadsheet spans 26 pages and contains 187 entries, each of which takes the identical form as the exemplar set forth in Exhibit 2.

Honorable Debra C. Freeman
March 23, 2011
Page 3

Plaintiffs cannot fairly seek more than $400 million from Defendants, but decline to explain the factual basis for their claims as to each Policy they claim was originated improperly. The whole purpose of the Contention Interrogatories is to enable Defendants and their experts to respond to Plaintiffs' specific allegations of wrongdoing, which clearly would be impossible if Defendants were forced to rely on Plaintiffs' current responses. Moreover, Plaintiffs have had Defendants' Contention Interrogatories for thirteen months. They have had documents regarding the Policies for more than three years. And fact discovery closed almost exactly one year ago. It is long past time for Plaintiffs to identify the material facts they contend support their claims. *See Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995) ("[C]ontention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims.").

As we noted in our letter of February 25, 2011, the parties have discussed—and, we believe, agreed—that after receiving Plaintiffs' supplemental responses, Defendants will have a reasonable period of time to determine their adequacy and to review the Policies Plaintiffs claim were procured through misconduct in light of those supplemental responses. Indeed, each Policy presents a unique fact pattern that must be fully assessed in light of Plaintiffs' allegations for Defendants to respond meaningfully to those allegations. Although the precise duration of this period will depend on the scope of Plaintiffs' supplemental responses, the parties have discussed a period of 60-90 days. With the Court's permission, and barring any continued inadequacies in the responses, following the completion of that review the parties will approach the Court regarding the entry of a new scheduling order to govern expert discovery, summary judgment briefing, and trial. We appreciate the Court's attention to this matter.

Respectfully submitted,

*Kenneth J. Brown*

Kenneth J. Brown

cc: Counsel of record